UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

OUSMANE BAH,

               Plaintiff,

      -against-                        **COMPLAINT**


APPLE INC. and SECURITY INDUSTRY       **Docket No**.: 19cv3539
SPECIALISTS, INC.                         Jury Trial Demanded:  Yes
                   Defendant.

_____

      Plaintiff OUSMANE BAH (known hereinafter as "Plaintiff"), a New York resident, by and through his attorney, The Tariq Law Firm P.L.L.C., against Defendant APPLE INC. (known hereinafter as "Defendant"), respectfully sets forth and alleges the following based upon information and belief.

      Mr. Bah is an 18-year-old college student who highly values his reputation and education. As a result of failure on the part of Defendant to properly identify the perpetrator of crimes enacted against it, Plaintiff has found himself falsely accused of felonies taking place in multiple states. Prior to the actions by Defendant giving rise to this Action, Mr. Bah had never faced legal charges or gotten into trouble with law enforcement. Due to Defendant's negligence Mr. Bah has suffered severe harm. Had Defendant acted reasonably, Mr. Bah could have easily avoided the injuries he incurred.

      Since 2017, Defendant has promoted and incorporated facial recognition software into its products. In designing the iPhone X, Defendant eliminated the "home" button, claiming that its facial recognition software, Face ID, was a much more secure alternative. *See* Natasha Lomas, *iPhone X's Face ID raises security and privacy questions*, TECH CRUNCH (*last visited* April 6,

2019), https://techcrunch.com/2017/09/13/iphone-xs-face-id-raises-security-and-privacy-questions/. Face ID operates by using "a sensor-packed notch at the top of the device [which] includes a dot projector, flood illuminator and infrared camera, as well as a traditional camera lens, so it's able to sense depth and read face-shape (including in the dark)." *Id.* Face ID has now replaced Touch ID – which required a user's fingerprint – as the easier, more convenient method to open an iPhone, open apps within the iPhone that are enabled with Face ID, and even to make payments through Apple Pay. *See* Apple Inc., About Face ID advanced technology, APPLE SUPPORT (Nov. 7, 2018), https://support.apple.com/en-us/HT208108.

Defendant's continued efforts to promote facial recognition software as a safe alternative to a passcode has had an effect both on the biometrics industry and the mobile phone industry. *See* Alex Perala, *Year in Review: Apple Has Helped Make the Case for Facial Recognition*, FINDBIOMETRICS (Jan. 18, 2019), https://findbiometrics.com/yir18-apple-facial-recognition-601180/. FindBiometrics, a website reporting on biometrics industry news, found that the majority of those who responded to the FindBiometrics Year in Review survey believed that "Apple's championing of Face ID has helped to familiarize consumers with facial recognition technology, showing them that it isn't simply some kind of Orwellian surveillance technology, but rather a means of making mobile security more convenient."[1] *Id.* Defendant's incorporation of facial recognition to access iPhones has also prompted every other smartphone manufacturer to include

---

[1] Ironically, Defendant's use of facial recognition software in its stores to track individuals suspected of theft is the type of Orwellian surveillance that consumers fear, particularly as it can be assumed that the majority of consumers are not aware that their faces are secretly being analyzed at Defendant's stores. Moreover, Defendant allegedly has plans to equip its newest smartphones with longer-range 3-D cameras that have a range of 15 feet from the device. These new 3-D cameras will be placed on the rear of the smartphone, which means that photos taken on the new iPhone could capture 3-D images of unsuspecting passersby.

The rise of facial recognition software has given rise to a variety of privacy concerns, including whether such software will be used in the future to gauge facial reactions to different products or news bites, which can be leveraged later for advertising purposes. Although Face ID may not seem "Orwellian" on its face, its implications are far-reaching, and Defendant's normalization of this type of technology is in many way irresponsible and dangerous.

the feature on their respective smartphones. *See* Alex Perekalin, *Why face unlock is a bad idea*, KASPERSKY LAB DAILY BLOG (March 21, 2018), https://www.kaspersky.com/blog/face-unlock-insecurity/21618/.

However, some are skeptical of the promise of facial recognition as a hack-proof, convenient, one-step authentication factor. *See* Corey Nachreiner, *Apple's Face ID: No match for multifactor security*, TECHBEACON BLOG (*last visited* April 6, 2019), https://techbeacon.com/security/apples-face-id-no-match-multifactor-security. These individuals argue that because a hacker may be able to get around facial recognition software, multi-step authentication is superior to Face ID. *Id.* This would require verification of the user's identity through several steps, such as Face ID, entry of a passcode, and answering security questions. *Id.*

Until the present, any examination of Face ID has presupposed that the iPhone user is not being deceptive about his identity.[2] However, when a name is mismatched to a particular face, the security benefits of the Face ID software become a criminal's weapon. Unfortunately, unlike Face ID or Touch ID, both of which can be disabled to require a passcode (*see* Lomas, *supra*) once Defendant negligently tied Mr. Bah's name with the wrong face, Mr. Bah had no recourse to correct the error. Defendant failed to confirm and match the information provided by the stolen interim permit with no identifying photograph, to the true suspect's identity. Despite clear discrepancies in the suspect's height and Mr. Bah's height that was listed on his interim permit, and a statement on the permit stating that it could not be used for identification purposes, Defendant accepted the information on the permit as true.[3] In short, Defendant relied on the accuracy of its security system's

---

[2] The majority of security concerns around Face ID revolve around whether an individual can open and access content on an iPhone that is not registered to that individual. These discussions ignore the much more dangerous possibility of human or corporate error, when a particular individual's face is tied to another individual's identity.
[3] It appears that Defendant placed too much faith in the accuracy of its facial recognition security system to the point where Defendant failed to follow through on the human side of confirming and verifying basic information. However, even the reliance on technology seems misplaced if Defendant could not easily recognize that the suspect and Mr. Bah's respective heights were visually distinct.

facial recognition software and ignored the possibility that a misidentification had been made due to human error.[4]

Through no fault of his own, and completely as a result of Defendant's negligent conduct and unlawful actions, Mr. Bah found himself in facing serious criminal charges. Mr. Bah was only a high school student when the events at issue occurred. He has expressed that he understands his only chance of creating a decent life for himself rest in his ability to maintain a clean record and fulfill his educational goals. Nevertheless, he was forced to respond to multiple false allegations which led to severe stress and hardship in his life, and also significant damage to his positive reputation that he had put so much effort into upholding.

Accordingly, as a result of the injuries suffered by Mr. Bah, he is seeking damages in the amount of $1 billion.

## PARTIES IN THE COMPLAINT

1.     Plaintiff is a natural person. He is an 18-year-old African American male.

2.     Defendant Apple Inc. (Hereinafter "Apple"), is an American multinational corporation with its principle place of business in Cupertino, California.

3.     Defendant Security Industry Specialists, Inc. (Hereinafter "Defendant SIS") is a nationwide corporation with its principle place of business in Culver City, California.

---

[4] The irony here is that Defendant relied heavily on one method of identification – facial recognition software – and failed to use a more labor-intensive form of verifying the true suspect's identity. The latter method is similar in many ways to multi-step authentication; it requires the use of information from various, reliable sources, such as a driver's license photograph or a government-issued identification card that contains a photograph, to confirm a particular individual's identity. Given the number of individuals who provide false identification when suspected of committing a crime, it is remarkable that Defendant blindly accepted the photograph-less learner's permit as a valid form of identification.

## JURISDICTION

4.      Jurisdiction of this Court arises under 28 U.S.C. § 1331, 15 U.S.C. § 1691e(f), and pursuant to 28 U.S.C. § 1367 for pendent state law claims, which are predicated upon the same facts and circumstances that give rise to the federal causes of action.

5.      This Action arises out of the Defendant's several unlawful and negligent actions which have led to Mr. Bah's severe emotional distress. The events at issue occurred in multiple states including Massachusetts, New Jersey, New York, and Delaware.

6.      Further, Plaintiff properly brings this suit in federal court on the basis of diversity jurisdiction. Defendants are incorporated in the state of California. Under 28 U.S.C. § 1332, District Courts have original jurisdiction over all civil actions where the amount in controversy exceeds $75,000 and are between citizens of different states. Both conditions are met here.

7.       Defendants' connection in this forum satisfy the minimum contacts standard, carrying out continuous and systematic activity in the jurisdiction, allowing this Court to exercise general personal jurisdiction. *See International Shoe Co. v. State of Wash., Office of Unemployment Compensation and Placement*, 326 U.S. 310, 316 (1945).  Defendants have multiple store locations within the jurisdiction, including one which involved some of the facts giving rise to this matter. In cases where there is general jurisdiction over a defendant, a court may exercise personal jurisdiction over it in matters unrelated to its activities within the state. *See AM Trust Fin, Servs., Inc. v. Lacchini*, 260 F.Supp. 316, 328 (S.D.N.Y. 2017).

8.      Venue is proper in this judicial district under 28 U.S.C. § 1391 because the Defendant conducts business in and can be found in this district, and a substantial part of the events or omissions giving rise to the claims alleged herein occurred in this district.

## FACTUAL ALLEGATIONS

9.      Plaintiff repeats, reiterates, and incorporates the allegations contained in all previous paragraphs of this Complaint as if fully reinstated herein.

10.     In March of 2018, Mr. Bah passed the Department of Motor Vehicles (DMV) written exam to receive a learner's permit in New York City. When a person in New York passes this written exam, he is given a printed receipt as an interim permit until an actual permit card is sent to him in the mail. The document specifies that it is not to be used for identification purposes. The events giving rise to this action concern such an interim permit.

11.     The interim permit received by Mr. Bah upon passing his written exam included information such as his name, address, date of birth, sex, height, and eye color. Notably, it did not include a photo of Plaintiff.

12.     Subsequent to receiving the interim permit at issue, at some point, Mr. Bah lost the interim permit. Not thinking much of it because it was only an interim permit which on its face stated "not meant for identification purposes," and because the actual permit would arrive shortly, Plaintiff did not file a police report.

13.     Mr. Bah later received a summons arraignment from Boston municipal court with an alleged date of offense listed as May 31, 2018 for larceny over $1,200.00. The crime took place at an Apple store and involved the theft of multiple Apple products, specifically Apple pencils, which retail for $99.00 each according to Defendant's website. Mr. Bah had never been to Boston before the arraignment took place on June 27, 2018. He had also been at his senior prom in Manhattan on the date of the alleged offense.

14.     At the arraignment, Mr. Bah was presented with a police report which stated that on May 31, 2018 a loss prevention associate employed by Defendant SIS, identified as Mr. John Beswick,

witnessed a suspect steal Apple pencils on a security video. This offense took place at the downtown Boston Apple store, located at 815 Boylston Street.

15.     While monitoring the store's security cameras, Mr. Beswick witnessed a suspect, fleeing the store and driving away in a white BMW. Mr. Beswick told police that he knew Mr. Bah because he was previously arrested for thefts from another of Defendant Apple's store locations in Connecticut.

16.     While defending Mr. Bah against false allegations in Boston, his previous counsel, Mr. Anthony W. Musto, made a motion to obtain all surveillance video from Defendant which allegedly implicated him with the offenses in question. He was told, however, by an agent of Defendant, identified only as Greg C., that the video did not exist. Further, he was informed that Defendant habitually does not keep records of "any responsive information" after an arrest is made.

17.     On June 27th, 2018 at Mr. Bah's arraignment at the Boston Municipal Court Central Division, he was released by the judge on personal recognizance.

18.     After returning home to New York from Boston, Mr. Bah received paperwork at his parents' home showing that he had been accused of several other charges. Among these were similar allegations of larceny from one of Defendant's New Jersey store locations. New allegations were also made against Mr. Bah in Delaware and in New York City. The Defendant was the complaining witness in all of the criminal matters referenced herein.

19.     On November 29, 2018, the New York City Police Department (NYPD) executed an arrest warrant for Mr. Bah at his home at four o'clock in the morning. The arrest warrant was obtained based on the allegations pending against Mr. Bah for larceny from a Manhattan Apple store. The warrant that police had included a photo of a suspect that did not resemble Mr. Bah, but police nevertheless executed it. This arrest left Mr. Bah, who had never been in trouble with the police, feeling humiliated, afraid, and deeply concerned.

20.     Up until the point of this arrest, Mr. Bah had made a great effort to keep his situation a secret from his parents. However, he was unable to do so once the arrest occurred. His family strongly maintains that he is a "good kid," and would never have been involved in the criminal activity of which he was being unjustly accused. Mr. Bah's college education was also affected by this wrongful arrest, as he was meant to take an exam the following morning.

21.     Detective Reinhold of the NYPD soon realized that Mr. Bah was wrongfully arrested and that he was not the suspect of the crimes perpetrated against Defendant. Detective Reinhold stated that he had viewed the surveillance video from the Manhattan store and concluded that the suspect "looked nothing like" Mr. Bah.

22.     At that point, Detective Reinhold also explained that Defendant's security technology identifies suspects of theft using facial recognition technology.[5] Further, he suspected that the person who had committed the crimes must have presented Mr. Bah's interim permit as identification during one of his multiple offenses against Defendant which took place over many months and in multiple states.

23.     Since 2017, Defendant has promoted use of facial recognition software, called Face ID, on its iPhone X smartphones and certain iPad Pro models. Defendant has stated that Face ID "provides intuitive and secure authentication enabled by the state-of-the-art TrueDepth camera system with advanced technologies to accurately map the geometry of your face." Apple Inc., *supra*. Defendant encourages users to enable Face ID to unlock their smartphones, open apps, and to authorize purchases through Apple Pay.

---

[5] This fact is concerning, particularly in light of the fact that consumers are not generally aware of Defendant's use of facial recognition technology within its security system. Presumably, Defendant's security system scans consumers' faces to look for matches to a list of suspects. As the accuracy of facial recognition continues to be questioned, particularly as applied to minorities, it is not surprising that heavy use and reliance on facial recognition software in the context of security has led to the prosecution of an innocent young man who has had his identity stolen.

24.     Defendant has relied so heavily on its facial recognition software that Defendant failed to consider the possibility of human error in its identification procedures, despite the fact that there was a clear discrepancy between the height described on the learner's permit for Mr. Bah, and the suspect's height.

25.     Defendant accepted the non-photo interim permit, or in the alternative, Defendant relied on perpetrator's statement identifying himself as Mr. Bah. As a result, Defendant's security technology now recognizes the perpetrator as Mr. Bah, although they are not the same person, and Mr. Bah is innocent of these charges.

26.     With the stress of knowing that Defendant was now wrongfully identifying him as a felon for committing serious crimes in multiple states, Mr. Bah's life has been deeply and negatively affected. He advanced through his freshman year of college experiencing constant anxiety and fear that at any moment he would be arrested again for a crime he did not commit.

27.     On numerous occasions, Defendant through its agents and employees misidentified Bah as the perpetrator of similar criminal offenses on premises owned and/or operated by Defendant in multiple states.

28.     Based on the information provided in New York by Detective Reinhold to Mr. Bah's previous counsel, he was able to explain the situation to the District Attorney in Boston. After receiving notice of Defendant's mistake, the District Attorney was able to receive the surveillance footage of the crime originally giving rise to the charges made against Mr. Bah there. This is the same footage that an agent of Defendant previously represented did not exist.

29.     As a result of viewing the surveillance footage and concluding that Mr. Bah had not committed the crimes in question, the Boston District Attorney dismissed the case against him.

30.     Currently, there is still a case in New Jersey pending against Bah, but all other charges have been dismissed.

31.     The identification of Mr. Bah and subsequent charges filed against him, as well as the traumatic arrest which took place at his home, were completely preventable by Defendant. All of these events were caused by Defendant's negligent acceptance of an interim permit, which did not contain a photo, did not properly describe the suspect presenting it, and clearly stated that it could not be used for identification purposes, as a valid form of identification.[6]

32.     Additionally, had Defendant taken action to correct their error after it had become aware that its facial recognition technology had continuously wrongfully implicated Mr. Bah, further injury could easily have been avoided.[7]

33.     In the months following the erroneous charges made against Mr. Bah, his entire life, including his education, has been deeply affected. As a result of being arrested in New York, as well as having to make trips to different states in response to charges filed against him, Mr. Bah's attendance and grades suffered. Additionally, he suffered constant anxiety over the possibility of being arrested at any time for crimes he did not commit, and of which he had no knowledge.

## FIRST CAUSE OF ACTION
### NEGLIGENCE

34.     Plaintiff incorporates by reference all previous paragraphs of this Complaint as if fully restated herein.

35.     Defendant's actions in accepting a form of identification which did not describe the suspect they had apprehended, and did not include a photo, constituted prima facie negligence. Under New

---

[6] Given the high probability of an individual providing false information regarding his identity when detained for a crime, it is remarkable that Defendant did not attempt to confirm the suspect's identity, obtain a photograph of Mr. Bah to compare to the suspect, or otherwise verify the suspect's identity. Nor does it appear that Defendant had any doubts as to the suspect's identity, as Defendant chose to press charges against Mr. Bah.

[7] Although Defendant allows users to choose whether to enable Face ID and to opt out of the same technology, Defendant clearly has not resolved any issues that may arise out of its facial recognition software linking a particular name to a stolen identity. To exacerbate the issue, Defendant appears to have no policies in place to fix issues that arise when a suspect has been misidentified. This has given rise to the Defendant blindly pursuing a victim of identity theft, here, Mr. Bah, to the benefit of the true suspect.

York law, "to establish a prima facie case of negligence, a plaintiff must demonstrate: (1) a duty owed by the defendant to the plaintiff, (2) a breach thereof, and (3) injury proximately resulting therefrom." *Soloman v. City of New York*, 66 N.Y.2d 1026, 1027 (N.Y. 1985).

36.     Here, Defendant had a duty to Mr. Bah to carefully and accurately identify perpetrators of crime so as to avoid false accusations against innocent individuals. By accepting the interim permit presented by a suspect as a valid form of identification, Defendant breached this duty.

37.     The agent of Defendant that accepted the interim permit which belonged to Mr. Bah as a form of identification for a different individual should have realized that the height listed on the interim permit did not match the height of the suspect. He or she also should have recognized that the interim permit was not intended for identification purposes. Further, because the document did not include a photo, there was at least some likelihood that it did not belong to the suspect. Overall, it should have been obvious that the document should not have been acceptable as a form of identification.

38.     As a result of this action, Defendant's facial recognition technology associated the face of the perpetrator of multiple crimes with Mr. Bah's name and address. This led to Mr. Bah being charged with multiple crimes of larceny across a number of states.

39.     Mr. Bah has been undoubtedly harmed by Defendant's wrongful actions. He has been forced to travel to multiple states, including Massachusetts, New Jersey, and Delaware. He has also been subject to a shocking and traumatic arrest made by the NYPD at his home at four o'clock in the morning.

40.     Mr. Bah's education has also been negatively affected due to Defendant's actions. He has been forced to miss multiple days of school in order to travel in response to charges wrongfully made against him. Additionally, on the day that he was arrested in New York, he was supposed to take a midterm exam. His grade was negatively affected.

41.    Throughout his entire first year of college, Mr. Bah experienced constant anxiety and fear that he could be arrested at any moment.

42.    Lastly, Mr. Bah insists how highly he values his clean criminal record and his education. He feels ashamed and humiliated over the experiences he has had as a result of Defendant's negligence and is determined to receive justice for his suffering.

**SECOND CAUSE OF ACTION**
**INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

43.    Plaintiff incorporates by reference all previous paragraphs of this Complaint as if fully restated herein.

44.    To establish a successful claim of intentional infliction of emotional distress, a plaintiff must satisfy four elements: "(1) extreme and outrageous conduct, (2) intent to cause severe emotional distress, (3) a causal connection between the conduct and the injury, and (4) severe emotional distress." *Bender v. City of New York* 78 F.3d 787, 790 (2d Cir. 1996).

45.    The "extreme and outrageous" standard has been recognized as satisfied "where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency and to be regarded as atrocious, and utterly intolerable in a civilized community." *Ziobro v. Connecticut Institute for the Blind*, 818 F. Supp. 497, 502 (D. Conn. 1993) (quoting Restatement (Second) of Torts § 46, comment d (1965)).

46.    Defendant's actions of implicating Mr. Bah in multiple crimes across several states based on the negligent acceptance of an interim permit that clearly did not correspond with Mr. Bah's appearance were both extreme and outrageous. The interim permit that was accepted was used to make very serious allegations against the person who had presented it. Defendant should have been aware of the results that would come of associating Mr. Bah's interim permit with a multistate felon and disregarded the affect that its wrongful actions could have caused, and indeed did cause.

47.    Although there is a high bar set to show that a defendant's actions were extreme and outrageous, there have been cases where New York courts have granted relief for intentional infliction of emotional distress for less serious behavior than that which would be "utterly intolerable in a civilized society." *Fischer v. Malony*, 43 N.Y.2d 553, 558, 408 N.Y.S.2d 991, 992-93, 373 N.E.2d 1215, 1217 (1978) (quoting Restatement (2d) Torts § 46(1)). For example, one claim involved allegations that a woman's neighbor repeatedly made "hang-up" telephone calls to her home. *Flatley v. Hartman*, 138 A.D.2d 345, 346 (N.Y. App. Div. 1988).

48.    In *Flatley*, the court held that the conduct complained of was actionable, even if no physical contact had occurred. *Id*. Further, there were "questions of fact as to whether [the defendant's] alleged conduct exceeded the bounds of decency and as to whether the plaintiff suffered genuine and severe distress as a result." *Id.* Similar questions of fact exist here.

49.    These accusations on their own may not appear to rise to the level of extreme and outrageous at first glance. However, when considering the immense negative impact that all of Defendant's actions had on Mr. Bah's life, they clearly do meet such a standard.

50.    Defendant continued to pursue litigation against Mr. Bah after he had been exonerated of any crimes perpetrated against it. Further, Defendant's false allegations caused Mr. Bah to be the subject of an arrest warrant executed by the NYPD in early morning hours, causing him trauma and fear. Mr. Bah had never gotten into trouble and was completely innocent and ignorant of any criminal activity carried out by another individual against Defendant.

51.    It also cannot be argued that civil society must tolerate traumatic arrests and criminal charges filed in multiple states against a young adult on the basis of negligently acquired information. Doing so would put any citizen at risk of being falsely accused and subsequently arrested from their homes pursuant to a warrant wrongfully obtained.

52.     While Defendant will argue that it did not intend to cause Mr. Bah emotional distress, this fact alone would not cause Plaintiff's claim to fail. Federal courts have also recognized that a successful claim of intentional infliction of emotional distress can be made if "the actor intended to inflict emotional distress or that he knew or should have known that emotional stress was the likely result of his conduct." *Appleton v. Bd. Of Educ.*, 254 Conn. 205, 210 (2000).

53.     Here, Defendant should have known that misidentifying a suspect of a crime would have a severe negative affect on the person falsely accused. This is especially true given the fact Mr. Bah was wrongfully charged with serious crimes spanning several states and the fact that he had never been charged with any crimes before these.

54.     There is a direct causal relationship between Defendant's conduct and the trauma experienced by Mr. Bah. Had Defendant acted reasonably in verifying the information contained in the interim permit presented by the perpetrator of larceny at its stores, Mr. Bah would never have been falsely charged with any crimes, nor would he have been wrongfully arrested in his home.

55.     Finally, Mr. Bah has experienced severe emotional distress as a result of Defendant's actions. He spent the last few months of his senior year of high school, as well as his freshman year of college, in constant fear that he would again be falsely implicated in a crime of which he was innocent. He recalls being fearful when going to school that he would be arrested again and humiliated in front of his classmates.

56.     Additionally, Mr. Bah repeatedly expresses that he holds his clean criminal record in very high regard. He also places a great value on his education and the opinions of his parents. Throughout the majority of these events, he attempted to keep all information secret from his parents. However, the arrest made at his home made it impossible for him to continue doing so.

57.     Nevertheless, Mr. Bah continues to try to handle the situation in which he finds himself on his own for the sake of protecting his parents and his reputation. He continues to suffer distress as a result of this.

### THIRD CAUSE OF ACTION
### NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

58.     Plaintiff incorporates by reference all previous paragraphs of this Complaint as if fully restated herein.

59.     Under New York law, to establish a claim for negligent infliction of emotional distress, a plaintiff must "show a breach of duty owed to him which unreasonably endangered his physical safety or caused him to fear for his own safety." *Sacino v. Warwick Valley Cent. School District*, 138 A.D.3d 717 (NY App. Div. 2016).

60.     "The threshold question in any negligence action is: does defendant owe a legally recognized duty of care to plaintiff?" *Hamilton v. Beretta Corp.*, 750 N.E.2d 1055; 96 N.Y.2d 222, 232 (2001). Whether a duty exists between two parties is premised on "what people may reasonably expect of one another" and takes into consideration "what is socially, culturally and economically acceptable." *Darby v. Compagnie Air France*, 753 N.E. 2d 160, 96 N.Y.2d 343, 347 (2001).

61.     In this case, Defendant owed Mr. Bah a duty of care in confirming his identity prior to filing multiple criminal complaints against him.

62.     Due to Defendant's failure to correctly identify the suspect of a crime perpetrated against it, Defendant breached the duty of care owed to Mr. Bah and Mr. Bah experienced false accusations in multiple states and was arrested in his home in New York City as a result. He lived in constant fear and anxiety in the year following these events, which could have easily been avoided if Defendant acted appropriately.

63.     Mr. Bah expresses feeling fear that he would be arrested at any point every time he left his home. He worried about suffering the humiliation of being led out of his school in handcuffs, the way he had been led from his home.

64.     These fears, and Mr. Bah's dropping grades due to missing classes to attend court hearing dates, were directly and proximately caused by Defendant's failure to confirm the suspect's true identity. But for Defendant's negligence, Mr. Bah would not have experienced the frustration, stress, anxiety, and depression which plagues him to this day, regarding crimes he did not commit.

## FOURTH CAUSE OF ACTION
### DEFAMATION

65.     Plaintiff incorporates by reference all previous paragraphs of this Complaint as if fully restated herein.

66.     Under New York law, in order to state a successful claim for defamation, a plaintiff must show (1) a false statement made by a defendant, (2) that the statement was published to a third party, (3) the third party had no privilege or authorization to make the statement, and (4) that the statement caused him harm. *Cardali v. Slater*, 57 N.Y.S. 3d 342, 56 Misc. 3d 1003, 1008 (N.Y. Sup. Ct. 2017).

67.     All of the elements of defamation have been satisfied by Defendant's wrongful acts. Defendant has committed defamation in both the form of verbal statements, constituting slander, and written statements, constituting libel.

68.     Defendant repeatedly made public meritless statements regarding Mr. Bah's guilt in the multiple criminal cases against him. These statements were baseless in that Defendant did not have a proper reason for believing the allegations to be true.

69.     The statements have been published to a third party and are in fact immortalized in a public record because of the resulting criminal charges made against Mr. Bah.

70.     Mr. Bah suffered harm because of the false statements made against him. He was subject to an arrest by the NYPD, who executed a warrant against him in his home in the middle of the night. This was especially traumatic for Mr. Bah because, prior to the arrest taking place, he had not shared his experiences of these false allegations with his parents. As a result, both his mother and father were shocked and outraged over the attack on their son's character.

71.     Mr. Bah's mental wellbeing and education also suffered as a result of the false statements made by Defendant. The arrest that took place at his home in New York City occurred in the early morning before he was to take a midterm exam. This was during his senior year of high school where maintaining excellent grades is very important for students. Mr. Bah was also forced to miss many days of school because he had to travel in order to respond to the false allegations made against him outside of New York.

72.     In addition to suffering harm to his education, Mr. Bah has exemplified many of the ways that his mental wellbeing has been affected by these false charges. He has expressed his fear that he would be arrested again at any time when he is outside his home. He has also stated that he fears the potential embarrassment that would result from being arrested from his college campus. He has suffered a great injury to his reputation and fears further harm as a result of criminal charges for which he bears no responsibility.

## FIFTH CAUSE OF ACTION
### SLANDER

73.     Plaintiff incorporates by reference all previous paragraphs of this Complaint as if fully reinstated herein.

74.     As previously stated, Defendant has publicly defamed Mr. Bah both verbally and through written statements. Defendant's verbal statements give rise to a proper claim of slander under New York law.

75.     To make a successful claim for slander under New York law, a plaintiff must show (i) defendant made a verbal defamatory statement of fact, (ii) that statement was false, (iii) the statement was published to a third party, (iv) the statement concerned the plaintiff, (v) the speaker demonstrated the applicable level of fault, (vi) the statement caused either special harm or constituted defamation *per se* and (vii) the statements were not protected by privilege. *Musante v. Mohawk Vallet Cmty. Coll.*, 270 F. Supp. 3d 564, 583 (N.D.N.Y. 2017).

76.     Here, all of the elements of the cause of action are met. By charging Mr. Bah with crimes that it negligently and falsely ascribed to him, Defendant satisfied the requirement of verbal defamatory statements. The fact that the allegations were unfounded satisfy the requirement that the statements be false.

77.     The statements were published to a third party simply by their nature of involving court proceedings. By wrongfully charging Mr. Bah, Defendant publicly made false statements regarding his guilt.

78.     Defendant is also at fault for making these false statements. This is especially true given that it continued to pursue prosecution of Mr. Bah after the fact that he had been mistakenly identified had become known.

79.     The false statements made caused substantial harm to Mr. Bah. The harm suffered by Mr. Bah have been caused by Defendant's actions which satisfy the elements of defamation, discussed at length above.

80.     He suffered a traumatic arrest which led to constant fear and anxiety throughout his first year of college. He was also forced to travel outside of his home state to respond to meritless charges made against him.

81.     The harm experienced by Mr. Bah is further exemplified by his own statements regarding the negative effects on his education that were caused by Defendant's false allegations and public

statements. In particular, Mr. Bah's attendance and grades, which he holds in very high regard, suffered as a result of Defendant's actions.

## SIXTH CAUSE OF ACTION
### LIBEL

82.     Plaintiff incorporates by reference all previous paragraphs of this Complaint as if fully restated herein.

83.     As discussed above, Defendant has committed defamation against Mr. Bah through both oral and written statements. The written statements, in the form of court filings containing false statements, also satisfy the elements required for a successful claim under New York law.

84.     The required elements for libel are the same as those required for slander. There must be (i) a defamatory statement of fact, (ii) the statement must be false, (iii) the statement must be published to a third party, (iv) the statement must concern the plaintiff, (v) the applicable level of fault must be present on the part of the speaker, (vi) the plaintiff must suffer special harm constating defamation, and (vii) the statements must not be protected by privilege. *Musante*, 270 F. Supp. 3d at 583 (N.D.N.Y. 2017).

85.     All criminal charges made against Mr. Bah contain false written statements which were made available to third parties.

86.     The fact that these statements were made is completely at the fault of Defendant. Had Defendant not behaved negligently in falsely identifying a suspect of multiple crimes against its properties, Mr. Bah would never have become involved in any criminal proceedings.

87.     The hardship suffered by Mr. Bah has been explained in detail throughout various parts of this Complaint above. Nevertheless, it bears reiterating that Mr. Bah's reputation was deeply damaged as a result of the false allegations made against him. He had never been involved with

the police before Defendant's negligent behavior wrongfully implicated him. He also suffered negative affects to his education and his mental wellbeing.

**SEVENTH CAUSE OF ACTION**
**FRAUDULANT CONCEALMENT**

88.     Plaintiff incorporates by reference all previous allegations made in this Complaint as if fully restated herein.

89.     To support a claim of fraudulent concealment, a plaintiff must show (i) that the defendant failed to disclose material information that he had a duty to disclose, (ii) that the defendant intended to defraud the plaintiff by not disclosing this information, (iii) that the plaintiff reasonably relied upon the false representation, and (iv) that the plaintiff suffered damages as a result of such reliance. *Katen & Sons, Inc. v. Allegheny Trucks, Inc.*, 2018 WL 4689089 (N.D.N.Y. 2018).

90.     Here, when Mr. Bah traveled to Boston to respond to criminal charges filed against him there, he was represented by Mr. Anthony W. Musto.

91.     Mr. Musto made a motion to obtain all surveillance videos which Defendant claimed implicated Mr. Bah in the crimes of which he had been charged. An agent of the Defendant, identified as Greg C., made a representation to Mr. Musto that no video surveillance providing evidence of Mr. Bah's alleged crimes existed.

92.     It was later revealed that the video surveillance evidence did indeed exist. It was later released to the District Attorney in Boston, leading to the dismissal of all charges against Mr. Bah.

93.     Defendant had a duty to share the surveillance video with Mr. Bah's attorney because it was exculpatory evidence which he was entitled to as counsel for a defendant in a criminal proceeding. It is also Mr. Bah's belief that Defendant knowingly withheld this evidence as a way of avoiding the reality that it had charged the wrong individual with the crimes perpetrated against it. Further, Defendant intended to defraud Mr. Bah by leading him to believe that, perhaps the most crucial piece of exculpatory evidence for his case, did not exist.

94.     Plaintiff certainly relied on the misrepresentation made by Defendant here. Mr. Musto believed that no video surveillance footage existed and was barred from using any such evidence in defending Mr. Bah against criminal charges.

95.     Damages were suffered as a result of his and his attorney's reliance on Defendant's misrepresentation. His ability to defend himself was diminished because the evidence which most clearly exonerated him was withheld by those charging him.

96.     Had Defendant properly disclosed the evidence of the surveillance video at the time that it was requested, the charges against Mr. Bah would have been dismissed much sooner, and accordingly he would have suffered less harm as a result.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Defendant has caused substantially injury according to the foregoing causes of action, Plaintiff respectfully requests that the Court:

1. Award damages in the amount of $1 Billion

2. Grant declaratory relief stating that Defendant wrongfully and baselessly damaged the highly valued reputation of Plaintiff

3. Grant injunctive relief instructing Defendant to address the mistake in the stored data of Plaintiff's identification information affecting its facial recognition technology, as this has continued to erroneously implicate Plaintiff in multiple felonies through no wrongdoing of his own.

4. Grant injunctive relief instructing Defendant to cease all behavior that can lead to falsely implicating innocent individuals of crimes perpetrated against it

## DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff hereby requests a

trial by jury on all issues so triable.


Dated:  April 22, 2019


                                          Respectfully submitted,

                                          _ s/Subhan Tariq_____
                                          Subhan Tariq, Esq.
                                          The Tariq Law Firm, PLLC
                                          *Attorneys for Plaintiff*
                                          34-18 Northern Blvd – Suite 2-25
                                          Long Island City, NY 11101

To: Apple Inc.
    One Apple Park Wy
    Cupertino, CA 95014
    (via Prescribed service)

    Security Industry Specialists, Inc.
    6071 Bristol Pkwy
    Culver City, CA 90230
    (via Prescribed service)

    Clerk of the Court,
    United States District Court
    Southern District of New York
    500 Pearl Street
    New York, NY 10007
    (for filing purposes)