UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

OUSMANE BAH,
      Plaintiff

      v.

APPLE CORPORATION and
SECURITY INDUSTRY
SPECIALISTS, INC.
      Defendants

**FIRST AMENDED
COMPLAINT**
Docket No. 1:19-cv-03539-PKC


Jury Trial Demanded:  Yes

---

### Preliminary Statement

This First Amended Complaint, as with the initial Complaint filed with this Court, arises out of the Defendants' repeated false accusations of Plaintiff Ousmane Bah of having committed shoplifting at a felonious level from Apple stores in multiple jurisdictions over an eight-month period, even as their own internal records indicated that their identification of Mr. Bah was inaccurate and unreliable.

This Complaint further documents that the Defendants' investigative practices leading to these false allegations were woefully inadequate and provided no reasonable basis for these accusations, which were made in reckless disregard for their truth or falsity; that the Defendants' accusations on such unreliable evidence were inherently unreasonable; and that their use of technology to reiterate these claims in multiple jurisdictions, including the possible use of facial recognition technology, a method incapable of providing accurate identification (particularly for persons of color like the Plaintiff), compounded their errors of judgment and were similarly reckless.

The Complaint further documents the Defendants' misrepresentation and concealment (whether by gross negligence or through malicious intent) of evidence at an early stage, including their security cameras disclosing in short order the existence of two different thieves misrepresenting their identity as the Plaintiff (neither of whom responded to the description of the identifying documentation which the Defendants relied upon, and neither of whom resembled the Plaintiff), as well as video evidence which clearly showed that the Plaintiff did not commit these alleged thefts. Nevertheless, Defendants provided misleading and false responses to court subpoenas seeking such evidence while these false charges continued.

As a result of these numerous offenses, this Complaint alleges that Plaintiff suffered severe emotional distress. On the basis of the Defendants' false charges, Mr. Bah was arrested from his home by police in the middle of the night and taken away in handcuffs in front of his family, resulting in false arrest and loss of liberty, legitimate fear for his safety and his person, and as a result suffered violation of his civil rights. The Defendants have both slandered and libeled him, and the damage to his reputation is continuing, long lasting, and perhaps permanent, especially in light of the Defendants taking no affirmative steps to clear the harms they have caused him.

## ALLEGATIONS

1.      Plaintiff is a natural person. He is a 19-year-old African American male.

2.      Defendant Apple Inc. (hereinafter "Apple") is an American multinational corporation with its principle place of business in Cupertino, California.

3.      Defendant Security Industry Specialists, Inc. (hereinafter "SIS") is a nationwide corporation with its principle place of business in Culver City, California.

## JURISDICTION

4.      This action arises out of the Defendants' negligent, defamatory, and reckless actions that led to Mr. Bah's arrest and detainment, deprivation of his civil rights, injuries to his reputation and character, and significant emotional distress. The events at issue occurred in multiple states including Connecticut, Massachusetts, New Jersey, and New York.

5.      Plaintiff properly brings this suit in federal court on the basis of diversity jurisdiction. Defendants are incorporated in the state of California. Under 28 U.S.C. § 1332, District Courts have original jurisdiction over all civil actions where the amount in controversy exceeds $75,000 and are between citizens of different states. Both conditions are met here.

6.      Defendants' connections in this forum meet the minimum contacts standard, carrying out continuous and systematic activity in the jurisdiction, allowing this Court to exercise general personal jurisdiction. *See International Shoe Co. v. State of Wash., Office of Unemployment Compensation and Placement*, 326 U.S. 310, 316 (1945). Defendant Apple has multiple store locations within the jurisdiction, including locations where the complained of offenses occurred which give rise to this matter. Defendant SIS, upon information and belief, has contractually agreed to provide security services for these stores, and also committed offenses as alleged herein in such stores.

7.      Venue is proper in this judicial district under 28 U.S.C. § 1391 because each Defendant conducts business in and can be found in this district, and a substantial

part of the events or omissions giving rise to the claims alleged herein occurred in this district.

## GENERAL ALLEGATIONS

8.  At all times relevant to this Complaint, Defendant Apple operated retail stores in Connecticut; Paramus, New Jersey; Freehold, New Jersey; Boston, Massachusetts; and in varying locations in New York City.

9.  Upon information and belief, Defendant SIS, under contractual agreement with Apple, provided security services at these stores, and acts as Apple's agent in criminal enforcement and security matters concerning its stores and loss prevention.

10. On March 26, 2018, Plaintiff obtained a learner's permit for operation of a motor vehicle with the supervision of a licensed driver in New York State.  The initial temporary form issued by the State of New York consists of a computer printout containing Mr. Bah's height, weight, date of birth, and eye color, but contains no identifying photograph. The interim learner's permit contains a disclaimer in bold capital letters: "**THIS TEMPORARY DOCUMENT IS NOT VALID FOR IDENTIFICATION PURPOSES.**"

11. At some point prior to May of 2018, the Plaintiff's temporary learner's permit went missing.  As by that time Mr. Bah had received his permanent copy, which was laminated plastic, not a computer printout, and had his photograph, Mr. Bah paid the absent temporary permit no mind.

### The Connecticut Theft and Detention

12. In Connecticut, sometime before the end of May 2018, SIS and Apple caused to be detained an individual it claimed to be the Plaintiff, Ousmane Bah, accusing the individual of having stolen merchandise from one of its stores.

13. Upon information and belief, the Defendants, individually and jointly, identified the individual as Bah through examination on a printed temporary learner's permit which was likely a copy of Mr. Bah's.  This identification stated the user's height, sex and weight, as well as eye color, but had no photograph of Mr. Bah.

14. Use of nonphotographic identification is an unreliable method of identifying an individual, especially where the ID being used alerts users that it may not be relied upon. Reliance solely on such form of identification to accuse an individual of a crime, in the absence of other identifying documentation, would be unreasonable and negligent.

15.     The Connecticut thief was not Ousmane Bah and, other than being of color, did not resemble him.

16.     Upon information and belief, Defendants' representatives, individually and jointly, retained video evidence of the alleged thief's stealing Apple property in Connecticut.  Defendants further created a record indicating that the depicted thief was named Ousmane Bah, and stored and circulated this information both to SIS and Apple personnel by unknown means.

17.     Apple and/or SIS' identification of Plaintiff Ousmane Bah as the apprehended thief in reliance upon a non-photographic identification; recording that information in SIS and Apple records; and associating the image of the purported thief with Ousmane Bah's name, were each unreasonable and negligent acts, and in breach of both Defendants' duty to refrain from falsely accusing Bah.

18.     Apple and SIS' association of the thief's image with Ousmane Bah's name and exchanging such information with one another constitutes publication of false, injurious, and defamatory information, in breach of Apple and SIS' independent duties of care to Mr. Bah.

19.     Neither Apple nor SIS is a public entity, and neither has a formal role in law enforcement.  Therefore, their publication to each other of this false, injurious and defamatory material is not privileged.

## The Paramus, New Jersey Theft

20.     On May 24, 2018, SIS, acting on behalf of Defendant Apple, apprehended a person whom an SIS security officer claimed stole merchandise from a store in Paramus, New Jersey. That person was subsequently surrendered to the Paramus police, where he was placed under arrest.

21.     The Paramus thief was (also) not Ousmane Bah and, other than being of color, did not resemble him.

22.     Upon information and belief, the person surrendered to the Paramus police and alleged to have stolen from the Paramus store were quite dissimilar in appearance to the Connecticut thief, other than being of color.  The Connecticut thief was shorter, not as thin, and had a visibly different skin tone and hair style.  *See Image, Security Video, Boston, Exhibit 1 (showing individual accused of both Boston and Connecticut crimes); see booking sheet, Paramus Police Department, Exhibit 2 (showing different individual accused of committing Paramus offense).*

23.     Upon information and belief, in both the Connecticut detention and the Paramus arrest, Apple and SIS used a paper copy of Ousmane Bah's New York temporary

learner's permit, which did not have a photograph, to identify both of the two non-identical thieves as Ousmane Bah.

24.    The person detained in Paramus NJ did not answer to the description of Ousmane Bah provided within the temporary learner's permit and was therefore obviously not the person described in the permit. *See Paramus booking sheet, Exhibit 2.*

25.    At the time of the Paramus arrest, Apple and SIS possessed security camera images of the purported thief committing their crimes in both Connecticut and Paramus, New Jersey.  Casual comparison of both images would have shown that the Defendants' identification of both individuals as the same person with the same name was either unreliable or entirely false.

26.    Despite the evident inconsistencies between the Connecticut and Paramus images, and despite the suspect means of identification used by the thieves, Apple and SIS personnel continued to positively identify both the Connecticut and Paramus, NJ thieves as Plaintiff Ousmane Bah to other law enforcement officials in New Jersey and in other states.

27.    Although Apple and SIS have since learned that their identification of the thieves as Bah was, at best "unreliable," neither SIS nor Apple has ever revealed to Paramus law enforcement authorities or Mr. Bah that it had conflicting or unreliable evidence that made the identification of the thief arrested in Paramus or in Connecticut as Ousmane Bah unreliable; admitted to Mr. Bah or law enforcement officials that Defendants did not have valid grounds for charging Mr. Bah criminally; or sought retraction of the criminal allegations or charges against Mr. Bah.

28.    Even as evidence mounted through additional incidents to inform both Defendants that they had accused the wrong person of theft, both SIS and Apple continued to wrongfully identify the Connecticut thief as Ousmane Bah in information circulated to SIS and Apple personnel and to law enforcement, and to insist that Mr. Bah was continuing to commit thefts at other stores as well.

29.    Apple and SIS' allegations that Mr. Bah was a thief and felon in New Jersey were either knowingly false or made with reckless disregard for the truth or falsity of the allegation, and were therefore not subject to any privilege.

30.    Apple and SIS have since learned with virtual certainty that the person who committed the Connecticut and Paramus thefts was not the Plaintiff, Ousmane Bah.

**The Boston Theft**

31.     On May 31, 2018, an individual pocketed a total of twelve individual Apple Pencils (or styluses), each worth $100, from various locations in Apple's store located on Boylston Street in Boston, MA.  The thefts occurred over a five- to ten-minute period before the thief exited the store, at which time the thefts were discovered by Apple and/or SIS, likely through technological means (see below).

32.     After the thief exited the store and Apple and SIS were on notice of the theft, Sheldon, the Loss Prevention Specialist at the Apple Store called the Boston Police Department and informed them that a theft had occurred and was recorded on store video.

33.     Despite the very brief time interval between the discovery of the thefts and Apple's telephone call, Sheldon told the police that Apple (and/or SIS) had positively identified the person who had committed the thefts in Boston as the same person who had committed the Connecticut theft, and identified that person positively as Ousmane Bah.

34.     Upon information and belief, the Apple employee who called the Boston Police Department relied upon the video or photographic documentation Apple and/or SIS had in its records concerning the Connecticut theft, including Apple and/or SIS' misidentification of the thief at that time as Ousmane Bah.

35.     Upon information and belief, the thief in Boston was the same individual who committed the Connecticut thefts.

36.     However, that thief was not named Ousmane Bah and was not the Plaintiff.  Mr. Bah was not even in Massachusetts when the thefts occurred, and had never even visited the state.

37.     At the time the Boston thefts occurred, as noted above, both Apple and SIS knew or were constructively aware that its identification of the thief as Bah was unreliable, and that they had by this time identified two very different persons as Bah.  *See still image from Boston security video, Exhibit 1, compared to Paramus thief, Exhibit 2.*

38.     When the Apple employee identified the Boston thief as Ousmane Bah, the employee did not advise Boston police officers that Apple and SIS' identification of Bah was conflicted or unreliable.

39.     Subsequently, on May 31, 2018, John Beswick, a Boston SIS employee, on behalf of SIS and as an agent for Apple, filed a police incident report identifying the Boston thief as Plaintiff Ousmane Bah.

40. The police incident report filed by Beswick falsely accused Ousmane Bah of committing a theft of Apple property.

41. Beswick filed the police incident reports accusing Ousmane Bah of the Boston thefts with the intent or expectation of inducing law enforcement to charge Mr. Bah and to cause Mr. Bah to be taken into custody and made subject to prosecution.

42. The representations and incident reports provided by Beswick on behalf of SIS and Apple were without probable cause, as the Defendants had actual or constructive knowledge that its identification of Bah as the thief was unreliable at the time that he signed it, and therefore did not possess trustworthy information sufficient to warrant a prudent person believing that the plaintiff had committed or is committing an offense.

43. Apple and SIS' accusation of Ousmane Bah as having stolen merchandise from their Boston, MA store was either knowingly false or made in reckless disregard for the truth or falsity of the allegation, and was therefore not subject to privilege.

## Face Recognition and Apple

44. Simply defined, face (or "facial") recognition is the automated process of comparing two images of faces to determine whether they are the same person.

45. In a simplified technical description, facial recognition depends on an algorithm that creates a method for comparing the two images. Before it can identify someone, a face recognition algorithm must first find that person's face within the photo. Next, the algorithm extracts features from the face that can be quantified, like eye position or skin texture. Finally, the algorithm examines pairs of faces and issues a numerical score reflecting the similarity of their features, which a computer analyzes and provides a set of likely matches.

46. Apple is an innovator in facial recognition technology ("FRT"). Its most advanced cellphones use facial recognition as a means of unlocking its smart phones for use, so that a phone owner need only show his or her face to its screen to allow the phone to recognize its user and unlock without further action.  Apple calls this feature "Face ID."

47. There is an enormous potential commercial market for the use of FRT in law enforcement and retail security. Law enforcement and retailers hope to use security cameras to capture the commission of a crime and to promptly use FRT to quickly identify the offender based solely upon imaging, using central databases or other collections of images to connect an offender's photograph to a name with immediacy, so as to allow criminal identification and apprehension in near real-time.

48.  Several of Apple's technology competitors have aggressively developed FRT as a product for sale to law enforcement as loss prevention methods or to identify unlawful actors via security cameras at businesses or on streets.

49.  However, the state of the art of FRT technology is not presently adequate to provide reliable positive identification of offenders, particularly in the identification of persons of color, as current systems have a high rate of erroneous identification.

50.  As FRT is not sufficiently developed to provide positive identification, any current identification relying on FRT would lack probable cause, as it would not be sufficient to warrant a prudent person to believe that the person identified through FRT was the one who had committed or was committing an offense.

51.  Nevertheless, FRT is being used by police departments in several jurisdictions as an enforcement aid.  Numerous technology-based companies are currently marketing their own FRT not only to law enforcement departments, but also to private companies specifically to aid in the deterrence of shoplifting, which is a major problem facing store retailers, especially in the technology area, where small pocket-size components are worth hundreds to thousands of dollars.

52.  In addition to its leadership in FRT technology, Apple has used technological means to protect its products from store theft and shoplifting. Apple displays its products in stores without locks or tethers as a marketing strategy (because tethering products deters customers from playing or handling with devices and suppresses interest).  Since this lack of tethering increases the risk of theft, Apple has used its resources to create geolocation sensors and software linked to its systems (iBeacon) to detect when a product has left its store without authorization.

53.  Apple has also developed hardware and software which renders a stolen device completely inert and dysfunctional when it leaves store premises.

54.  Given Apple's use of technology to attempt to deter or prevent store theft; its status as a leader in facial recognition technology; and substantial business and law enforcement interest in use of facial recognition for crime deterrence as well as loss prevention, it defies logic that Apple would not adapt its facial recognition product for commercial use (perhaps under a different name than "Face ID") in its stores.

55.  As noted above, at the time of the Boston theft, Apple and SIS possessed images of the Connecticut offender from security video and used the images in some fashion to identify Bah as the thief to Boston Police.

56. As also noted, the identification of Bah by telephone after the Boston theft occurred less than 10 minutes following the theft, and an even shorter interval after the thief exited the store.

57. Somehow, during that relatively brief time interval, Apple staff and SIS personnel identified that merchandise had left their store without purchase; traced the missing merchandise to an individual depicted on store video and watch the theft's occurrence; and then connected that individual with a theft a month earlier at a Connecticut Apple store — all while continuing to serve and observe numerous customers in its ordinarily busy store.

58. The speed in which Apple and SIS personnel related the image of the (wrongfully identified) Boston thief to the (wrongfully identified) Connecticut thief, virtually in real time, is strongly suggestive that Apple, SIS, or both used FRT as an aid in its "positive" identification of the thief as Ousmane Bah.

59. As discussed below, the New York Police represented to Bah or Bah's representatives that Apple or SIS likely used some form of FRT to identify Bah as the thief in New York.

60. Based upon these inferences, Plaintiff, upon information and belief, represents that either Apple or SIS utilized FRT as a substantial part of its identification of the Boston thief as Ousmane Bah, based upon its association of Bah's name with the image of the Connecticut thief, who was the same individual as the one in Boston.

61. Apple and/or SIS knew or should have known that FRT was an unreliable basis for identifying a thief from security video, and their use of the technology, if occurring, to identify a thief as Bah from a security video was too unreliable to reasonably claim that Bah had committed a crime, especially as it was also derived from an inaccurate and unreliable association of Bah's name to the video from an ID without a picture.

**The Boston Investigation and Apple's Misrepresentation of Exculpatory Evidence**

62. In June 2018, Mr. Bah was notified of a warrant for his arrest for the Boston theft and voluntarily appeared in Boston for his initial arraignment.  This was his first notice that he had been accused of theft from an Apple store.

63. Since his first notice of any criminal charges, Mr. Bah has lived in continual fear, especially given his immigration status. Mr. Bah was brought to this country legally by his parents when he was very young and is presently a lawful permanent resident of the United States.  He has applied for citizenship.  Up to this point, he had a completely clean criminal record.

64. The threat of these false charges to Mr. Bah has caused him a high level of anxiety and fear. Given his immigration status, the false charges carried with them a risk of Bah's permanent deportation from the United States.  Mr. Bah is further aware of press reports of federal authorities taking nonpermanent residents into custody based upon the filing of criminal charges such as those presented by Defendants, justifying his ongoing fears.

65. Even given Apple's actual notice that it and its security company SIS' charges are false, the Defendants have done nothing to clear the damage they have caused to Mr. Bah's reputation or his criminal record, and criminal charges remain outstanding in New Jersey.

66. Further, in the current climate, the Defendants' charges in several states of felonious activity are likely have a negative impact upon Bah's application for permanent citizenship.

67. Moreover, Apple heightened Mr. Bah's anxiety by falsely claiming it had disposed of the security camera recording, which would completely clear him of the Boston charges.

68. Following Mr. Bah's initial arraignment in the summer of 2018, Bah's defense counsel served Apple with a subpoena for the Boston store security video as part of preparation of Mr. Bah's defense.

69. On October 19, 2018, "Greg C.," an Apple Privacy & Law Enforcement Compliance team member, responded to the subpoena by emailing counsel, informing him falsely that the store security video had been routinely erased or otherwise destroyed.  *(See Apple email, Exhibit 3).*

70. Apple's representation that the video was somehow routinely destroyed was either knowingly false at the time that it was presented or was advanced recklessly with no regard to its truth or falsity, and served to heighten and prolong Mr. Bah's fear and anxiety.

71. On October 20, 2018, the day after Apple 's misrepresentation, Ousmane Bah received a notice from Monmouth County District Court in New Jersey alleging that he had been charged with theft for the Paramus incident.  This court letter was Mr. Bah's first notice that he had been falsely accused by Apple and SIS of theft in multiple jurisdictions.

72. Three months later, in January 2019, with no explanation, Apple produced the subject video.  Although the video, as stated above, shows that the Boston thief was not Ousmane Bah, neither SIS nor Apple voluntarily withdrew SIS' sworn criminal allegations; apologized to Bah; explained or apologized for the false charge of felony theft filed by SIS as Apple's agent; apologized for or explained its

false representation that the exculpatory video had been withheld or presented as destroyed;  nor have taken any steps to clear the false charges caused by its accusations.

73.   These actions are further demonstrative of Apple and SIS' malicious intent or recklessness in presenting, and failing to withdraw, the false and misleading charges in New Jersey and Massachusetts, as well as their defamatory representations from Connecticut.

### The Freehold, New Jersey Theft

74.   On September 24, 2018, an unknown individual or individuals committed multiple thefts of merchandise from an Apple store in Freehold, NJ.  The thief or thieves escaped and were not detained.

75.   Apple, through its own employee or its agent SIS' employee, informed the Freehold police of the subject theft.

76.   Furthermore, using the incorrect identification which Apple and SIS derived from the Connecticut detention, the Paramus arrest, and/or the Boston theft and using imaging information from one or more of those events, all of which were in Apple and SIS' possession or control at the time, Defendants SIS and Apple again falsely and erroneously identified the thief as Ousmane Bah.

77.   Upon information and belief, Apple possessed, and still possesses, imaging and/or security video showing the theft and the thief.  This imaging evidence, along with the imaging evidence from Connecticut, Paramus, and Boston, would show that at least two different individuals were identified by Defendants as Ousmane Bah; that the Freehold thief was not Ousmane Bah; and, other than being of color, did not resemble him.

78.   At this time, both Defendants were actually or constructively aware that two different individuals had used an ID card without a photograph to claim they were Ousmane Bah, and were therefore both Defendants were actually or constructively aware that their identification evidence was either false or at best ambiguous.

79.   On or about September 20, 2018, Steven Yhap, an SIS employee, acting on SIS and Apple's behalf, filed a complaint with the police falsely accusing for Ousmane Bah's of committing a theft in Freehold.

80.   Yhap filed the criminal complaint accusing Ousmane Bah for the Freehold thefts with the intent or expectation of inducing law enforcement to charge Mr. Bah and to cause Mr. Bah to be taken into custody and made subject to prosecution.

81.  The police report filed by Yhap on behalf of SIS and Apple was without probable cause, as the Defendants had actual or constructive knowledge that its identification of Bah as the thief was unreliable at the time that he signed it, and therefore their accusation lacked reasonably trustworthy information sufficient to warrant a prudent man to believe that the plaintiff had committed or was committing an offense.

82.  Apple and SIS' claim to Freehold law enforcement that Mr. Bah had committed the alleged theft was made with reckless disregard of its truth or falsity, and was therefore not subject to privilege.

### The New York Thefts and Arrest

83.  In November 2018, an individual or individuals committed three separate thefts in at least four Apple stores in the New York area, including two in Manhattan, one in the Bronx, and one in Staten Island.

84.  Once again, Apple and/or SIS employees, acting on Apple's behalf, contacted law enforcement and advised them that an individual, whom they falsely identified as Ousmane Bah, had stolen merchandise, and filed a police report for Mr. Bah's arrest.

85.  At the time of the New York warrants, Apple and its agent, SIS, had in its possession documentary and video evidence that its identification of Ousmane Bah as the New York thief was false and/or unreliable, and that at least two different individuals identified by Apple and SIS as Ousmane Bah were incorrectly identified as him.

86.  Upon information and belief, Apple possessed, and still possesses, imaging and/or security video showing the Freehold thefts and the thief.   This imaging evidence, along with the imaging evidence from Connecticut, Paramus, Boston, and Freehold, as well as the imaging obtained in the New York thefts, would show that at least two different individuals were wrongfully identified by Defendants as Ousmane Bah, and that the thieves in the three New York events were not Mr. Bah.

87.  Despite that actual or constructive knowledge, Apple, by and through its own employees or by employees of its agent, SIS, filed false police reports seeking the arrest of Ousmane Bah for the New York thefts, with the intent or expectation of inducing law enforcement to charge Mr. Bah and to cause Mr. Bah to be taken into custody and made subject to prosecution.

88.   The warrants for Ousmane Bah's arrest were without probable cause at the time they were issued and based upon false and inaccurate representations by Apple and SIS personnel.

89.   Apple and SIS' accusations that Ousmane Bah committed the New York thefts were knowingly false and/or made with reckless disregard for the truth or falsity of their allegations, and was therefore not subject to privilege.

### The New York Arrest

90.   On November 29, 2018, at approximately 4 AM, New York police acted upon Apple's criminal complaints and came to Mr. Bah's family home to arrest him for the New York thefts. In front of his family, he was placed in handcuffs and taken away by officers and into custody.

91.   At the time of the arrest, Mr. Bah was still being prosecuted, albeit wrongfully, for the Boston thefts, and based upon Apple's false representation to his counsel, believed that the one piece of evidence which would definitively absolve him of these thefts had been destroyed by Apple. This misrepresentation further increased Mr. Bah's fear and stress.

92.   Further, at the time of the arrest, Mr. Bah was aware that he had been allowed to leave Massachusetts on his own recognizance, but that occurrence of any other crime might lead to violation of the terms of his release and incarceration either in New York or Massachusetts while awaiting trial.

93.   Further, at the time of the arrest, Mr. Bah was aware that the felony charges issued against him in Boston and in New York could lead to being placed in removal proceedings with Immigration and Customs Enforcement and USCIS.

94.   After being taken to a New York City precinct, a New York City police detective advised Mr. Bah that Apple's imaging of the New York thief did not match his appearance and released him. The New York charges were subsequently dropped.

95.   Mr. Bah was further advised by the detective that it was likely that Mr. Bah was incorrectly identified based upon a facial recognition system utilized by Apple or SIS.

### The Freehold Charges

96.   On December 6, 2018, less than two weeks after the New York arrests, Mr. Bah received by mail notice of charges in the Freehold County District Court for his arrest for the Freehold thefts, based upon the false accusations made by Apple and/or its agent, SIS, to the Freehold police.

97.    At the time these charges were filed, Apple and/or its agent, SIS, had actual or constructive knowledge of the Connecticut detention; the Paramus, New Jersey theft and detention; the Boston, Massachusetts theft and prosecution; and the New York City arrest and release of Mr. Bah based upon Apple's false and inaccurate identification of Mr. Bah as the thief that had committed each of these criminal events.

98.    At the time these charges were filed, further, Apple and/or its agent, SIS, had actual or constructive knowledge that Mr. Bah was innocent of each of these thefts, and that it had wrongfully charged Mr. Bah with theft in multiple states throughout the Northeast based upon identification information which was false and objectively unreliable.

99.    At the time these charges were filed, Apple and its agent, SIS, also had actual or constructive knowledge that they had in their possession or control imaging evidence which would conclusively clear Mr. Bah of its accusations of thefts in Boston and New Jersey.

100.   Nevertheless, neither Apple nor SIS ever advised law enforcement officials in New Jersey, Boston, or New York that it had possession of this exculpatory evidence. Moreover, as noted above, Apple affirmatively misrepresented to Boston law enforcement and Mr. Bah's attorney that at least a portion of this information was deleted or destroyed.

101.   After misleading both Mr. Bah's Boston counsel that security video showing the thefts had been destroyed, upon pressure from both Mr. Bah's counsel and the Boston prosecutor (because of threat of dismissal of the action based upon Apple's destruction of evidence), in January 2019 Apple spontaneously and without any explanation produced a store video showing the Boston thief committing the crime.  As alleged, the thief was not only not Mr. Bah, but in no way resembled him.

102.   After remaining under threat of wrongful conviction for more than eight months, and after Apple withheld the video that would conclusively clear his name in Boston for more than five months, the Boston charges were subsequently *nolle prossed*.

103.   Furthermore, at this point Apple and SIS are now aware that an allegedly "unknown" suspect is in custody for the Staten Island theft which it claimed Mr. Bah had committed, and for which they had sought Bah's arrest and prosecution.

104.   However, at no time has either Defendant taken any action to advise the police departments or law enforcement officials in any jurisdiction that it had falsely accused Mr. Bah, or that he was innocent of the claims they had made against him, even though they had actual knowledge that law enforcement, as they had wished

and expected, had initiated criminal proceedings against Mr. Bah and had charged him with the crimes Defendants claimed that he committed.

105.   Currently, more than a year after the initial wrongful accusations, Mr. Bah remains under threat of prosecution.   As of the time of filing this Complaint, the prosecutions against Mr. Bah in New Jersey remain active on the Court docket, although Plaintiff has retained counsel to obtain dismissals.

106.   Apple and SIS' loss prevention and investigation practices, including their reckless obtaining and publication of incorrect, misleading, and false charges against an innocent man; their failure to advise law enforcement of inconsistent and exculpatory information; and their repeated false accusations based upon increasingly evident unreliable identification, to the point of swearing out warrants identifying Mr. Bah as a thief when they knew that their evidence of commission of a crime was at best unreliable; their failure to disclose exculpatory video; and their conducting of a criminal investigation of their store thefts without following established principles of investigation were all, individually and collectively, unreasonable, in bad faith, and with little to no regard for the truth or falsity of their investigative conclusions or claims made against Mr. Bah.

107.   In every case, Apple and SIS desired and expected that Mr. Bah would be arrested, charged, and prosecuted, and possibly imprisoned for theft of their property in each state and took specific action to achieve that result, including the swearing out of complaints with unreliable identification evidence that resulted in prosecutions in three states and actual custody in New York.

108.   Mr. Bah was significantly injured as a result of these reckless actions. He was made subject to criminal process; deprived of his freedom; put in fear of his residence status in the United States, and of his future citizenship; was substantially embarrassed and has suffered significant psychological harm with physical manifestations, including insomnia, depression, exhaustion, and continual anxiety as to what effect these repeated false charges will have on his record and whether they will interfere with his post-college employment and career.   He lives in continuing fear that additional false charges will be made against him, and that he might again be apprehended without cause.

109.   He further remains concerned that his application for permanent status and citizenship, which was in progress at the time of Apple and SIS' seeking of criminal charges against him, will be irreparably harmed and therefore denied as a result of the criminal record which Apple and SIS have created.

## COUNT I
## (Defamation – Apple)

110.   Plaintiff repeats the above allegations and incorporates them herein by reference.

111. Apple and SIS' (as Apple's agent) actions, as described above, constituted false statements accusing the Plaintiff of committing a crime published to its own personnel, and to law enforcement personnel, in Connecticut, Massachusetts, New York, and New Jersey.

112. The statements to law enforcement were made by either Apple employees or SIS employees acting individually or on Apple's behalf and as Apple's agents.  The actual identity of the actor in the case of the Massachusetts theft who published false statements to law enforcement has been identified in this Complaint.  The person(s) in New York and Connecticut who published such allegations are unknown at present but will be exposed through discovery.

113. The untrue representations made orally by Apple and/or SIS (individually and as Apple's agent) were slanderous and injured the reputation of the Plaintiff.

114. The untrue representations made in writing by Apple or SIS, individually and/or as Apple's agent were libelous.

115. Apple 's accusations and representations that Mr. Bah had committed a crime each and collectively constituted defamation *per se*.

116. As noted above, these false statements were published with reckless disregard for their truth or falsity, and are not subject to privilege under the laws of each state where each such defamatory act was committed.

117. As a result of the defamatory actions of the Defendants, individually and collectively, Plaintiff has suffered injury to his reputation, humiliation, embarrassment, and likely loss of future earning potential, as well as loss of enjoyment of the quality of his life.

## COUNT II
### Defamation – SIS

118. Plaintiff repeats the above allegations and incorporates them herein by reference.

119. SIS' actions, as described above, constituted false statements accusing the Plaintiff of committing a crime and published said statements to its own personnel, to Apple employees, and to law enforcement personnel in Connecticut, Massachusetts, New York, and New Jersey.

120. The untrue representations made orally by SIS (individually and as Apple's agent) were slanderous and injured the reputation of the Plaintiff.

121. The untrue representations made in writing by SIS as Apple's agent were libelous.

122.   As noted above, these false statements were published with reckless disregard for their truth or falsity, and are not subject to privilege under the laws of each state where each such defamatory act was committed.

123.   SIS' accusations and representations that Mr. Bah had committed a crime each and collectively constituted defamation *per se.*

124.   As a result of the defamatory actions of SIS, individually and in joint venture with Apple, Plaintiff has suffered injury to his reputation, humiliation, embarrassment, and likely loss of future earning potential, as well as loss of enjoyment of the quality of his life.

## COUNT III
### (Malicious Prosecution – Apple)

125.   Plaintiff reiterates the allegations made in the above paragraphs and incorporates them herein by reference.

126.   Apple owed a duty to the Plaintiff to refrain from accusing him of committing a crime without probable cause, under the laws of each state where it made such an accusation.

127.   Apple, through its employees and through its agent for security purposes, SIS, falsely accused Plaintiff of committing a crime, with the intent and expectation that Plaintiff would be taken into custody, prosecuted, and punished therefor.

128.   At the time of each of these accusations, Apple expected and intended that Defendant SIS act on its behalf and in furtherance of its interests for purposes of the criminal accusations, and in all such cases, SIS acted as Apple's agent.

129.   At the time that Apple and/or SIS, individually and/or collectively, accused Plaintiff of having stolen merchandise from their store, as noted above, their accusations were with actual or constructive knowledge of their falsity, and therefore lacked probable cause, as they lacked reasonably trustworthy information sufficient to warrant a prudent person in believing that the plaintiff had committed or was committing an offense.

130.   Moreover, Apple and SIS knowingly or recklessly misrepresented the status of evidence in these prosecutions with actual or constructive notice that it would tend to prove the innocence of Mr. Bah, whom they had falsely charged.

131.   Apple's actions constituted malicious prosecution of the Plaintiff, resulting in damage and injury to the Plaintiff.

## COUNT IV
### (Malicious Prosecution – SIS)

132. Plaintiff reiterates the allegations made in the above paragraphs and incorporates them herein by reference.

133. SIS owed a duty to the Plaintiff to refrain from accusing him of committing a crime without probable cause, under the laws of each state where it made such an accusation.

134. SIS falsely accused Plaintiff of committing a crime in New Jersey, Massachusetts, and New York, with the intent and expectation that Plaintiff would be taken into custody, prosecuted and punished therefor.

135. At the time SIS accused Plaintiff of having stolen merchandise from their store, as noted above, their accusations were with actual or constructive knowledge of their falsity, and therefore lacked probable cause, as they lacked reasonably trustworthy information sufficient to warrant a prudent man in believing that the plaintiff had committed or was committing an offense.

136. Moreover, Apple and SIS knowingly or recklessly misrepresented the status of evidence in these prosecutions with actual or constructive notice that it would tend to prove the innocence of Mr. Bah, whom they had falsely charged.

137. SIS actions constituted malicious prosecution of the Plaintiff, resulting in damage and injury to the Plaintiff.

138. As a result of SIS' repeated false criminal charges and reckless disregard for truth or falsity of the allegations made in Connecticut, Massachusetts, New York, and New Jersey, Mr. Bah has suffered fear of prosecution, fear for his safety and personal freedom, embarrassment, humiliation, and significant stress, as well as physical sequelae from such emotional harm, including insomnia and extreme weariness.

## COUNT V
### Intentional and Negligent Infliction of Emotional Distress – Apple

139. Plaintiff repeats the above allegations and incorporates them herein by reference.

140. Apple's misidentification of the Plaintiff, reliance upon inadequate documentation to make a positive identification, identification of different individuals as the Plaintiff, reliance upon automated systems which failed to reliably identify the Plaintiff (including the possible use of FRT), repeated false allegations of criminal activity against the Plaintiff in multiple states, withholding and failure to disclose exculpatory evidence, misleading of Mr. Bah and law enforcement concerning the

exculpatory video, and failure to withdraw the false criminal charges when they had actual or constructive notice of their falsity, were, individually and collectively, outrageous, negligent and reckless in the extreme, with the likely and foreseeable result that Mr. Bah would suffer emotional harm.

141. As a result of Apple's repeated false criminal allegations and reckless disregard for truth or falsity of the allegations made in Connecticut, Massachusetts, New York, and New Jersey, Mr. Bah has suffered fear of prosecution, fear for his safety and personal freedom, embarrassment, humiliation, and significant stress, as well as physical sequelae from such emotional harm, including insomnia and extreme weariness.

## COUNT VI
### Intentional and Negligent Infliction of Emotional Harm – SIS

142. Plaintiff reiterates the above allegations and incorporates them herein by reference.

143. SIS' misidentification of the Plaintiff, reliance upon inadequate documentation to make a positive identification, identification of different individuals as the Plaintiff, reliance upon automated systems which failed to reliably identify the Plaintiff (including the possible use of FRT), repeated false allegations of criminal activity against the Plaintiff in multiple states, withholding and failure to disclose exculpatory evidence, misleading of Mr. Bah and law enforcement concerning the exculpatory video, and failure to withdraw the false criminal charges when they had actual or constructive notice of their falsity, were, individually and collectively, outrageous, negligent and reckless in the extreme, with the likely and foreseeable result that Mr. Bah would suffer emotional harm.

144. As a result of SIS repeated false criminal allegations and reckless disregard for truth or falsity of the allegations made in Connecticut, Massachusetts, New York, and New Jersey, Mr. Bah has suffered fear of prosecution, fear for his safety and personal freedom, embarrassment, humiliation, and significant stress, as well as physical sequelae from such emotional harm, including insomnia and extreme weariness.

## COUNT VII
### Civil Rights:  Private Right of Action
### (Massachusetts G.L. c. 12 §11A) – Apple

145. Plaintiff repeats the above allegations and incorporates them herein by reference.

146. Under federal and Massachusetts law, Plaintiff Ousmane Bah has a constitutional right to his freedom; to be free from wrongful, false, or malicious charges or prosecution; to not be falsely charged with crimes he did not commit; and to be

accused, charged or arrested for a crime only with probable cause; and to due process under the law.

147.   Apple's reckless initiation of prosecution of the Plaintiff for theft in Boston, as described herein, violated the Plaintiff's civil rights, and contributed to his being arrested and taken into custody for the New York thefts.

148.   Massachusetts General Laws c. 12 §11I provides as follows:

> Any person whose exercise or enjoyment of **rights** secured by the constitution or laws of the United States, or of **rights** secured by the constitution or laws of the commonwealth, has been interfered with, or attempted to be interfered with, as described in section 11H, may institute and prosecute in his own name and on his own behalf a **civil** action for injunctive and other appropriate equitable relief as provided for in said section, including the award of compensatory money damages.

149.   Specifically, the statute creates a right of action against private actors who act to deprive individuals of civil rights, and does not require that an offender act under color of state law.

150.   Apple's false accusation of Bah in Boston; inducement of its agent, SIS, to file false criminal complaints for Bah's arrest; failure to alert prosecutors that its identification of Bah as the alleged thief was erroneous, uncertain or misleading; withholding of exculpatory information from police; misleading prosecutors and defense counsel regarding evidence which would conclusively demonstrate Bah's innocence from Apple's charges; and failure to withdraw such charges upon constructive and actual knowledge of their falsity; all without the Constitutional and ethical protections to the accused owed by prosecutors to the accused; all constitute violation of Plaintiff's civil rights.

151.   Moreover, as Apple was not part of state law enforcement, and Apple's accusations were made in reckless disregard for the truth or falsity of the allegations, Apple's actions were not privileged under Massachusetts law.

152.   Furthermore, Apple's action in Massachusetts, including likely use of the Massachusetts mis-identification to identify Bah as the thief in the New York shoplifting episodes, were a substantial contributing cause of his arrest and detainment in New York, in which Bah was wrongfully arrested and wrongfully taken into custody by New York Police relying upon identifications furnished by Apple and its agent, SIS.

153.   As a direct and proximate result of Apple's violation of Bah's civil rights, Bah suffered significant emotional distress; was subjected to prosecution in Massachusetts, and was forced to appear repeatedly in court to defend himself;

was arrested, placed into custody, and deprived of personal freedom in New York; and was subjected to wrongful prosecution in New Jersey.

## COUNT VIII
## Civil Rights:  Private Right of Action
## (Massachusetts G.L. c. 12 §11A) – SIS

154.   Plaintiff repeats the above allegations and incorporates them herein by reference.

155.   SIS' false accusation of Bah in Boston; inducement of its agent, SIS, to file false criminal complaints for Bah's arrest; failure to alert prosecutors that its identification of Bah as the alleged thief was erroneous, uncertain or misleading; withholding of exculpatory information from police; misleading prosecutors and defense counsel regarding evidence which would conclusively demonstrate Bah's innocence from Apple's charges; all without the Constitutional and ethical protections to the accused owed by prosecutors to the accused; all constitute violation of Plaintiff's civil rights.

156.   Moreover, as SIS was not part of state law enforcement, and Apple's accusations were made in reckless disregard for the truth or falsity of the allegations, SIS' actions were not privileged under Massachusetts law.

157.   Furthermore, SIS' action in Massachusetts, including likely use of the Massachusetts misidentification to identify Bah as the thief in the New York shoplifting episodes, were a substantial contributing cause of his arrest and detainment in New York, in which Bah was wrongfully arrested and wrongfully taken into custody by New York Police relying upon identifications furnished by Apple and its agent, SIS.

158.   As a direct and proximate result of SIS' violation of Bah's civil rights, Bah suffered significant emotional distress; was subjected to prosecution in Massachusetts, and was forced to appear repeatedly in court to defend himself; was arrested, placed into custody, and deprived of personal freedom in New York; and was subjected to wrongful prosecution in New Jersey.

WHERFORE, Plaintiff demands that this Court enter judgment in an amount which it finds just and equitable for the damages suffered by Plaintiff; together with costs and attorney's fees (pursuant to G.L. c. 12 11I); together with such other relief which this Court finds just and equitable.

Respectfully submitted,

__s/Subhan Tariq_____
Subhan Tariq, Esq.
The Tariq Law Firm, PLLC

Attorneys for Plaintiff
34-18 Northern Blvd – Suite 2-25
Long Island City, NY 11101

To:

Carrie Cohen, Esq.
Katie Viggiani, Esq.
*Counsel for Apple Inc.*
(via ECF)

David L. Metzger, Esq.
*Counsel for Security Industry Specialists, Inc.*
(via ECF)

Clerk of the Court,
United States District Court
Southern District of New York
500 Pearl Street
New York, NY 10007
(for filing purposes)