UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

Docket No. 19cv3539

OUSMANE BAH,
     Plaintiff

**PLAINTIFF'S OMNIBUS
MEMORANDUM
IN OPPOSITION TO DEFENDANTS'
MOTIONS TO DISMISS**

    v.

APPLE CORPORATION and
SECURITY INDUSTRY
SPECIALISTS, INC.
     Defendants

---

Submitted by:

Plaintiff,
By his attorney,

_____
Daniel Malis, Esq.,  BBO # 315770
MALIS|LAW
30 2nd Street
Cambridge, MA  02141
(617) 491-1099
daniel.malis@malislaw.com

Dated:  September 11, 2019

TABLE OF CONTENTS

**Facts**                                                                                      1

**Argument**                                                                                  10

**I.**     **APPLE'S ROLE AS A CONSUMER STORE  SELLING GOODS IN**          10
        **NEW YORK, AND DEFENDANTS' FALSE ACCUSATIONS OF BAH**
        **AS A THIEF IN NEW YORK RESULTING IN ARREST, WARRANT**
        **A FINDING OF PERSONAL JURISDICTION OVER BOTH DEFENDANTS.**

    **A.**     **<u>Plaintiff Need Only Prove That Facts "May Exist" Supporting</u>**     10
        **<u>Personal Jurisdiction to Defeat Defendants' Motion.</u>**

    **B.**     **<u>This Court Has Specific Jurisdiction Over Both Apple and SIS.</u>**     12

        1.   Standard In Defamation Case                                       12

        2.   Plaintiff's Allegations Establish a Nexus Between          14
        Defendants' False Claims and Their Activities in
        New York and Elsewhere

        3.   There is a Nexus Between Apple's Activities in New York     15
        and the Allegations in the Plaintiff's Complaint.

        4.   There is a Nexus Between SIS' Activities as an Investigation     15
        Agency With a Nationwide Presence, Including in New York,
        and the Series of Defamatory Acts Leading to Plaintiff's
        Wrongful Detainment.

    **C.**     **<u>This Court Has Jurisdiction Over Both Defendants Based Upon</u>**     21
        **<u>the Malicious Prosecution and Emotional Distress Claims,</u>**
        **<u>Which Are Not Subject to Jurisdictional Limitations Under</u>**
        **<u>New York Law</u>**

**II.**    **THE FACTS ALLEGED IN PLAINTIFF'S COMPLAINT STATE**          26
        **JUSTICIABLE CLAIMS OF LIBEL AND SLANDER, WARRANTING**
        **DENIAL OF DEFENDANT APPLE'S MOTION**

    **A.**     **<u>The Plaintiff's Defamation Claims Are Not Barred By</u>**          26
        **<u>Defendants' Claim of Qualified "Law Enforcement Related</u>**
        **<u>Privilege."</u>**

1. **The Privilege Defense Cannot Be The Basis of a Rule 12(b)(6) Dismissal**     27

2. **Existing Case Law In This Circuit Precludes Dismissal of this Complaint, As Plaintiff Has Asserted Sufficient Facts to Infer Recklessness and Malice in Fact, Which Defeats the Qualified Privilege.**     27

III.    VENUE CONCERNING PLAINTIFF'S MALICIOUS PROSECUTION CLAIM IS APPROPRIATE IN NEW YORK     29

IV.    JUDICIAL ECONOMY WARRANTS DENIAL OF THE DEFENDANTS' MOTIONS     30

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

Docket No. 19cv3539

OUSMANE BAH,
    Plaintiff

**PLAINTIFF'S OMNIBUS
MEMORANDUM
IN OPPOSITION TO DEFENDANTS'
MOTIONS TO DISMISS**

    v.

APPLE CORPORATION and
SECURITY INDUSTRY
SPECIALISTS, INC.
    Defendants

---

### Facts[1]

At all times relevant to this Complaint, Defendant Apple operated retail stores in Connecticut; Paramus, New Jersey; Freehold, New Jersey; Boston, Massachusetts; and in varying locations in New York.  ¶8.  Defendant SIS, under contractual agreement with Apple, provided security services at these stores, and acted as Apple's agent in criminal enforcement and security matters concerning its stores and loss prevention.  ¶9.

On March 26, 2018, Plaintiff Ousmane Bah obtained a learner's permit for operation of a motor vehicle with the supervision of a licensed driver in New York State.  The temporary form consisted of a computer printout listing Mr. Bah's height, weight, date of birth, and eye color, but had no identifying photograph. The learner's permit stated a disclaimer in bold capital letters: "**THIS TEMPORARY DOCUMENT IS NOT VALID FOR IDENTIFICATION**

---

[1]      Pursuant to FRCP 12(b)(6), the allegations in Plaintiff's Complaint are alleged here as true.  This discussion also draws inferences from those facts to the Plaintiff's benefit, as required by that Rule.  All paragraph references refer to the Plaintiff's Amended Complaint.

PURPOSES." ¶10. At some point prior to May 2018, the Plaintiff's temporary learner's permit went missing. ¶11.

**The Connecticut Incident[2]**

In Connecticut, sometime before the end of May 2018, SIS and Apple caused to be detained an individual it claimed to be the Plaintiff, Ousmane Bah, and accused the individual of having stolen merchandise from one of its stores. ¶12. Defendants, individually and jointly, identified the individual as Bah with Mr. Bah's "missing" permit. Apple or SIS' reliance upon that ID to identify the thief, which on its face said it was not valid for identification purposes, was therefore unreasonable and negligent. ¶14, 17. Both Defendants retained video evidence of the alleged thief stealing Apple property. ¶16.

The thief was not the Plaintiff, did not resemble Mr. Bah physically, and in no way met the description on the ID. ¶14, 15. Nevertheless, Defendants falsely and recklessly alerted other SIS and Apple locations that the thief depicted in its store video was Plaintiff Ousmane Bah, and circulated this information both to SIS and Apple personnel in Connecticut and other states, including New York, New Jersey, and Massachusetts. ¶16.

**The Paramus, New Jersey Incident**

---

[2]     Since the filing of this Amended Complaint, the Plaintiff, in part due to the Court's ordering the Defendants to disclose locations where the Plaintiff was claimed to have committed theft, have produced additional evidence of even more locations where false charges have been alleged by SIS on behalf of Apple, totaling more than 20 different incidents. *See SIS counsel letter, June 26, 2019, Exhibit 4.* These claims will be incorporated into this litigation as well, as they derive from the same overarching fact pattern and method of wrongful identification as the ones listed in the Complaint.

On May 24, 2018, SIS, acting on behalf of Defendant Apple, apprehended a different person, identified him as Ousmane Bah, and accused him of stealing merchandise from an Apple store in Paramus, New Jersey. That person was subsequently surrendered to Paramus police and placed under arrest. ¶20. This second thief was *also* not Ousmane Bah, did not resemble Mr. Bah physically, in no way met Mr. Bah's description on the learner's permit, and also looked nothing like the Connecticut thief.  *¶21, 22; Extracted Video Image, Exhibit 2 to Plaintiff's Complaint; Photo from Booking Sheet, Paramus Police Department, Exhibit 3 to Plaintiff's Complaint.*

Casual comparison of the images would have shown the Defendants' identification of these two individuals as the same person was totally unfounded and incorrect. ¶25.  However, despite the obvious inconsistencies between the Connecticut and Paramus images, and despite the suspect means of identification used by Defendants to identify the thieves, Apple and SIS personnel recklessly continued to positively identify both the Connecticut and Paramus, NJ thieves as Plaintiff Ousmane Bah to other law enforcement officials in New Jersey and surrounding states, including New York. ¶26.  Neither SIS nor Apple ever revealed to law enforcement authorities or Mr. Bah that they possessed conflicting or unreliable evidence making identification of the thief arrested in Paramus or Connecticut as Ousmane Bah unreliable; admitted to Mr. Bah or law enforcement officials that Defendants did not have valid grounds for charging Mr. Bah criminally; or sought retraction of the criminal allegations or charges against Mr. Bah.[3]  ¶27, 28.

---

[3]      Since the filing of the Amended Complaint, SIS agreed to retract one allegation in New Jersey when confronted in open court by Plaintiff's counsel.

To the contrary, Apple and SIS' allegations that Mr. Bah was a thief and felon were either knowingly false or made with reckless disregard for the truth or falsity of the allegation, and were therefore not subject to any privilege. ¶29.

**The Boston Incident**

On May 31, 2018, an individual pocketed $1,200 worth of Apple merchandise from their retail location on Boylston Street in Boston, MA.  The theft occurred over a five- to ten-minute period before the thief exited the store, at which time the thefts were discovered by Apple and/or SIS.  ¶31.  Within minutes of the thief exiting the store, an Apple employee called the Boston Police Department and informed them that a theft had occurred and was recorded on store video. ¶32.  In the minutes between spotting the theft and Apple's phone call to BPD,  the employee and/or SIS identified the person committing the Boston theft as the same person who had shoplifted in Connecticut, and identified that person as Ousmane Bah using the video or photographic documentation Apple and/or SIS had in its records – including the misidentification of the thief as the Plaintiff. ¶34.

However, that accusation was – once again – false.  ¶35-36. The Apple employee failed to alert Boston police that Apple and SIS' identification of Bah was conflicted or unreliable. ¶38.  The accusation was repeated on May 31 by a Boston SIS employee who also failed to alert the police as to its unreliability.   ¶38-41.

Because Apple and SIS' identification was unreliable, the incident reports seeking Bah's arrest were without probable cause.  ¶42.  Apple and SIS' accusations were either

knowingly false or made with reckless disregard for the truth or falsity of the allegation, and were therefore not subject to privilege.  ¶43.

The misidentification of Bah in Boston occurred less than 10 minutes following the theft.  ¶57.  During those 10 minutes, Apple and SIS personnel traced missing store merchandise to a specific individual depicted on store video and watched the theft's occurrence; connected that individual with a theft a month earlier at a Connecticut Apple store; and used that information from the Connecticut incident to name the Boston thief (inaccurately) as Ousmane Bah — all while serving and watching numerous customers in its popular three-floor store.  ¶58.

The speed with which Apple and SIS personnel compared the image of the (wrongfully identified) Boston thief to the (wrongfully identified) Connecticut thief suggests that  Apple, SIS, or both used Facial Recognition Technology ("FRT"), an automated computer software that algorithmically processes and compares identification images, to "positively" identify the thief as Ousmane Bah.  ¶58.  New York Police later confirmed to Bah or Bah's representatives that Apple or SIS likely used some form of FRT to identify Bah as the thief in later incidents in New York.  ¶59.

However,  Apple and/or SIS knew or should have known that FRT was an unreliable basis for identifying a thief from security video.  ¶61.  Apple or SIS' use of such unreliable technology to accuse an innocent man of committing theft was therefore in reckless disregard of the truth or falsity of the allegation.

**The Boston Investigation and Apple's Misrepresentation of Exculpatory Evidence**

Relying upon Apple and SIS' identification of Bah as the Boston thief, Mr. Bah was charged with theft in Boston and arraigned. ¶62, 68.   Subsequently, in the summer of 2018, Bah's defense counsel served Apple with a subpoena for the Boston store security video.  ¶68. On October 19, 2018, "Greg C.," an Apple Privacy & Law Enforcement Compliance team member, responded to the subpoena by emailing counsel that the store security video had been routinely erased or otherwise destroyed.   ¶69; See Apple email, Exhibit 5.   Apple's representation that the video was somehow routinely destroyed was either knowingly false at the time that it was presented or advanced recklessly with no regard to its truth or falsity. ¶70.

Three months later, in January 2019, Apple mysteriously produced the subject video with no explanation.  Although the video, as stated above, shows that the Boston thief was not Ousmane Bah, neither SIS nor Apple voluntarily withdrew SIS' sworn criminal allegations; explained or apologized for the false charge of felony theft filed by SIS as Apple's agent; nor apologized for or explained its false representation that the exculpatory video had been withheld or presented as destroyed.  Neither Defendant has taken any steps to clear the false charges caused by its accusations.  ¶72.

**The Freehold, New Jersey Theft**

In September 2018, an unknown individual or individuals committed multiple thefts from an Apple store in Freehold, NJ. ¶74. The thief or thieves escaped and were not detained. Defendants SIS and Apple again falsely and erroneously identified the thief as Ousmane Bah by using the incorrect identification derived from the Connecticut detention, the Paramus

arrest, and/or the Boston theft and using imaging from one or more of those events, all of which were in Apple and SIS' possession or control at the time.  ¶76.  Apple and SIS knew or should have known that their own records made this identification questionable and uncertain, but withheld such information from the police.  ¶78.  Reports by SIS personnel to Freehold Police, similar to prior such complaints, were made with reckless disregard for their truth or falsity, and again were not subject to privilege. ¶82.

**The New York Thefts and Arrest**

In November 2018, Apple and/or SIS employees, acting on Apple's behalf, contacted law enforcement and advised them that an individual, again falsely identified as Ousmane Bah, had stolen merchandise from multiple stores in New York, and filed a police report seeking Ousmane Bah's arrest.  As with the previous claims, Apple and SIS' accusations that Ousmane Bah committed the New York thefts were knowingly false and/or made with reckless disregard for the truth or falsity of their allegations and were therefore not subject to privilege. ¶83-87.

All of these accusations were based in part upon the imaging and reports of theft in other states that Apple and/or SIS had circulated across the eastern seaboard, including New York.[4]  ¶86.  These reports were false, misleading, and contained wrongful accusations of Mr.

---

[4]      SIS contends in an affidavit that it did not circulate or provide to Apple any of the identifying information used to allege that Bah stole inventory from an Apple store.  The Court should treat this affidavit with some measure of skepticism, given the history of communications and number of incidents in New Jersey, New York, Connecticut, and Massachusetts in which Apple and SIS appear to have worked in tandem to claim that Bah was a thief.  Indeed, at this stage, without discovery, this Court should also consider that these actions at least create facts from which jurisdiction "may" be found and allow Plaintiff to proceed to discovery to test the level of cooperation and communication between the two companies.

Bah as a felonious thief, and ignored contradictory identification evidence in the Defendants'
possession. Apple and/or SIS recklessly or willfully withheld the contrary identification
information from Apple's other stores and security personnel, as well as the New York City
Police Department.  This withholding was wrongful and tantamount to malice in fact.  ¶87.

**The New York Arrest**

On November 29, 2018, at approximately 4 AM, New York police acted upon Apple's
criminal allegations and arrested Mr. Bah for theft, placing him in handcuffs in front of his
family.  Mr. Bah feared the possibility of deportation and probation violations in
Massachusetts. After being driven in handcuffs to a local precinct, a New York City police
detective advised Mr. Bah that Apple's images of the New York thief did not match his
appearance and released him.  ¶90-94.  The New York charges were subsequently dropped.
Mr. Bah was further advised by the detective that it was likely Mr. Bah was incorrectly
identified based upon Facial Recognition Technology ("FRT") utilized by Apple or SIS.  ¶95.

**The Freehold Charges**

On December 6, 2018, after being freed by the New York City Police, Mr. Bah received
by mail notice of charges in the Freehold County District Court for his arrest for the Freehold
thefts, based upon false accusations made by Apple and/or its agent, SIS, to the Freehold
police. Again, as with the prior allegations of theft, Apple and SIS' ignored and withheld

---

Nevertheless, as argued below, it is reasonable to infer that SIS, a national company, intended and
expected its principal, Apple, to use SIS' investigative materials to pursue Bah in New York, and indeed was aware
that Bah was a New York resident.

evidence from law enforcement showing the unreliability of their identification of Mr. Bah as the thief.[5]  ¶96-99.

Overall, Apple and SIS' loss prevention and investigation practices, including their reckless obtaining and publication of incorrect, misleading, and false charges against an innocent man; their failure to advise law enforcement of contradictory and exculpatory information; their repeated false accusations based upon increasingly evident unreliable identification, to the point of swearing out warrants against Mr. Bah for theft when they knew their evidence was unreliable; and their conducting a criminal investigation without following established principles of inquiry were all, individually and collectively, unreasonable, in bad faith, and with little to no regard for the truth or falsity of their investigative conclusions or claims made against Mr. Bah.  Apple and SIS desired and expected that Mr. Bah would be arrested, charged, prosecuted, and possibly imprisoned for theft in each state and took specific actions to achieve that result, including the swearing out of statements with unreliable identification evidence that resulted in prosecutions in three states and actual physical custody in New York.

Mr. Bah was significantly injured as a result of these reckless actions. He was made subject to criminal process; deprived of his freedom; put in fear of his residence status in the United States and of his future citizenship; was substantially embarrassed and has suffered significant psychological harm with physical manifestations, including insomnia, depression,

---

[5]     SIS' responded to this Court's directive to disclose every event in which Apple or SIS identified Mr. Bah as a thief to law enforcement by listing a total of 11 incidents in three different jurisdictions. *See Counsel Letter dated June 26, 2018, Exhibit 4.*

exhaustion, and anxiety as to what effect these repeated false charges will have on his record and whether they will interfere with his post-college employment and career.

**Argument**

I.   **APPLE'S ROLE AS A CONSUMER STORE SELLING GOODS IN NEW YORK, AND DEFENDANTS' FALSE ACCUSATIONS OF BAH AS A THIEF IN NEW YORK RESULTING IN ARREST, WARRANT A FINDING OF PERSONAL JURISDICTION OVER BOTH DEFENDANTS.**

A.   <u>Plaintiff Need Only Prove That Facts "May Exist" Supporting Personal Jurisdiction to Defeat Defendants' Motion.</u>

"Where, as here, a court relies on pleadings and affidavits, rather than conducting a 'full-blown evidentiary hearing,' the plaintiff need only make a prima facie case showing that the court possesses personal jurisdiction over the defendant. ...  Personal jurisdiction is necessarily a fact-sensitive inquiry dependent on the particulars of the case before the court." *Gucci Am., Inc. v. Frontline Processing Corp.*, 721 F.Supp.2d 228, 240-241 (2010) (*internal citations omitted*).  While Plaintiff bears the burden of proof concerning jurisdiction generally, the burden of proof in a Motion to Dismiss is squarely upon the Defendant, who is obliged to show that on the face of the pleadings, together with any favorable inferences to be drawn from them, there has been presented no possible fact or combination of fact allowing recovery. *Wireless Ink Corp. v. Facebook, Inc.*, 787 F Supp 2d 298, 305 [SDNY 2011].  As this Court has noted, "a complaint must include ... a plain statement of the claim ... [that] give[s] the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Novak v. Waterfront Commn. of NY Harbor*, 2011 US Dist LEXIS 120880, at *8 [SDNY Oct. 17, 2011].  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the

misconduct alleged." *Cohen v. Gerson Lehrman Group, Inc.*, 686 F Supp 2d 317, 321 [SDNY 2010], *citing Iqbal*, 129 S. Ct. at 1949.

"A motion to dismiss should be granted only if 'it appears beyond doubt that the plaintiff can prove no set of facts in support of [his] claim which would entitle [him] to relief.'" *Divine Allah v. Goord*, 405 F Supp 2d 265, 271-272 [SDNY 2005]. That Court continued:

> At the motion to dismiss stage, the issue "is not whether a plaintiff is likely to prevail ultimately, but whether the claimant is entitled to offer evidence to support the claims. Indeed, it may appear on the face of the pleading that a recovery is very remote and unlikely, but that is not the test" … A complaint need not state the legal theory, facts, or elements underlying the claim except in certain instances … The task of the court in ruling on a motion to dismiss is "merely to assess the legal feasibility of the complaint, not to assay the weight of evidence which might be offered in support thereof." When deciding a motion to dismiss, courts must accept all factual allegations in the complaint as true and draw all reasonable inferences in plaintiff's favor. *Id.* at 271-272.

Jurisdiction in this Court is established under New York's "long-arm" statute, CPLR 302. "A court must view the jurisdictional allegations in a light most favorable to the plaintiff and resolve all doubts in its favor." *Stilwell v. Leahy*, 2014 NY Slip Op 33076[U], *6 [Sup Ct, Putnam County 2014], *citing Sokoloff v. Harriman Estates Dev. Corp.*, 96 N.Y.2d 409, 414, 754 N.E.2d 184, 729 N.Y.S.2d 425 [2001].

An excellent discussion of the standard of review of a Motion to Dismiss based upon lack of jurisdiction is found in *Deer Consumer Prods., Inc. v. Little*, 35 Misc 3d 374, 381 [Sup Ct, NY County 2012]). The *Deer Consumer* Court observed:

> On a motion to dismiss, however, courts do not require that the plaintiff make a prima facie showing of personal jurisdiction. Rather, to defeat such motion, plaintiff <u>must only demonstrate that facts "may exist" to exercise personal jurisdiction over the defendant</u> (*see* CPLR 3211 [d]; *American BankNote Corp. v. Daniele*, 45 AD3d 338, 340, 845 NYS2d 266 [1st Dept 2007]; *Ying Jun Chen v Lei Shi*, 19 AD3d 407, 796 NYS2d 126 [2d Dept 2005]). And, to the extent that, in

opposition to a motion to dismiss, the plaintiff seeks disclosure on the issue of personal jurisdiction pursuant to CPLR 3211 (d), <u>the plaintiff only needs to set forth a "sufficient start," and show that its position is not frivolous</u> (*Peterson v Spartan Indus.*, 33 NY2d 463, 467, 310 NE2d 513, 354 NYS2d 905 [1974]; *see Shore Pharm. Providers, Inc. v Oakwood Care Ctr., Inc.*, 65 AD3d 623, 624, 885 NYS2d 88 [2d Dept 2009]; *American BankNote Corp. v Daniele*, 45 AD3d 338, 340, 845 NYS2d 266 [1st Dept 2007] [plaintiffs' pleadings, affidavits and accompanying documentation made a "sufficient start" to warrant further discovery on the issue of personal jurisdiction]).  *Deer Consumer Prods., Inc. v Little*, 35 Misc 3d 374, 381 [Sup Ct, NY County 2012]).[6]

**B.    This Court Has Specific Jurisdiction Over Both Apple and SIS.**

1.   Standard for Jurisdiction in Defamation Cases

Both Defendants have claimed to this Court that the New York long-arm jurisdictional statute exempts all out-of-state defamatory statements as the basis of jurisdiction. However, that blanket statement is, charitably put, in error.   "[U]nder New York law, when a person utters a defamatory statement without the state that causes injury to the plaintiff within the state, jurisdiction may be acquired under section 302(a)(1),  even though section 302(a)(3) -- which explicitly concerns jurisdiction as to out-of-state tortious acts that cause in-state injury -- excludes defamation cases from its scope." (*Best Van Lines, Inc. v. Walker*, 490 F3d 239, 245-246 [2d Cir 2007]).

Ordinarily, commission of a tortious act is sufficient to establish jurisdiction over the tortfeasor.[7]  However, in New York, by specific statutory provision, the simple act of making

---

[6]       In determining jurisdiction under New York's long-arm statute, this Court should defer to New York's own interpretation of the standard of review, especially when the standard for pleading in Federal Court is, if anything, more liberal than that of New York concerning a Motion to Dismiss.

[7]       The long-arm statute was amended in 1966 to provide jurisdiction over out-of-state tortious acts after the New York Appellate decision in *Longines-Wittnauer v. Barnes & Reinecke*, 15 NY2d 443 (1965) (*referred to in other decisions as the "Feathers v. McLucas" matter, the initial underlying case*).  As one commentator noted at the time, "if a New Jersey domiciliary were to lob a bazooka shell across the Hudson River at Grant's tomb, [the]

a defamatory communication sent into the state, *without more*, cannot establish jurisdiction. The basis for this limitation was protecting the rights of journalists to publish stories.  "The New York Legislature, in adopting § to CPLR 302(a)(1)),  'did not wish New York to force newspapers published in other states to defend themselves in states where they had no substantial interests, as the New York Times was forced to do in Alabama. **However, where the defamation complained of arises from or is connected with transaction of business in the State, jurisdiction may be acquired pursuant to CPLR 302(a)(1).'"** *Legros v. Irving*, 38 A.D.2d 53 (N.Y. App. Div. 1971) *(emphasis added).  Sovik v. Healing Network of New York*, 665 NYS 2nd 997, 999-1000 (1997); *SPCA of Upstate New York, Inc. v. American Working Collie Ass'n*, 963 N.Y.2d 400 (N.Y. 2012); *Best Van Lines, Inc. v. Walker*, 490 F3d 239 (2d Cir. 2007). "Under the statute, 'proof of one transaction in New York is sufficient to invoke jurisdiction … **so long as the defendant's activities here were purposeful and there is a substantial relationship between the transaction and the claim asserted**.' *Kreutter v. McFadden Oil Corp.*, 71 NY2d 460, 467, 522 NE2d 40, 527 NYS2d 195 [1988]. '[J]urisdiction is not justified where the relationship between the claim and transaction is too attenuated' (*Johnson*, 4 NY3d at 520). *Copp v. Ramirez*, 62 AD3d 23, 28 [1st Dept 2009].

---

*Feathers* [decision] would appear to bar the New York courts from asserting personal jurisdiction over the New Jersey domiciliary under § 302.(a).(2) in an action by an injured New York plaintiff." *Alexander, Practice Commentaries, McKinney's Cons Laws of NY, Book 7B C302:10.  See Davidoff v. Davidoff*, 12 Misc. 3rd 1162(A).  This Court should consider that observation, given that the Amended Complaint demonstrates that SIS was an active participant in misinforming New Jersey law enforcement and other Apple stores Bah's involvement in thefts in New Jersey.

**2.  Plaintiff's Allegations Establish a Nexus Between Defendants' False Claims and Their Activities in New York and Elsewhere**

The evidence alleged in the Complaint demonstrates that both Apple and SIS communicated defamatory information about Mr. Bah into New York *with the intent that he be detained if found in New York, and to "preclude" him from theft if found in an Apple store.* This Court need look no further than the Boston events, when an Apple employee claimed that Mr. Bah was a "known thief" based upon information about that thief's activities in Connecticut, New Jersey, and other states.  Such an allegation could not have occurred without Apple and/or its agent, SIS, advising the Massachusetts store of the New Jersey and Connecticut incidents, as well as its conclusion that they were committed by Mr. Bah.

It defies imagination that both Defendants communicated information about a theft of Apple inventory to Apple and SIS employees in Massachusetts, a state more than 200 miles away from New Jersey,  but would withhold that information from Apple's New York stores directly in that path 25 miles away.   This Court must draw the inference that the basis of the identification in both Boston and New York was the defamatory and false information associating Mr. Bah's name with a picture of a thief and that, at minimum,  Apple communicated information and imaging (gathered by Apple and SIS) from Connecticut and New Jersey incidents to  Apple's New York stores.  *Contrast Flowers v. McLucas,* 41 Misc. 2d 498 (N.Y. Misc. 1963).

     3.     **There is a Nexus Between Apple's Activities in New York and the Allegations in the Plaintiff's Complaint.**

Apple claims that since the defamation arises out of criminal behavior, and Apple is not in the business of investigatory work or making statements with malicious intent, there is no nexus between Apple's business, Apple and SIS' allegations of theft, and Bah's injury. *See Apple's Memorandum of Law, p. 3.*

Apple has distorted the nature of its involvement in this matter.  Apple is not acting as a developer of computer equipment or software in its stores.  **Apple is a storekeeper – a seller of computer hardware – no different from any other retailer**.  Essentially, Apple's argument attempts to disconnect the obvious link between its role as shopkeeper and its desire to protect its inventory.   This contention is spurious.  To the extent this Court gives the argument any consideration, Apple's hiring of SIS to prevent thefts in its stores, and an Apple employee calling the police and identifying Bah in the Boston theft (Complaint, ¶36) should satisfy the Court's concerns.

     4.     **There is a Nexus Between SIS' Activities as an Investigation Agency With a Nationwide Presence, Including in New York, and the Series of Defamatory Acts Leading to Plaintiff's Wrongful Detainment.**

SIS, which acknowledges nationwide work for Apple and a corporate office in New York, whose role in this litigation is entirely derived from their acting as Apple's store security, its argument that since it did not directly communicate Bah's identity to the specific New York stores involved in its theft is sleight of hand.

SIS contends that this Court has no jurisdiction over SIS' actions because its defamation of the Plaintiff occurred out of state; because SIS performs no work for Apple in

New York; and that there is therefore no connection between SIS' presence in New York to the eventual defamation and arrest of the Plaintiff.[8]  However, the definition of "nexus" is not nearly that strict.  SIS communications with Apple (which resulted in the initial identification in Boston) suggests communications at the corporate or internet level, which would not require a specific conversation with a specific New York store employee.  Because it may be inferred that the  information indirectly reached New York, there is still a nexus in that state with the New York defamation and wrongful arrest.[9]

We have no idea, at this point, what modes of communication the parties used to share information, and to characterize the likely mode in this era (email or cloud sharing, or some kind of secured intranet) as occurring in any one location would misapply 19th- and 20th-century jurisprudence to 21st-century technology.  It is easy to infer that SIS knew its material would be used in New York by Apple, its principal, to protect its merchandise, even if SIS does not do that work in that state but in all of the adjoining ones.   At this early stage of the proceedings, without the ability to explore the allegations of non-communication[10] in

---

[8]       This Court is presented with the equivalent of "conflicting affidavits" between the Complaint, which alleges that SIS participated in NY communications, and the statement of SIS.  For purposes of Rule 12(b)(2), this Court must accept the Plaintiff's allegations as true.  *Taylor v. Phelan*, 912 F.2d 421, 431 (10th Cir., 1990).

[9]       Indeed, Justice Scalia's comments in *Burnham*, above, preceding the age of email and the proliferation of the internet, presage these complications in assessing jurisdiction.  *See Burnham* v. *Superior Court of Cal., County of Marin*, 495 U. S. 604, 617 (1990) (opinion of SCALIA, J.)

[10]      For example, if SIS conveyed false information to Apple's corporate headquarters knowing that it would be conveyed to Apple's stores, including those it did not secure, given SIS' national work for Apple and its presence with an office in downtown New York, it can hardly say that, because Apple was the party that shared the information, that SIS is immune from jurisdiction in New York for Apple's dissemination of it.  Another possible alternative is that SIS at some point bid out for contracts with Apple in New York, and therefore the work it has performed out of state for that company would be part of their "solicitation of business" in New York, which would establish the necessary nexus.  *See Biro*, *supra*.
         All of this, unfortunately, remains conjecture until discovery occurs.  At this early point in the litigation, this conjecture should work against allowance of a dispositive motion.

discovery, this Court should find that there are enough alleged facts to create the possibility of jurisdiction, warranting denial of SIS' motion.

Moreover, for jurisdictional purposes, whether or not agency has been formally established, SIS' actions on Apple's behalf constitute the type of "agency" binding Apple jurisdictionally to SIS.  "…[I]t would appear that a formal agency relationship is not necessary to impute activity against the defendant where he is being sued by a third party." *Galgay v. Bulletin Co.*, 504 F2d 1062, 1065 (2d Cir 1974), *citing Elman v. Belson*, 32 App. Div. 2d 422, 302 N.Y.S. 2d 961 (2d Dep't 1969); *Legros v. Irving*, 77 Misc. 2d 497, 354 N.Y.S. 2d 47 (Sup. Ct. N.Y. County 1973).

Thus, bound together, Apple's substantial operations in New York in selling goods, combined with SIS' identification of Bah as a thief, should be enough evidence of personal jurisdiction to be considered a "**sufficient start**," warranting denial of the Motion to Dismiss. *Peterson v. Spartan Indus.*, 33 NY2d 463, 467, 310 NE2d 513, 354 NYS2d 905 [1974]; *see Shore Pharm. Providers, Inc. v. Oakwood Care Ctr., Inc.*, 65 AD3d 623, 624, 885 NYS2d 88 [2d Dept 2009]; *American BankNote Corp. v. Daniele*, 45 AD3d 338, 340, 845 NYS2d 266.  At the very least, the allegations in these pleadings demonstrate that, given SIS' national involvement in protecting Apple stores, their corporate and business presence in security in New York, and their joint actions in pursuit of Bah, retention of jurisdiction in this Court would not be unfair to SIS. *See Newbro v. Freed*, 2004 US Dist LEXIS 5358 (2004) (Castel, J.).

New York courts have denied Motions to Dismiss on similar Complaint allegations. Notably, in *Sovik v. Healing Network,* 665 NYS2D 997 (1997), the Court denied a Motion to Dismiss on jurisdictional grounds and allowed the Plaintiff to conduct discovery, where

information communicated from out of state to New York was used by the Defendant as part of its business operations in fundraising; just as Apple and SIS attempted to use the defamatory statements conveyed into New York to prevent theft of Apple's inventory, or to bring the purported thieves to justice. *Contrast Rashada v. New York Post*, 211 NY Misc Lexis 4079 Note 2 (*reporter's other interviews in New York were not connected to defamatory article and therefore had no nexus to the defamatory statement*).

This Court should also consider the fact that the "target" of Apple and SIS' false and defamatory allegations was a New York resident. Apple and SIS could have reasonably expected that their acts in and outside New York in falsely accusing a New York resident of theft should have "reasonably expect[ed] the act to have consequences in the state." *CPLR* 302.1.3. The targeting of Bah, *combined* with its nexus to Apple and SIS' functions in New York, should be sufficient to establish jurisdiction.

Moreover, even if Apple was the publisher of information to New York stores (should this Court accept the representations of SIS' representative), SIS can hardly say there is no connection between its activities as a national security company, an office in New York, and an accused thief residing in New York who has purportedly stolen Apple merchandise in every surrounding state. SIS remains liable for Apple's foreseeable, and in fact anticipated, republication of that defamatory material -- even if SIS did not cause it to be published in New York.

> [A] **speaker** who republishes the accusations of others is not immune from a **defamation** action. *Ringler, 80 Cal. App. 4th at 1180* ("Reprinting or recirculating a libelous writing has the same effect as the original publication."); *Flowers v. Carville, 310 F.3d 1118, 1128 (9th Cir. 2002)* (relying on "the venerable principle that a person who repeats a defamatory statement is generally as liable as the one

who first utters") (collecting authorities). .... **The republisher, moreover, may be liable for republishing the false statements of others even if the republisher discloses the identity of the source of the statements.** Flowers, 310 F.3d at 1128  *(citation omitted)*.

If this analysis seems a bit convoluted, the nature of 21st century communications and the general confusing nature of choice of law rules is the reason for such contortion. "Choice of law analysis in **defamation** cases remains, as it was in Dean Prosser's time, 'a dismal swamp, filled with quaking quagmires, and inhabited by learned but eccentric professors who theorize about mysterious matters in a strange and incomprehensible jargon.'"  *Adelson v. Harris*, 973 F Supp 2d 467, 475-476 [SDNY 2013], *citing William L. Prosser*, *Interstate Publications*, 51 Mich. L. Rev. 959, 971 [*476]  (1953).  New York's unique jurisdictional limitation concerning defamation,  and the nature of likely modes of communications in this case (with information crossing borders without a physical presence in the state, through cloud-sharing and emails) lends further intricacy.  With little to no information about how and in what manner information was passed back and forth between Apple, SIS, and law enforcement in New York and the other involved states, this is yet another compelling reason not to dismiss this matter at the very outset, when these questions can largely be answered in discovery.  *See Sovik*, *supra*.

The *Sovik* holding demonstrates that this Court cannot rely upon Defendants' allegations outside the scope of the pleadings concerning their operations, business, or communications to make a final determination on the question of jurisdiction **at the very outset of a case**.  Based upon the Complaint's allegations, there is ample basis for the Court to determine that there is at least a controversy over whether or not information

transmitted by Apple or SIS (as Apple's agent and on Apple's behalf) into New York caused harm to Bah as part of Apple's business operations.  Admittedly, without discovery to flesh out allegations, we are reduced at this point to speculation and inferences – which is why Rule 12(b)(6) requires that those inferences be read in an opposing party's favor. "[T]he facts essential to opposing defendant's motion **may exist but cannot be stated without conducting discovery of employees of defendants and others**, the court should have denied the motion pursuant to CPLR 3212 (f)." *Perotto Dev. Corp. v. Sear-Brown Group*, 269 AD2d 749, 749 [4th Dept 2000]), *citing Sovik v Healing Network*, 244 AD2d at 986.[11]  *See Alt. Mut. Ins. Co. v. M/V Humacao*, 169 F.Supp.2d 211 (2001).[12]

Given the evident factual questions raised by the initial pleadings, this Court should allow the parties to fully develop the facts surrounding the false statements and unfounded arrests before acting dispositively on this litigation.  This is even more vital when, at least based upon the facts available through presently limited investigation, there remains substantial ambiguity as to how information was transmitted to New York concerning the

---

[11]     While FRCP 12(d) specifically notes that "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion."  Courts have interpreted this language to require denial of a Motion requiring proof outside of the pleadings to make the Court's determination.

[12]     Much of this litigation's outside investigation has been occurring in relative real time without any of discovery's compulsory tools, including learning of even more allegations of theft against Mr. Bah undisclosed by Defendants and which were also groundless.  We have, as part of this investigation, determined that SIS and Apple were communicating on a continuing basis with Apple stores in the region, including a Holyoke, MA charge in December 2018 instigated by Apple and SIS, with allegations of thefts committed by Bah in New York (continuing to claim the thief was Ousmane Bah **even after the NYPD had conclusively determined that the New York thief was not the Plaintiff**).

         While none of this should be considered by this Court as countering the Motion to Dismiss, since it is outside of the Complaint's allegations, the Court should consider it as an "offer of proof" that discovery will demonstrate further collaboration, communications, and other evidence supporting Plaintiff's general allegations, especially concerning jurisdiction.

Plaintiff, in what manner, and by whom.  *Prince v. Fox Tel. Stas., Inc.*, 33 Misc 3d 1225[A], 1225A, 2011 NY Slip Op 52110[U], *7 [Sup Ct, NY County 2011]).

This Court should consider the SIS misinformation in New Jersey, Connecticut and Massachusetts concerning Bah's identity as a thief  as the equivalent of a shotgun blast whose radius included New York.  *See Davidoff, supra.*  It is the equivalent of the New Jersey mortar shell commented on in *Davidoff*.   It is highly unlikely that news of the misidentification did not reach Apple's New York stores, perhaps by the parties' intent.  This communication reaching New York, intended to protect Apple's New York operations from theft, provides at least a fair question concerning jurisdiction, warranting denial of the Defendants' motions.

In summary, Apple's role as a storekeeper, combined with SIS' role nationwide as its "guard dog," together with SIS or Apple's communications into New York of false accusations of theft against the Plaintiff, resulting in the Plaintiff's arrest, as alleged in the Complaint, are sufficient facts to establish at least a question of jurisdiction over both Defendants, if not a finding of such jurisdiction.  This Court should therefore deny the Motion to dismiss on jurisdictional grounds and allow the parties to further explore the issue in discovery.

C. **This Court Has Jurisdiction Over Both Defendants Based Upon the Malicious Prosecution and Emotional Distress Claims, Which Are Not Subject to Jurisdictional Limitations Under New York Law**

Apple's claim that the malicious prosecution claim is in essence "identical" to the defamation claim, and warrants dismissal in lockstep with any dismissal of the defamation claim,  is also unfounded.  "[A] claim of false arrest or false imprisonment may lie where a

plaintiff can "show that . . . [private] defendants instigated his arrest, thereby making the police . . . agents in accomplishing their intent to confine the plaintiff." *Carrington v. City of New York, 201 A.D.2d 525, 527, 607 N.Y.S.2d 721 (2d Dept.1994).* "The essential elements of a cause of action to recover damages for malicious prosecution arising from a civil action are: (1) the commencement and prosecution of a judicial proceeding against the plaintiff, (2) by or at the instance of the defendant, (3) without probable cause, (4) with malice, (5) which has terminated in favor of the plaintiff in the malicious prosecution action, (6) to his injury, and (7) that the plaintiff suffered interference with his person or property." *Realty by Frank Kay, Inc. v. Majestic Farms Supply, Ltd., 160 AD2d 789 [2d Dept 1990],* citing *Oceanside Enters. v. Capobianco, 146 AD2d 685.* Such a cause of action will lie where the defendants "lacked reasonable cause for their belief in the plaintiff's culpability." *Weintraub v. Bd. of Educ. of NY, 423 F Supp 2d 38, 56 [EDNY 2006],* quoting *DeFilippo v. County of Nassau, 183 A.D.2d 695, 696-697, 583 N.Y.S.2d 283 (2d Dept.1992).*

"Malice" in the malicious prosecution context has been defined not only as actual intent, but by misrepresentations, falsification, or omission of evidence to the grand jury or district attorney. *Id. At 999. Delince v. City of NY, 2011 US Dist LEXIS 12582, at 15 [SDNY Feb. 4, 2011],* citing *Lupski v. County of Nassau, 32 A.D.3d 997, 998, 822 N.Y.S.2d 112 (2d Dep't 2006).* A malicious prosecution claim should not be dismissed if the Complaint presents evidence that a party has "misrepresented or falsified the evidence **or else kept back evidence which would affect the result**." *Boose v. Rochester*, 71 A.2d 59, 69 (1979), *citing  Hopkinson v. Lehigh Val. R. R. Co. (emphasis added).*

Plaintiff's Complaint alleges all of the elements required of a malicious prosecution claim in this jurisdiction, and not merely by conclusion but by describing specific facts amounting to the "reckless disregard for rights" required for such a claim.   The arrest warrants in New York were obtained, per the Complaint, "by or at the instance" of Apple (and possibly, SIS). The Complaint alleged (and has demonstrated, based upon conflicting identifications of multiple people as the Plaintiff, which Apple had constructive knowledge of) a lack of probable cause and constructive malice based upon Apple's disregard of its own information and withholding of exculpatory information. The prosecution (in the form of arrest) interfered with Mr. Bah's person. Finally, his custody ended with him being released after first being taken in handcuffs to a police station, thus terminating the prosecution.

The specific nexus requirement imposed by the New York legislature upon jurisdiction in defamation actions is not imposed upon malicious prosecution.  Therefore, CPLR 302(a)(3) governs determination of jurisdiction over the malicious prosecution claim, which SIS, in seeking criminal complaints against Bah in New Jersey, Connecticut and Massachusetts, participated in.  That statute specifically affords jurisdiction when an actor:

> … commits a **tortious** act without the state causing injury to person or property within the state, except as to a cause of action for defamation of character arising from the act, if he
>
> (i) regularly does or solicits business, or engages in any other persistent course of **conduct**, or derives substantial revenue from goods used or consumed or services rendered, in the state;  or
>
> (ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce.

In reviewing this claim in the context of determining jurisdiction, Plaintiff's malicious prosecution claim,  simply by its elements, is significantly distinguishable.[13]  Just because many of the elements of a particular legal theory are duplicative does not mean they are not separate and distinct theories for purposes of establishing jurisdiction.  *Symmetra Pty Ltd v Human Facets, LLC*, 2013 US Dist LEXIS 83428, at *28 [SDNY June 13, 2013].  Most important to this Motion, legislative concerns about freedom of the press did not impose the same limitations on jurisdiction on charges of malicious prosecution as a defamation claim.

Moreover, the accusatory statements, the commencement of proceedings (through statement or application for warrant), the instance of the prosecution of the matter, and the injury all occurred within New York, and were all instigated by a Defendant or its agents from multiple Apple stores in New York, demonstrating Apple's "consciously availing itself of the protection of the jurisdiction."  *CPLR 302(3)(b)*.  The facts, as pleaded, therefore, present the "omission of evidence" essential to such a claim, warranting denial of the Motion to Dismiss.

Apple, as complainant and victim in the New York arrests, is certainly subject to this Court's jurisdiction.  Even if this Court were to accept that SIS did not participate in these arrests, though, this section affords jurisdiction over SIS' actions that had consequences in this state.  SIS does not contest that it operates in New York and in fact has an office in New

---

[13]     Indeed, the malicious prosecution claim requires additional proof of injury – deprivation of liberty, not merely harm to reputation – as well as dismissal of charges initiated against the alleged victim, in order to prove the tort.  It may be that defamation is similar to wrongful arrest or malicious prosecution when the recipient of the information is law enforcement.  However, defamation cannot be proved by omission, while once a claim of criminal conduct is made, wrongful arrest can be proved by a manipulative omission of exculpatory facts.  *See Lupski, supra; Boose, supra.*

York City, with continual operations describing a "persistent course of conduct," as well as deriving "substantial revenue … from services rendered."  Moreover, as noted above, by filing statements seeking Bah's arrest for shoplifting against a New York resident, SIS expected its actions to "have consequences" in New York in the form of Bah's arrest.  SIS' actions in Massachusetts, New Jersey, and Connecticut thus meet the requirements of Section 3, and this Court should therefore find SIS subject to its jurisdiction in New York.

Jurisdiction also lies with this Court regarding the Plaintiff's emotional distress claims, which are substantive and sustainable under New York law.  The claims are not duplicative, although the two theories overlap.  The case cited by Apple claiming that the claims are duplicative, *Kelley v. Bonney*, 221 Conn. 549, 571 n. 15, does not stand for the proposition cited – it states that when an absolute privilege applies to a defamation claim, the same privilege applies to a claim of emotional distress based upon the same representation. Here, the privilege is qualified, so the same principal – that a qualified privilege cannot be the basis of a Motion to Dismiss – applies.  *Flomenhaft v. Finkelstein*, 127 AD3d 634, 638 [1st Dept 2015]). Moreover, we submit that recklessly accusing the Plaintiff of theft more than 20 times in multiple jurisdictions constitutes the type of "extreme" conduct that gives rise to such a claim.  *Restatement (2d) Torts, §46(1); Fischer v. Maloney,* 43 NY2d 553, 557; *Murphy v. American Home Prods. Corp.,* 58 NY2d 293, 303; *Freihofer v. Hearst Corp.,* 65 NY2d 135, 143.

Without the favorable First Amendment protection granted to defamatory statements and the special pleadings requirements imposed by New York statute, the malicious prosecution claim and the intentional infliction of emotional claim are properly

pled and convey jurisdiction upon this Court **independent of the defamation allegations**.

Therefore, the Motion to Dismiss must be **denied**.

## II.    THE FACTS ALLEGED IN PLAINTIFF'S COMPLAINT STATE JUSTICIABLE CLAIMS OF LIBEL AND SLANDER, WARRANTING DENIAL OF DEFENDANT APPLE'S MOTION.[14]

### A.    The Plaintiff's Defamation Claims Are Not Barred By Defendants' Claim of Qualified "Law Enforcement Related Privilege."

Defendants further argue that their providing information to law enforcement personnel leading to an arrest or charges was subject to privilege in New York (and indeed, this privilege exists in the remaining states as well), which would preclude Plaintiff's claims from the outset.   Defendants further argue that the facts alleged in Plaintiff's Complaint would never support this Court's finding an exception to the law enforcement privilege.

The so-called "law enforcement" privilege is not absolute, but qualified, and does not apply when the allegations of theft had "no probable cause," were made with reckless disregard for the truth or falsity of the charge, or were made with malicious intent.   *See, e.g., Barrows v. Wareham Fire Dist.*, 82 Mass. App. Ct. 623, 628-29, 976 N.E.2d 830, 836-37 (2012) (Massachusetts law); *see also Boyd v. Nationwide Mutual Insurance Company*, 208 F.3d 406,410 (2000) (Connecticut law).

---

[14]   Although Apple claimed in its conferencing memorandum that the Plaintiff's Complaint did not comply with the New York procedural rule requiring specific allegations of the alleged defamatory statement, it has not briefed that argument in its resulting Motion.  Plaintiff need therefore not observe that under Federal procedural law, this argument is inapplicable in Federal court.  *Pirre v. Print. Devs., Inc.*, 432 F Supp 840, 843 [SDNY 1977], *citing Mueller v. Rayon Consultants,*  170 F. Supp. 555 (S.D.N.Y. 1959); *Geisler v. Petrocelli,* 616 F2d 636, 640 (2d. Cir, 1980); *Kelly v. Schmidberger,* 806 F.2d 44, 46 (2d. Cir, 1986).

1.    **The Privilege Defense Cannot Be The Basis of a Rule 12(b)(6) Dismissal**

To the extent that this Court will apply New York law to this matter, New York courts have repeatedly stated that questions of a qualified privilege's applicability cannot be resolved in a Motion to Dismiss, but must be reserved until time of trial.   *Flomenhaft v. Finkelstein*, 127 AD3d 634, 638 [1st Dept 2015]).[15]  As the Court noted in *Flomenhaft*, "… on a motion to dismiss a defamation action because of the privilege, the complaint must be construed in a light most favorable to the plaintiff and that where there is a question as to the applicability of the privilege, the issue should be not be decided before trial."  *Id. at 548; see also Wiser v. Koval*, 50 A.2d; *White v. Carroll*, 42 NY 161 (1975).

2.    **Existing Case Law In This Circuit Precludes Dismissal of this Complaint, As Plaintiff Has Asserted Sufficient Facts to Infer Recklessness and Malice in Fact, Which Defeats the Qualified Privilege.**

The controlling law regarding sufficiency of pleading a defamation case is  *Boyd v. Nationwide Mutual Insurance Company*, 208 F.3d 406 (2d. Cir, 2000).  In *Boyd*, an employer wrongfully accused one of its employees of larceny in litigation filed in this Court. The District Court dismissed the employee's defamation Complaint *ab initio*, holding that the qualified law enforcement privilege immunized the employer's accusation. *Id.* at 409.  However, upon review, the Second Circuit Court of Appeals disagreed and overturned the Dismissal.  The Second Circuit observed:

---

[15]     Apple does cite to correct law, but not to the correct law applicable to a dismissal motion.  Defendant might argue that because this case is in Federal Court, the New York standard for review does not apply.  However, that argument is fatally flawed.  The Federal standard for review of pleadings under Rule 12(b)(6) and Rule 8(a) is far broader and more generous than New York's.  It is illogical that this broader standard would preclude dismissal based upon one strict compliance technicality but require that a stricter one be adopted concerning another technical pleadings issue.  *Contrast Mueller, supra; Pirre, supra.*

… Plaintiff's allegation that Nationwide failed to check its own records … permits a sufficient inference that Nationwide abused its qualified privilege. … As we have had occasion to observe in the past, "it is important to recognize the difference between disposing of a case on a 12(b)(6) motion and resolving the case later in the proceedings, for example by summary judgment." *Chance v. Armstrong*, 143 F.3d 698, 701 (2d Cir. 1998). Moreover, a plaintiff may allege facts suggestive enough to warrant discovery, even where those facts alone would not establish a cause of action for defamation. … An employer cannot use the qualified privilege to prevent a defamed employee from using the litigation process to seek evidence of the employer's bad faith where the employer controlled all relevant information yet failed to consult it before making unfounded accusations." *Id. at 410 (Emphasis added).*

Plaintiff's Complaint presents several factual grounds leading to an inference of recklessness.   Apple and SIS' repeated misidentification of Mr. Bah based upon conflicting and unreliable evidence, knowing that such allegations could well result in his arrest, is the very definition of "wanton disregard" for Mr. Bah's rights.  *See Nicholls, supra; Konowitz, supra.*  Defendants' failure to correct the misinformation over a period of months is tantamount to "purposeful avoidance" – that is, conduct that "evinces an intent to avoid the truth." *Van-Go Transp. Co. v. NY City Bd. of Educ.,* 971 F Supp 90, 105 [EDNY 1997], *citing Sweeney v. Prisoners' Legal Servs. of New York, Inc.,* 84 N.Y.2d 786, 793, 622 N.Y.S.2d 896, 647 N.E.2d 101 (N.Y. 1995).   Further, Apple's misrepresenting the destruction of the Boston store video,[16] which clearly exculpated Mr. Bah, is  evidence of culpability or malicious intent.  *See People v. Bennett*, 79 NY2d 464, 469-470 (1992); *People v. Alexander*, 37 NY2d 202, 204 (1975); *People v. Butterfly*, 25 NY2d 159, 162-163 (1969).

---

[16]     Five months later, Apple finally produced the video at the prosecutor's insistence, without explaining why it had falsely claimed that the recording had been destroyed.  After viewing the video and Mr. Bah's photograph and alibi, the prosecutor agreed to dismiss the Boston claims after a court hearing.  Nonetheless, the charge and warrant – along with the claims of theft in New York, New Jersey, and Connecticut – remain as black marks on Mr. Bah's record.

These facts demonstrate Plaintiff's harm based upon false statements made by Defendants for which justice demands a remedy. *Boyd, supra*; *Stukuls v. New York*, 42 N.Y.2d 272, 397 N.Y.S.2d 740, 746, 366 N.E.2d 829 (1977).  Defendants' Motions to Dismiss must therefore be denied.

### III.   VENUE CONCERNING PLAINTIFF'S MALICIOUS PROSECUTION CLAIM IS APPROPRIATE IN NEW YORK

Apple claims that although Mr. Bah's arrest occurred in New York, many of  the acts leading to the false identification of Mr. Bah occurred in Massachusetts, Connecticut, and New Jersey, so venue is inappropriate here.  Again, this argument is legal sleight of hand. Clearly, the actual definitive act of the prosecution – taking Bah into custody – occurred in this city.  Moreover, the allegations leading to that arrest all occurred in New York, and Apple's failure to advise the New York Police Department that its tendered identification of Mr. Bah was at least questionable, if not outright false, also occurred in New York City. As to the remaining claims, Mr. Bah was served with process in New York for charges made in Massachusetts, Connecticut, and New Jersey, so the ultimate act of the prosecution that harmed him – his being charged with the formal crime – also culminated here in New York. Venue for these claims is therefore appropriate here. "A civil action may be brought in— (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated…" 28 USC Sec. 1391(b)(2). Additionally, there is no evidence that any other forum has greater contacts to the malicious prosecution claim than New York. *West Publication v. Stanley*, 2004 US Dist LEXIS 448 (D Minn 2004).

- 29 -

IV. **JUDICIAL ECONOMY WARRANTS DENIAL OF THE DEFENDANTS' MOTIONS**

Were this Court to allow the Motion, as argued above, a party victimized by a defamatory statement by a corporate actor that can be proved by circumstantial evidence but not by direct testimony would instantly be dismissed at the beginning of litigation, because the victim could never prove the defamation without commencing discovery. "[I]t cannot be said in advance of discovery that [plaintiff] will not be able to raise an issue of fact." *Stukuls v. New York*, 42 N.Y.2d 272, 397 N.Y.S.2d 740, 746, 366 N.E.2d 829 (1977).

There is a strong inference presented here that Apple, or Apple's agent, accused Bah of theft in New York, and the evidence even at this early stage has established beyond any controversy that the accusation was totally false. Plaintiff has also alleged viable claims from other states based upon the same type of allegations as part of an overall pattern of reckless behavior. Plaintiff's malicious prosecution claim in New York creates an independent ground for jurisdiction, so this case will continue in some form before this Court. Given that all of these claims derive from a single set of facts, judicial economy and common sense dictate that this one forum is appropriate for resolution of this matter to avoid contradictory results in multiple forums from multiple actions. The appropriate venue for this litigation is the state in which the Plaintiff was deprived of his physical liberty as a result of multiple false accusations.

This Court should also consider the next logical consequence of a dismissal. Plaintiff will refile this litigation in Massachusetts, or in New Jersey, or in multiple courts, where New York's legal quirks on defamation law do not apply. Such a ruling will create polyglot litigation in multiple courts, with the possibility of inconsistent outcomes and multiple trials,

to no party's benefit.  This Court should find that the Plaintiff has presented sufficient facts to create the suggestion of jurisdiction and allow this matter to proceed through to discovery in one jurisdiction and in one case, where these issues can be sorted out with facts, not speculation.

The detailed allegations in Plaintiff's 158-paragraph Complaint do not simply rely upon naked legal conclusions and "threadbare recitals of the elements of a cause of action," but provide rich detail, supported by individual factual claims, supporting allegations of Defendants' wrongful and unlawful conduct against the Plaintiff, as well specific injuries caused by that conduct.  Contrast *Businessware, Inc. v. Tech. Servs. Group Wealth Mgt. Solutions, LLC*, 2009 US Dist LEXIS 122193, at 17 (SDNY Dec. 29, 2009), citing *Iqbal v. Ashcroft*, 556 US 662, 669 (2009).  Defendants' Motions to Dismiss should be **denied**.

<table>
<tr><td>

**CERTIFICATE OF SERVICE**

**I, Daniel Malis, Esq.**, attorney for the Plaintiff, hereby certify that I have given notice of the foregoing pleading by forwarding a copy to counsel for the Defendants by CM/ECF

Daniel Malis, Esq.
9/11/2019

</td><td>

Plaintiff,
By his attorney,

_____
Daniel Malis, Esq.,  BBO # 315770
MALIS|LAW
30 2nd Street
Cambridge, MA  02141
(617) 491-1099
daniel.malis@malislaw.com

</td></tr>
</table>

Dated:  September 11, 2019

- 31 -