UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
OUSMANE BAH,

                    Plaintiff,                          19-cv-3539 (PKC)

         -against-                           OPINION
                                                            AND ORDER

APPLE INC. and SECURITY INDUSTRY
SPECIALISTS, INC.,

                    Defendants.
-----------------------------------------------------------x

CASTEL, U.S.D.J.

            Insofar as the pleading reveals, Ousmane Bah ("Bah"), a law-abiding New York

City high school student, was caught up in a series of distressing and emotionally damaging

instances of mistaken identity that seemingly stem from the use of Bah's lost temporary learner's

permit by one or more thieves. This misidentification has led to Bah being wrongfully accused of

stealing from Apple stores in New York, New Jersey, Massachusetts, and Connecticut. Bah

alleges that these false accusations occurred because an image of the actual thief was initially

linked to Bah's identity in defendants' internal security systems. Thereafter, subsequent thefts by

the same person, or others using the lost learner's permit as identification, were allegedly linked

by facial recognition technology to the image from the first theft which in turn was wrongfully

attributed to Bah.

            In this action, Bah seeks to hold Apple Inc. ("Apple") and a firm it employed,

Security Industry Specialists, Inc. ("SIS"), liable for defamation, intentional and negligent

infliction of emotional harm, malicious prosecution, and violation of his civil rights. No arresting

or prosecuting person or authority has been named in the action and no federal claim is asserted.

Apple and SIS move to dismiss Bah's First Amended Complaint ("FAC") on various grounds including lack of personal jurisdiction, improper venue, and failure to state a claim. Rules 12(b)(2), (3) & (6), Fed R. Civ. P. For reasons that will be explained, defendants' motions to dismiss will be denied as to the claims for New York-based defamation and malicious prosecution but will be granted as to all remaining claims.

BACKGROUND

Bah is a permanent resident alien, who has applied for U.S. citizenship. (FAC ¶ 63). On March 26, 2018, Bah received a temporary New York State learner's permit, which contained Bah's personal descriptive details, such as height, weight, date of birth, and eye color, but did not include a photograph. (FAC ¶ 10). By May 2018, Bah had lost this temporary learner's permit. (FAC ¶ 11). In May 2018, an individual was detained in Connecticut, following an accusation by Apple and SIS that the individual had stolen merchandise from one of Apple's stores (the "Connecticut Incident"). (FAC ¶ 12). During the relevant period, SIS provided loss prevention services at Apple's stores. (FAC ¶ 9). The detained individual identified himself as "Ousmane Bah" using a temporary New York State learner's permit. (FAC ¶ 13). Though the individual's apparent physical features did not match the physical features described in the temporary learner's permit, defendants concluded that the bearer of the temporary learner's permit was Ousmane Bah. Defendants then created an internal security record, matching surveillance footage from Apple's store of this individual committing the theft with Bah's name and personal information from the learner's permit. This effectively labeled Bah as a thief within defendants' internal security systems. (FAC ¶ 16). This internal record was subsequently circulated to Apple and SIS employees. (FAC ¶ 16).

On May 24, 2018, an individual arrested for shoplifting from an Apple store in Paramus, New Jersey identified himself as Bah using a temporary New York State learner's permit (the "First New Jersey Incident"). (FAC ¶¶ 20, 23). Though this individual's apparent physical features matched neither the physical description of Bah in the learner's permit nor the physical features of the thief visible in the surveillance footage of the Connecticut Incident, defendants identified the Paramus thief as Bah to their own employees. (FAC ¶ 28). Defendants may have also updated their internal security records to reflect the details of this identification. (FAC ¶ 76). Further, defendants identified this thief as Bah to Paramus, New Jersey police. (FAC ¶ 26). On October 20, 2018, Bah received notice of formal charges against him arising from the First New Jersey Incident. (FAC ¶ 71).

On May 31, 2018, Apple and SIS employees reported to the Boston, Massachusetts police that a Boston Apple store had suffered a theft, committed by the same individual that committed the theft in Connecticut (the "Massachusetts Incident"). (FAC ¶¶ 33, 35). Defendants identified the thief to the Boston police as Bah. (FAC ¶¶ 33, 39). Bah alleges that defendants published this allegation to their own employees, (FAC ¶¶ 111, 119), and may have updated their internal security records to reflect the details of this allegation as well, (FAC ¶ 76). Bah also alleges that facial recognition technology assisted in defendants' misidentification of the thief. (FAC ¶ 58). In June 2018, after a warrant was issued in Massachusetts for his arrest, Bah appeared and was arraigned on charges related to this theft. (FAC ¶ 62). In January 2019, these charges were dropped after defendants produced surveillance video of the alleged theft, which showed an individual other than Bah committing the crime. (FAC ¶ 102).

On September 24, 2018, Apple and SIS employees reported to the Freehold, New Jersey police that a Freehold Apple store had suffered a theft and identified Bah as the thief (the

"Second New Jersey Incident"). (FAC ¶¶ 74, 79). Bah alleges that defendants published this allegation to their own employees, (FAC ¶¶ 111, 119), and may have updated their internal security records to reflect the details of this allegation as well, (FAC ¶ 86). On December 6, 2018, Bah received notice of charges against him related to the Second New Jersey Incident. (FAC ¶ 96).

In November 2018, Apple and SIS employees reported to the New York Police Department ("NYPD") that four New York City Apple stores had suffered thefts and identified Bah as one of the thieves responsible (the "New York Incidents"). (FAC ¶¶ 83, 87). Bah alleges that defendants published this allegation to their own employees, (FAC ¶¶ 111, 119), and may have updated their internal security records to reflect the details of this allegation as well, (FAC ¶ 86). In response to these accusations, warrants were issued for Bah's arrest on November 29, 2018. (FAC ¶¶ 88, 90). After comparing Bah to images of the individuals captured on surveillance footage during the New York Incidents, the NYPD determined that Bah did not match the physical appearance of any of the thieves and therefore was not responsible for any of the New York Incidents. (FAC ¶ 94). Bah was released and, subsequently, the charges related to the New York Incidents were dropped. (FAC ¶ 94).

In this action, Bah alleges defamation, malicious prosecution, and intentional and negligent infliction of emotional harm. Further, Bah alleges violations of a Massachusetts state law.

DISCUSSION

I.    The Court Possesses Personal Jurisdiction over Defendants for Bah's Claims Premised on Statements Related to and the Arrest Arising from the New York Incidents.

Defendants urge that Bah has failed to establish the Court's personal jurisdiction over defendants and, as such, their Rule 12(b)(2) motions to dismiss should be granted. (Mem. of Law in Supp. of Def. Apple Inc.'s Mot. to Dismiss the First Am. Compl. at 6–14 (Doc. 37 at 6–

14)). The Court finds that it has personal jurisdiction over defendants for Bah's claims premised on the statements relating to and the arrest arising from the New York Incidents, but that it lacks personal jurisdiction over defendants for Bah's claims premised on the other statements and prosecutions, which lack the requisite connection to New York.

A. Rule 12(b)(2) Legal Standard.

On a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction, plaintiff bears the burden of demonstrating that the court has personal jurisdiction over the defendant. Penguin Grp. (USA) Inc. v. Am. Buddha, 609 F.3d 30, 34–35 (2d Cir. 2010). The court assumes that the allegations contained within the complaint are true and only requires that the plaintiff make a prima facie showing of personal jurisdiction. Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A., 722 F.3d 81, 85 (2d Cir. 2013) (per curiam).

A district court may rely on affidavits without converting a Rule 12(b)(2) motion into a motion for summary judgment. Id. at 86 (citing S. New England Tel. Co. v. Glob. NAPs Inc., 624 F.3d 123, 138 (2d Cir. 2010)). The court should construe any pleadings and affidavits in the light most favorable to plaintiff and resolve all doubts in its favor. Id. at 85. However, courts should "not draw argumentative inferences in the plaintiff's favor" or "accept as true a legal conclusion couched as a factual allegation." In re Terrorist Attacks on Sept. 11, 2001, 714 F.3d 659, 673 (2d Cir. 2013) (quotation marks omitted). A court has "considerable procedural leeway" on a Rule 12(b)(2) motion and may decide it on the basis of affidavits alone, permit discovery in aid of the motion, or conduct an evidentiary hearing. Dorchester Fin. Sec., 722 F.3d at 84. "[W]hen a motion to dismiss for lack of jurisdiction is decided on the basis of affidavits and other written materials, the plaintiff need only make a prima facie showing" of personal jurisdiction over defendant. Roxx Allison Ltd. v. Jewelers Inc., 385 F. Supp. 3d 377, 379–80 (S.D.N.Y. 2019) (quoting Seetransport Wiking Trader Schiffarhtsgesellschaft MBH & Co., Kommanditgesellschaft

v. Navimpex Centrala Navala, 989 F.2d 572, 580 (2d Cir. 1993)). "Prior to discovery, a plaintiff challenged by a jurisdiction testing motion may defeat the motion by pleading in good faith legally sufficient allegations of jurisdiction. At that preliminary stage, the plaintiff's prima facie showing may be established solely by allegations." Ball v. Metallurgie Hoboken-Overpelt, S.A., 902 F.2d 194, 197 (2d Cir. 1990) (internal citations omitted). Further, such a prima facie showing of personal jurisdiction will suffice "notwithstanding any controverting presentation by" defendant. Dorchester Fin. Sec., 722 F.3d at 86 (quoting Marine Midland Bank, N.A. v. Miller, 664 F.2d 899, 904 (2d Cir. 1981)). However, "[a]fter discovery, plaintiff's prima facie showing, necessary to defeat a jurisdiction testing motion, must include an averment of facts that, if credited by the trier, would suffice to establish jurisdiction over the defendant. At that point, the prima facie showing must be factually supported." Ball, 902 F.2d at 197 (internal citations omitted).

Personal jurisdiction may be exercised over any defendant "who is subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located." Rule 4(k)(1)(A), Fed. R. Civ. P. In New York, courts possess personal jurisdiction over foreign domiciliaries when authorized by New York's general jurisdiction statute, N.Y. C.P.L.R. § 301 (McKinney 2019), or its longarm statute, N.Y. C.P.L.R. § 302(a), which permits jurisdiction only if one of four conditions are satisfied. If a plaintiff establishes a factual predicate for jurisdiction under the laws of the forum state, then the court must consider whether the exercise of jurisdiction is consistent with due process. Walden v. Fiore, 571 U.S. 277, 283 (2014).

B. The Court Possesses Personal Jurisdiction over Defendants for Bah's Defamation Claims.

Bah's defamation claims arise from five instances in which defendants identified Bah as a thief to their own employees and to local law enforcement. (FAC ¶¶ 110–24). These allegedly false accusations underlying Bah's defamation claims relate to the Connecticut Incident,

First New Jersey Incident, Massachusetts Incident, Second New Jersey Incident, and New York Incidents.

      i.    The Court Possesses Personal Jurisdiction over Defendants for Bah's Defamation Claims Premised on Statements Related to the New York Incidents.

In opposition to defendants' Rule 12(b)(2) motions to dismiss, Bah argues that the Court possesses specific personal jurisdiction over defendants for his defamation claims premised on statements relating to the New York Incidents. (Pl.'s Omnibus Mem. in Opp. to Defs.' Mots. to Dismiss at 12 (Doc. 44 at 12)).

Both Apple and SIS are foreign domiciliaries, so personal jurisdiction is only permissible under New York law when authorized by section 301 or section 302(a). Bah does not argue that the Court possesses general jurisdiction over defendants. N.Y. C.P.L.R. § 301. This is understandable because both defendants are incorporated and have their principal place of business in California, (FAC ¶¶ 2–3), and, therefore, are not "at home" in New York. Daimler AG v. Bauman, 571 U.S. 117, 137 (2014). Due process considerations would likely bar the application of general jurisdiction over them. Id.

Under New York's longarm statute, section 302(a), there are four bases for extending specific personal jurisdiction over foreign domiciliaries. However, two of these bases are statutorily inapplicable to defamation claims. Specifically, section 302(a)(2) and section 302(a)(3), which cover tortious acts committed within and without New York respectively, both expressly exclude "cause[s] of action for defamation of character arising from" the alleged tortious acts. N.Y. C.P.L.R. § 302(a)(2) & (3). As such, Bah cannot rely on section 302(a)(2) or section 302(a)(3) as bases of specific personal jurisdiction for his defamation claims.

Section 302(a)(1) offers a basis for specific jurisdiction over defamation claims. Jurisdiction lies under section 302(a)(1), if (1) defendants transact any business in New York and

(2) the cause of action arises from such a business transaction. Best Van Lines, Inc. v. Walker, 490 F.3d 239, 246 (2d Cir. 2007) (citing Deutsche Bank Sec., Inc. v. Montana Bd. of Invs., 7 N.Y.3d 65, 71 (2006)). Under the first prong, transacting business is defined as the purposeful availment of "the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." Id. (quoting McKee Elec. Co. v. Rauland–Borg Corp., 20 N.Y.2d 377, 382 (1967)). For defamation claims, such a business transaction requires more than "mere defamatory utterances sent into the state" or "the distribution of a libelous statement." Id. at 248. The second prong of section 302(a)(1) requires "an articulable nexus, or a substantial relationship, between the claim asserted and the actions that occurred in New York." Id. at 246 (quoting Henderson v. INS, 157 F.3d 106, 123 (2d Cir. 1998)). New York courts treat "defamation differently from other causes of action." SPCA of Upstate New York, Inc. v. Am. Working Collie Ass'n, 18 N.Y.3d 400, 405 (2012). In a defamation case, the second prong of section 302(a)(1) considers whether a concrete relationship exists between the defamatory statements and the New York activity as well as whether the defamatory statements were "written in or directed to New York." Id.

As Apple and SIS are both California domiciliaries, Bah must satisfy the requirements of section 302(a)(1) to establish specific personal jurisdiction over these foreign-domiciled defendants for his defamation claims. Bah alleges that both defendants transact business within New York, Apple operating retail stores within the state and SIS providing loss prevention services at those locations.[1] (FAC ¶¶ 8–9). These allegations, which demonstrate a consistent

---

[1] SIS disputes the allegation that it provided loss prevention services for Apple's New York stores. (Decl. of Tom Stevens ¶¶ 4–5 (Doc. 34-5 ¶¶ 4–5)). The Court may properly consider this declaration on a Rule 12(b)(2) motion to dismiss. However, as Bah has not been afforded the opportunity for jurisdictional discovery, the Court must give controlling weight to its allegation in the First Amended Complaint, Ball, 902 F.2d at 197; Dorchester Fin. Sec., 722 F.3d at 86, which states that SIS "provided security services" at Apple's New York stores. (FAC ¶ 9); see also (SIS's

course of commercial conduct within the state, are sufficient to satisfy the first prong of section 302(a)(1).

Defendants' statements related to the New York Incidents also satisfy section 302(a)(1)'s second prong. Bah alleges that defendants published false accusations to their employees and to the NYPD, which identified him as the thief responsible for the New York Incidents. These allegedly defamatory statements were made in New York, directed to a specific New York audience, the NYPD, and intended to have a specific effect within New York, the initiation of legal process against Bah in New York. Additionally, there is a substantial relationship between defendants' commercial activity in New York, namely the retailing of goods, and the alleged defamatory statements, which aim to hold an individual accountable for stealing from defendants' retail operations and to prevent similar future losses to these operations. Defendants' proposition that personal jurisdiction requires the commercial activity be conducted with the intent to defame is unsupported by the case law. Id. at 404 (collecting cases in which personal jurisdiction existed over defamation claims though the relevant business transaction was undertaken without an intent to defame). Here, the totality of the circumstances supports a finding that a sufficient nexus exists between Bah's claims and defendants' in-state business as the defamatory statements were made to protect and advance defendants' New York commercial activities, were made in New York, and were directed to a specific New York audience.

Subjecting defendants to personal jurisdiction in New York does not offend principles of due process because each defendant has contacts with the forum state that exceed the required "minimal contacts." Best Van Lines, 490 F.3d at 247 (stating "that the meaning of

---

Mem. of Law at 8 (Doc. 35 at 8) ("The Third-Party Complaint alleges that SIS provided the security to the Apple stores in New York, and specifically, in the Bronx, Manhattan and Staten Island.")). SIS may renew its personal jurisdiction arguments after Bah is afforded the opportunity for jurisdictional discovery.

'transact[ing] business' for the purposes of section 302(a)(1) overlaps significantly with the constitutional 'minimum contacts' doctrine" (first citing <u>McKee Elec. Co. v. Rauland-Borg Corp.</u>, 20 N.Y.2d 377, 382 (1967) and then citing <u>Deutsche Bank Sec.</u>, 7 N.Y.3d at 71–72)). Specifically, Bah alleges that Apple operates retail stores in New York and SIS provides loss prevention services at these New York locations. (FAC ¶¶ 8–9). Additionally, as discussed above, these minimum contacts possess a sufficient nexus to Bah's defamation claims. Therefore, the Court finds that personal jurisdiction over defendants exists for Bah's defamation claims premised on statements relating to the New York Incidents.

      ii.    The Court Lacks Personal Jurisdiction over Defendants for Bah's Defamation Claims Premised on Statements Related to the Connecticut, First New Jersey, <u>Massachusetts, and Second New Jersey Incidents</u>.

Bah also bases his defamation claims on four other sets of allegedly false accusations, which arise out of the Connecticut, First New Jersey, Massachusetts, and Second New Jersey Incidents. (FAC ¶¶ 111, 119). Again, section 302(a)(2) and section 302(a)(3) are inapplicable to defamation claims. <u>See</u> <u>supra</u> Section I.B.i. Further, unlike the statements related to the New York Incidents, none of these statements can satisfy the requirements for specific personal jurisdiction. Specifically, section 302(a)(1) does not supply jurisdiction because these allegedly defamatory statements lack a substantial nexus with defendants' business activities in New York. These statements were either reports to non-New York law enforcement or internal statements, which were allegedly made to defendants' employees across several states. At most, Bah alleges that the defamatory statements entered New York, failing to tie these statements directly to defendants' New York retail operations or to a specific New York audience. However, the mere distribution of defamatory statements within the state is insufficient as a basis for personal jurisdiction. <u>Best Van Lines</u>, 490 F.3d at 248. The required substantial nexus between the allegedly defamatory statements and defendants' New York commercial activities is lacking.

Accordingly, the Court cannot exercise specific personal jurisdiction under section 302(a)(1) over Bah's claims of defamation premised on statements relating to the Connecticut, First New Jersey, Massachusetts, and Second New Jersey Incidents.

The final grounds for specific jurisdiction under New York's longarm statute similarly fails to offer a basis for specific personal jurisdiction over defendants for defamation claims premised on statements relating to the Connecticut, First New Jersey, Massachusetts, and Second New Jersey Incidents. Specifically, section 302(a)(4) extends jurisdiction over a foreign domiciliary that "owns, uses or possesses any real property situated within the state." N.Y. C.P.L.R. § 302(a)(4). Bah, correctly, refrains from asserting that section 302(a)(4) provides a basis of personal jurisdiction for any of his claims. Though Bah alleges that defendants own, use, or possess property in New York, namely Apple's stores, section 302(a)(4)'s jurisdictional reach is subject to the limits of due process, which requires a connection between the forum and the claim. Williams v. Beemiller, Inc., 33 N.Y.3d 523, 529 (2019) ("The constitutional inquiry 'focuses on the relationship among the defendant, the forum, and the litigation.'" (quoting Keeton v. Hustler Magazine, Inc., 465 U.S. 770, 775 (1984))). As there is no connection between defendants' use of property in New York and the alleged defamatory statements related to the Connecticut, First New Jersey, Massachusetts, and Second New Jersey Incidents, considerations of due process foreclose a finding of specific jurisdiction over defendants for defamation claims premised on these incidents. Stroud v. Tyson Foods, Inc., 91 F. Supp. 3d 381, 390 (E.D.N.Y. 2015) ("[T]o allege personal jurisdiction over a non-domiciliary defendant under Section 302(a)(4), a plaintiff must demonstrate 'a relationship between the property and the cause of action sued upon.'" (quoting Lancaster v. Colonial Motor Freight Line, Inc., 581 N.Y.S.2d 283, 288 (1st Dep't 1992))); see also Karoon v. Credit Suisse Grp. AG, No. 15-cv-4643 (JPO), 2016 WL 815278, at *5

(S.D.N.Y. Feb. 29, 2016). The Court cannot exercise personal jurisdiction over any of Bah's claims of defamation premised on statements relating to the Connecticut, First New Jersey, Massachusetts, and Second New Jersey Incidents.

* * *

The Court finds that personal jurisdiction exists over defendants for Bah's claims of defamation premised on statements relating to the New York Incidents and therefore will deny defendants' Rule 12(b)(2) motions to dismiss as to these claims.

C. The Court Possesses Personal Jurisdiction over Defendants for Bah's Claims of Intentional and Negligent Infliction of Emotional Harm.

Bah alleges that defendants' false accusations identifying Bah as a thief to their own employees and law enforcement intentionally and negligently inflicted emotional and related physical harms upon him. (FAC ¶¶ 139–44).

Though alleging a different injury, Bah's claims of intentional and negligent infliction of emotional harm stem from the same allegedly false accusations as his defamation claims. (FAC ¶¶ 141, 144) (alleging that Bah suffered emotional harm "[a]s a result of [defendants'] repeated false criminal allegations and reckless disregard for truth or falsity of the allegations made in Connecticut, Massachusetts, New York, and New Jersey"). Therefore, as with the defamation claims, specific personal jurisdiction may only be exercised over these infliction of emotional harm claims under section 302(a)(1). Specifically, the defamation exceptions of section 302(a)(2) and section 302(a)(3) apply to non-defamation claims that, in substance, sound in defamation. Cantor Fitzgerald, L.P, v. Peaslee, 88 F.3d 152, 157 (2d Cir. 1996) ("Plaintiffs may not evade the statutory exception by recasting their cause of action as something other than defamation."); Fischer v. Stiglitz, No. 15-cv-6266 (AJN), 2016 WL 3223627, at *4 (S.D.N.Y. June 8, 2016) ("To ensure that a plaintiff does not 'evade the statutory exception by recasting [his]

cause of action as something other than defamation,' '[c]ourts must look to the substance, not merely the name, of a claim in order to determine whether that claim sounds in defamation.'" (first quoting <u>Cantor Fitzgerald</u>, 88 F.3d at 157 and then quoting <u>Morsy v. Pal-Tech, Inc.</u>, No. 07-cv-2143 (PKL), 2008 WL 3200165, at *5 (S.D.N.Y. Aug. 7, 2008))).  A claim sounds in defamation if, after "looking for the reality and the essence of the [claim] and not its mere name," <u>Findlay v. Duthuit</u>, 446 N.Y.S.2d 951, 953 (1st Dep't 1982), the court finds it to be "based upon [the] alleged defamatory statements."  <u>Cantor Fitzgerald</u>, 88 F.3d at 157.

Bah's claims of intentional and negligent infliction of emotional harm sound in defamation because these claims merely allege additional emotional injuries resulting from defendants' allegedly false accusations of theft, which are the basis of Bah's defamation claims. <u>Shamoun v. Mushlin</u>, No. 12-cv-3541 (AJN), 2014 WL 12776779, at *5 (S.D.N.Y. Mar. 26, 2014) (finding that claims of intentional and negligent infliction of emotional distress sounded in defamation); <u>see</u> <u>also</u> <u>Fischer</u>, 2016 WL 3223627, at *5 (finding that an intentional infliction of emotional distress claim sounded in defamation); <u>Knight-McConnell v. Cummins</u>, No. 03-cv-5035 (NRB), 2005 WL 1398590, at *3 (S.D.N.Y. June 13, 2005) (same); <u>Giro v. Estevill</u>, No. 96-cv-2258 (LLS), 1998 WL 63407, at *1 (S.D.N.Y. Feb. 13, 1998) (same).  Therefore, personal jurisdiction for Bah's infliction of emotional harm claims cannot lie under section 302(a)(2) or section 302(a)(3), leaving section 302(a)(1) and section 302(a)(4) as Bah's only potential avenues for these claims.  As the infliction of emotion harm claims arise from the same statements as the defamation claims, the Court's analysis of personal jurisdiction under section 302(a)(1) and section 302(a)(4) for these claims mirrors its analysis for the defamation claims.

For the same reasons as the defamation claims, the Court concludes that it possesses specific personal jurisdiction over defendants for Bah's claims of infliction of emotional harm

premised on statements relating to the New York Incidents. The Court also concludes that it lacks personal jurisdiction for Bah's infliction of emotional harm claims premised on statements relating to the Connecticut, First New Jersey, Massachusetts, and Second New Jersey Incidents.

D. **The Court Possesses Personal Jurisdiction over Defendants for Bah's Claims of Malicious Prosecution.**

Bah's malicious prosecution claims arise from four alleged incidents in which defendants' false accusations to law enforcement resulted in his prosecution. (FAC ¶¶ 125–38). Specifically, these incidents are Bah's prosecution following the First New Jersey Incident, his prosecution following the Massachusetts Incident, his prosecution following the Second New Jersey Incident, and his arrest following the New York Incidents.

i. **The Court Possesses Personal Jurisdiction over Defendants for Bah's Claims of Malicious Prosecution Premised on His Arrest Arising from the New York Incidents.**

Bah pleads specific personal jurisdiction over defendants for his malicious prosecution claims premised on his arrest arising from the New York Incidents. Specific jurisdiction for these claims exists under section 302(a)(2), which confers personal jurisdiction over a foreign domiciliary that "commits a tortious act within the state."[2] N.Y. C.P.L.R. § 302(a)(2). Here, Bah alleges that the tort at issue, his arrest by the NYPD, took place within

---

[2] Although Bah's malicious prosecution claims premised on his arrest arising from the New York Incidents also stem from the allegedly false accusations of theft made by defendants to the NYPD, these claims do not sound in defamation. "[T]he reality and the essence" of a malicious prosecution claim is the perversion of legal process, not reputational harm from false statements. A malicious prosecution claim is directly based, not on defamatory statements or their resulting harm, but on the wrongful initiation of legal action against a party. Bah's malicious prosecution claims stem from the action of the NYPD against him, not simply on defendants' alleged defamatory accusations. The malicious prosecution claims do not sound in defamation and, therefore, are not subject to the statutory exceptions to jurisdiction under section 302(a)(2) and section 302(a)(3). See Hanly v. Powell Goldstein, LLP, No. 05-cv-5089 (KMW), 2007 WL 747806, at *3 (S.D.N.Y. Mar. 9, 2007) (finding that a malicious prosecution claim was "premised upon injuries distinct from the defamation claim" and so did not sound in defamation), aff'd, 290 Fed. App'x 435 (2d Cir. 2008). Alternatively, if the malicious prosecution claims do sound in defamation, Bah has still sufficiently alleged specific personal jurisdiction under section 302(a)(1) as defendants transact business in New York and the alleged malicious prosecution was initiated due to statements directly related to this in-state business. See supra Section I.B.i.

New York State.  (FAC ¶ 90).  Further, no constitutional due process issue exists as the First Amended Complaint sufficiently alleges that defendants' minimum contacts with New York were related to the conduct at issue in these malicious prosecution claims.  Specifically, Bah alleges that the statements precipitating his arrest in New York arose from defendants' retail activities within the state.  As Bah has satisfied the requirements of New York's longarm statute and constitutional due process, the Court finds personal jurisdiction over defendants for his malicious prosecution claims premised on his arrest arising of out the New York Incidents and therefore denies defendants' Rule 12(b)(2) motions to dismiss these claims.

  ii. The Court Lacks Personal Jurisdiction over Defendants for Bah's Claims of Malicious Prosecution Premised on the Prosecutions Arising from the First New Jersey, Massachusetts, and Second New Jersey Incidents.

  The Court lacks specific personal jurisdiction over defendants on Bah's malicious prosecution claims to the extent they are premised on the prosecutions arising out of the First New Jersey, Massachusetts, and Second New Jersey Incidents.

  First, for the same reasons that defendants' allegedly defamatory statements to law enforcement in Massachusetts and New Jersey did not arise out of New York business transactions, the prosecutions in Massachusetts and New Jersey do not relate to any New York business transaction undertaken by defendants.  See supra Section I.B.ii.  Section 302(a)(1) therefore does not provide a basis for personal jurisdiction.  Similarly, as the prosecutions in Massachusetts and New Jersey do not relate to defendants' use of property in New York, jurisdiction does not lie under section 302(a)(4).  Section 302(a)(2) also does not provide jurisdiction over defendants for claims arising out of these non-New York prosecutions.

  In contrast to section 302(a)(2), section 302(a)(3) confers personal jurisdiction if defendant "commits a tortious act without the state causing injury to person or property within the state" and either (1) "regularly does or solicits business, or engages in any other persistent course

- 15 -

of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state," or (2) "expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce."   N.Y. C.P.L.R. § 302(a)(3).   This provision of New York's longarm statute could provide a basis for personal jurisdiction for Bah's malicious prosecution claims as courts have held that injury resulting from an out-of-state malicious prosecution can be both felt in state and be reasonably foreseen as having such an in-state effect.   Rothstein v. Carriere, 41 F. Supp. 2d 381, 386 (E.D.N.Y. 1999) (finding personal jurisdiction for an out-of-state malicious prosecution claim under section 302(a)(3)).

Yet, even assuming Bah's claims of malicious prosecution premised on the prosecutions arising out of the First New Jersey, Massachusetts, and Second New Jersey Incidents satisfy the requirements of section 302(a)(3), personal jurisdiction does not lie for these claims because such specific jurisdiction would be inconsistent with due process.   For specific personal jurisdiction, "[t]he constitutional inquiry 'focuses on the relationship among the defendant, the forum, and the litigation.'"[3]  Williams, 33 N.Y.3d at 529 (quoting Keeton, 465 U.S. at 775).   "[A] corporation's 'continuous activity of some sorts within a state is not enough to support the demand that the corporation be amenable to suits unrelated to that activity.'"   Bauman, 571 U.S. at 132 (quoting Int'l Shoe Co. v. State of Washington, 326 U.S. 310, 318 (1945)).   The Massachusetts and New Jersey-based malicious prosecution claims have no connection to defendants' activities in New York.   Bah does not allege that defendants' statements or conduct in New York were the basis for defendants' statements to law enforcement officials in these other states.   In fact, Bah's New York residence is the only alleged connection between these malicious prosecution claims

---

[3] In contrast, while general personal jurisdiction does not require a link between in-state activities and the conduct at issue, defendants must be "at home" in the state for such jurisdiction to apply.   On the face of the First Amended Complaint, defendants are both "at home" in California.   (FAC ¶¶ 2–3).   As noted, Bah does not and likely could not assert general jurisdiction.   Bauman, 571 U.S. at 137.

and New York. A plaintiff's residence in the forum is insufficient to establish defendants' minimum contacts with the forum for the purposes of specific personal jurisdiction. <u>Walden</u>, 571 U.S. at 290 (stating that "mere injury to a forum resident is not a sufficient connection to the forum" to establish specific jurisdiction and noting that "an injury is jurisdictionally relevant only insofar as it shows that the defendant has formed a contact with the forum State"). As Bah does not link defendants' New York retail activities to the Massachusetts and New Jersey malicious prosecution claims, Bah has failed to demonstrate the defendants' minimum contacts with New York relate to the conduct at issue in these claims and therefore has failed to demonstrate specific personal jurisdiction over defendants. Bah's claims of malicious prosecution, to the extent premised on the prosecutions arising out of the First New Jersey, Massachusetts, and Second New Jersey Incidents, will be dismissed.

\* \* \*

The Court finds personal jurisdiction exists over defendants for Bah's claims of malicious prosecution premised on the arrest arising out of the New York Incidents and therefore defendants' Rule 12(b)(2) motions to dismiss will be denied as to these claims.

II.    Bah States Claims of Defamation and Malicious Prosecution, but Fails to State Claims of Intentional and Negligent Infliction of Emotional Harm.

Defendants argue that Bah's surviving claims of defamation, malicious prosecution, and intentional and negligent infliction of emotional harm premised on the statements related to and the arrest arising from the New York Incidents must be dismissed under Rule 12(b)(6) for failure to state a claim. (Doc. 37 at 15–24). The Court finds that Bah states claims of defamation as well as malicious prosecution and therefore denies defendants' Rule 12(b)(6) motions to dismiss as to these claims. The Court also finds that Bah fails to

adequately plead claims of intentional and negligent infliction of emotional harm and therefore grants defendants' Rule 12(b)(6) motions to dismiss as to these claims.

A.  Rule 12(b)(2) Legal Standard.

Rule 12(b)(6) requires a complaint to "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  In assessing the sufficiency of a pleading, a court must disregard legal conclusions, which are not entitled to the presumption of truth.  Id.  Instead, the Court must examine the well-pleaded factual allegations, which are accepted as true, and "determine whether they plausibly give rise to an entitlement to relief."  Id. at 678–79.  "Dismissal is appropriate when 'it is clear from the face of the complaint, and matters of which the court may take judicial notice, that the plaintiff's claims are barred as a matter of law.'"  Parkcentral Global Hub Ltd. v. Porsche Auto. Holdings SE, 763 F.3d 198, 208–09 (2d Cir. 2014) (quoting Conopco, Inc. v. Roll Int'l, 231 F.3d 82, 86 (2d Cir. 2000)).

A court reviewing a Rule 12(b)(6) motion "does not ordinarily look beyond the complaint and attached documents in deciding a motion to dismiss brought under the rule."  Id.  A court may, however, "consider 'any written instrument attached to [the complaint] as an exhibit or any statements or documents incorporated in it by reference . . . and documents that the plaintiffs either possessed or knew about and upon which they relied in bringing the suit.'"  Stratte-McClure v. Morgan Stanley, 776 F.3d 94, 100 (2d Cir. 2015) (first alteration in original) (quoting Rothman v. Gregor, 220 F.3d 81, 88 (2d Cir. 2000)).

B.  Bah States a Claim of Defamation.

Bah alleges that, by publishing the statements related to the New York Incidents to their employees and to law enforcement, defendants have defamed him.  (FAC ¶¶ 111, 119).  The Court finds that, although these statements nominally fall within New York's qualified privileges

covering communications with law enforcement or persons with common interests, Bah has sufficiently alleged malice as to overcome these qualified privileges. Specifically, Bah alleges that defendants were highly aware that these statements were probably false, satisfying New York's definition of actual malice. Taking his pleadings as a whole, Bah adequately pleads actual malice and, therefore, defendants' Rule 12(b)(6) motions to dismiss the defamation claims will be denied.

"Defamation is 'the making of a false statement which tends to expose the plaintiff to public contempt, ridicule, aversion or disgrace, or induce an evil opinion of him in the minds of right-thinking persons, and to deprive him of their friendly intercourse in society.'" Williams v. Buffalo Pub. Sch., 758 F. App'x 59, 64 (2d Cir. 2018) (quoting Foster v. Churchill, 87 N.Y.2d 744, 751 (1996)). Here, Bah alleges both defamatory written statements, libel, and oral statements, slander. (FAC ¶¶ 113–14, 120–21). To demonstrate libel under New York law, a "plaintiff must establish five elements: (1) a written defamatory statement of and concerning the plaintiff, (2) publication to a third party, (3) fault, (4) falsity of the defamatory statement, and (5) special damages or per se actionability."[4] Palin v. N.Y. Times Co., 940 F.3d 804, 809 (2d Cir. 2019); see also Celle v. Filipino Reporter Enters. Inc., 209 F.3d 163, 176 (2d Cir. 2000). Similarly, "[t]he elements of a cause of action for slander under New York law are (i) a defamatory statement of fact, (ii) that is false, (iii) published to a third party, (iv) 'of and concerning' the plaintiff, (v) made

---

[4] New York's choice of law rules dictate the application of the law of the state with the greatest interest in the litigation. Cooney v. Osgood Mach., Inc., 81 N.Y.2d 66, 72 (1993). As Bah is a New York domiciliary, (FAC ¶ 90), and the statements related to the New York Incidents, which represent the sole remaining basis for Bah's defamation claims, were made, published, and had their harmful effect in New York, New York has the greatest interest in the litigation and its law will apply. Lee v. Bankers Tr. Co., 166 F.3d 540, 545 (2d Cir. 1999) ("Under New York choice-of-law rules in defamation cases 'the state of the plaintiff's domicile will usually have the most significant relationship to the case,' and its law will therefore govern. Although the preference for the plaintiff's domicile is not conclusive, 'the significant contacts [in a defamation case] are, almost exclusively, the parties' domiciles and the locus of the tort.'" (first quoting Reeves v. Am. Broad. Co., 719 F.2d 602, 605 (2d Cir. 1983) and then quoting AroChem Int'l, Inc. v. Buirkle, 968 F.2d 266, 270 (2d Cir. 1992))).

with the applicable level of fault on the part of the speaker, (vi) either causing special harm or constituting slander per se, and (vii) not protected by privilege." Albert v. Loksen, 239 F.3d 256, 265–66 (2d Cir. 2001) (citing Dillon v. City of New York, 704 N.Y.S.2d 1, 5 (1st Dep't 1999)).

Defendants do not argue that Bah has failed to state a claim for either libel or slander. Apple makes a fleeting attempt to argue that Bah has "fallen woeful short of sufficiently pleading" that the alleged defamatory "statements could be attributable to Apple." (Doc. 37 at 18). The Court concludes Bah has adequately alleged that Apple, through its employees and/or its agent, SIS, made the allegedly defamatory statements related to the New York Incidents. (FAC ¶¶ 84, 86–87, 111–14, 119–21). Defendants focus their main argument on whether the statements related to the New York Incidents are protected by qualified privileges, which Bah cannot overcome.

Under New York law, "certain communications, although defamatory, cannot serve as the basis for the imposition of liability in a defamation action" as they "are deemed privileged, either absolutely or qualifiedly." Toker v. Pollak, 44 N.Y.2d 211, 218–19 (1978). A communication falls under the qualified privilege when the statement "is fairly made by a person in the discharge of some public or private duty, legal or moral, or in the conduct of his own affairs, in a matter where his interest is concerned." Id. (quoting John W. Lovell Co. v. Houghton, 116 N.Y. 520, 526 (1889)). Such a privilege will "negate any presumption of implied malice flowing from a defamatory statement, and places the burden of proof on this issue upon the plaintiff." Id. Therefore, overcoming a qualified privilege requires "a showing either of 'actual' malice (i.e., knowledge of the statement's falsity or reckless disregard as to whether it was false) or of common-law malice." Chandok v. Klessig, 632 F.3d 803, 815 (2d Cir. 2011) (citing Liberman v. Gelstein, 80 N.Y.2d 429, 437 (1992)).

New York courts have recognized two relevant qualified privileges, the law enforcement privilege and the common interest privilege.  The law enforcement privilege extends to statements made to the police, aiming to protect and encourage the reporting of alleged crimes. D'Amico v. Zingaro, 24 N.Y.S.3d 339, 341 (2d Dep't 2016) (citing Toker, 44 N.Y.2d at 220); see also Friedman v. Self Help Cmty. Servs., Inc., 647 F. App'x 44, 47 (2d Cir. 2016).  The common interest privilege provides that "[a] good-faith communication upon any subject matter in which the speaker has an interest, or in reference to which he has a duty, is qualifiedly privileged if made to a person having a corresponding interest or duty."  Present v. Avon Prod., Inc., 687 N.Y.S.2d 330, 333 (1st Dep't 1999).  This privilege can cover statements made to or by a defendant's employees as well as its outside vendors.  Id. (first citing Loughry v. Lincoln First Bank, N.A., 67 N.Y.2d 369, 376 (1986) and then citing Clark v. Somers, 557 N.Y.S.2d 209 (4th Dep't 1990)); see also Liberman, 80 N.Y.2d at 437.  "The rationale for applying the [common interest] privilege in these circumstances is that so long as the privilege is not abused, the flow of information between persons sharing a common interest should not be impeded."  Id.

Defendants argue that their allegedly defamatory statements are covered by a qualified law enforcement privilege and a qualified common interest privilege, respectively.  (Doc. 37 at 17–20).  Specifically, defendants argue that their statement to the NYPD, identifying Bah as responsible for the thefts from New York City Apple stores, is protected under their qualified law enforcement privilege because this communication was a report to the police.  D'Amico, 24 N.Y.S.3d at 341.  Similarly, defendants invoke the common interest privilege over the statements related to the New York Incidents published to each other and their respective employees.  The common interest privilege appears to apply to these statements, which were published to persons who were in either an employment or vendor relationship with each other and concerned that

commercial relationship. <u>Present</u>, 687 N.Y.S.2d at 334. As defendants have made the prima facie showing required to invoke these privileges, plaintiff must plead either common law or actual malice to overcome them.

In response, Bah asserts that the First Amended Complaint plausibly alleges that defendants made the allegedly defamatory statements with actual malice, which requires either knowledge that the statements were false or reckless disregard for the statements' truth. <u>Liberman</u>, 80 N.Y.2d at 347–48. To establish actual malice, "plaintiff must demonstrate that the 'statements [were] made with [a] high degree of awareness of their probable falsity.' In other words, there 'must be sufficient evidence to permit the conclusion that the defendant in fact entertained serious doubts as to the truth of [the] publication.'" <u>Id.</u> at 438 (first quoting <u>Garrison v. State of Louisiana</u>., 379 U.S. 64, 74 (1964) and then quoting <u>St. Amant v. Thompson</u>, 390 U.S. 727, 731 (1968)). Further, "there is a critical difference between not knowing whether something is true and being highly aware that it is probably false. Only the latter establishes reckless disregard in a defamation action." <u>Id.</u> Bah alleges, by the time the statements related to the New York Incidents were made, defendants had "actual or constructive knowledge" that the thief identified in their records as Bah was not actually Bah. (FAC ¶¶ 86–87). Bah argues that defendants' statements identifying him as one of New York thieves to the NYPD were made with actual malice because they were published with knowledge of their falsity, in purposeful avoidance of their truth, or "with reckless disregard for their truth or their falsity." (FAC ¶¶ 116, 122); (Doc. 44 at 28).

In assessing whether the First Amended Complaint adequately pleads actual malice, the sequence of events is critically important. The following chronology of charges and dispositions is based upon the Court's understanding of the somewhat muddled allegations of the First Amended Complaint:

| DATE OF INCIDENT | INCIDENT | INDIVIDUAL DETAINED AT SCENE? | BAH CHARGED? | DISPOSITION | DATE OF DISPOSITION |
|---|---|---|---|---|---|
| Prior to May 24, 2018 | Connecticut | Yes | No | N/A | N/A |
| May 24, 2018 | First New Jersey | Yes | Yes | Pending | N/A |
| May 31, 2018 | Massachusetts | No | Yes | Dismissed | Jan. 2019 |
| Sept. 24, 2018 | Second New Jersey | No | Yes | Pending | N/A |
| Nov. 2018 | New York | No | Yes | Dismissed | Nov. 2018 |

Actual knowledge of falsity can satisfy the actual malice standard. However, the sequence of events alleged demonstrates that, at the time of the New York Incidents, defendants could not have known that the other charges against Bah had been dismissed because none had actually yet been dismissed. Specifically, while the statements related to the New York Incidents were made sometime prior to November 29, 2018, (FAC ¶ 90), the charges arising from the New York Incidents were dropped sometime after November 29, 2018, (FAC ¶ 94), and the charges arising from the Massachusetts Incident were dropped in January 2019, (FAC ¶¶ 101–02). The charges arising from the First and Second New Jersey Incidents have not been dropped and are still pending. (FAC ¶ 105).

Bah does successfully plead actual malice by alleging a reckless disregard for the truth, which, as discussed, requires "high degree of awareness" of the relevant statements' probable falsity, and therefore overcomes defendants' qualified privileges. He alleges that the individual apprehended in the First New Jersey Incident did not resemble the individual detained in the initial Connecticut Incident and provides a specific description of the differences in appearance between the two individuals. (FAC ¶ 22 (stating that "[t]he Connecticut thief was shorter, not as thin, and had a visibly different skin tone and hair style" than the thief responsible

for the First New Jersey Incident)). He further alleges that the thief in the Massachusetts Incident, whom defendants at the time identified as Bah, was same person as was detained in the Connecticut Incident. (FAC ¶ 34–35). Bah argues that, by this point, defendants "knew or were constructively aware that [their] identification of the thief as Bah was unreliable" because they had "identified two very different persons as Bah." (FAC ¶ 37). As such, any statement identifying Bah as a thief, which was based on this unreliable method of identification, was made with a reckless disregard for the truth and made with a high degree of awareness that the identification was probable inaccurate, based on defendants' own records.[5]

At the pleadings stage, the First Amended Complaint plausibly and adequately alleges that defendants acted in reckless disregard of the truth, i.e. that they knew that there was a high probability that the thief was not Bah and therefore that their statements identifying Bah as such were false. While the case may look very different at the summary judgment stage, Bah has plausibly alleged a reckless disregard of the truth that amounts to actual malice for the purpose of overcoming New York's qualified privileges. Defendants' Rule 12(b)(6) motions to dismiss the claims of defamation based upon defendants' statements relating to the New York Incidents will be denied.

C. Bah States a Claim of Malicious Prosecution.

Bah alleges that defendants' false accusations of theft to the NYPD resulted in his wrongful arrest, actions which constitute malicious prosecution. (FAC ¶¶ 125–38). Defendants argue that the arrest arising from the New York Incidents cannot support a malicious prosecution claim and that Bah has failed to allege the required elements of a malicious prosecution claim.

---

[5] A plaintiff may also satisfy the actual malice standard by pleading and proving "purposeful avoidance" which requires "conduct that 'evinces an intent to avoid the truth.'" Van-Go Transp. Co. v. N.Y.C. Bd. of Educ., 971 F. Supp. 90, 105 (E.D.N.Y. 1997) (quoting Sweeney v. Prisoners' Legal Servs. of N.Y. Inc., 84 N.Y.2d 786, 793 (1995)). As Bah has adequately alleged a reckless disregard for the truth, the Court need not reach this issue.

(Doc. 37 at 12–13, 21–22).  The Court finds that Bah states a claim for malicious prosecution and therefore will deny defendants' Rule 12(b)(6) motions to dismiss these claims.

"The essence of malicious prosecution is the perversion of proper legal procedures. Thus, it has been held that some sort of prior judicial proceeding is the sine qua non of a cause of action in malicious prosecution."  Broughton v. State, 37 N.Y.2d 451, 457 (1975) (citing Al Raschid v. News Syndicate Co., 265 N.Y. 1, 3 (1934)).  Defendants argue that Bah has not alleged that any New York prosecution or judicial proceeding has occurred and therefore cannot plead a malicious prosecution claim.  (Doc. 37 at 12–13); (Reply Mem. of Law in Further Supp. of Def. Apple Inc.'s Mot. to Dismiss the First Am. Compl. at 5 (Doc. 46 at 5)).  Defendants are correct that Bah only alleges a New York arrest, not any further prosecution or proceeding.  (FAC ¶¶ 90, 94).  However, Bah alleges that his arrest was effectuated pursuant to New York arrest warrants.  (FAC ¶¶ 85, 88, 90).  Judicial proceedings that may support a claim of malicious prosecution include "an evaluation by a Magistrate of an affidavit supporting an arrest warrant application."  Id.  As such, Bah can allege malicious prosecution based on the arrest arising from the New York Incidents, which was effectuated pursuant to arrest warrants.  Id. at 457–58 ("When an unlawful arrest has been effected by a warrant an appropriate form of action is malicious prosecution."); see also N.Y. Pattern Jury Instructions 3:50 (Comment) (2018) ("If the arrest was made pursuant to a warrant, malicious prosecution is the gist of the action." (citing Broughton, 37 N.Y.2d 451)).

"The elements of the tort of malicious prosecution are: (1) the commencement or continuation of a criminal proceeding by the defendant against the plaintiff, (2) the termination of the proceeding in favor of the accused, (3) the absence of probable cause for the criminal proceeding and (4) actual malice."  Torres v. Jones, 26 N.Y.3d 742, 760 (2016) (quoting

Broughton, 37 N.Y.2d at 457).  First, defendants argue that Bah cannot adequately plead commencement of a judicial proceeding by defendants, who are non-governmental entities. (Doc. 46 at 10).  Under New York law, "a civilian defendant who merely furnishes information to law enforcement authorities who are then free to exercise their own independent judgment as to whether an arrest will be made and criminal charges filed will not be held liable for malicious prosecution." Lupski v. County of Nassau, 32 A.D.3d 997, 998 (2d Dep't 2006).  "In order for a civilian defendant to be considered to have initiated the criminal proceeding, 'it must be shown that defendant played an active role in the prosecution, such as giving advice and encouragement or importuning the authorities to act.'"  Id. (quoting Viza v. Town of Greece, 94 A.D.2d 965, 965 (4th Dep't 1983)).  "One who does no more than disclose to a prosecutor all material information within his knowledge is not deemed to be the initiator of the proceeding." Present, 687 N.Y.S.2d at 335.  However, "New York law has long equated the civil defendant's failure to make a full and complete statement of the facts to the District Attorney or the court, or holding back information that might have affected the results, with that defendant's initiation of a malicious prosecution." Ramos v. City of New York, 729 N.Y.S.2d 678, 690 (1st Dep't 2001) (citing Hopkinson v. Lehigh Valley R. Co., 249 N.Y. 296, 300 (1928)); see also Place v. Ciccotelli, 995 N.Y.S.2d 348, 351 (3d Dep't 2014). ("[A]llegations that a complainant has knowingly provided false information to the police or withheld information from police have been found to be sufficient to state that the complainant initiated the proceeding by playing an active role in the other party's arrest and prosecution.").

> Defendants are both non-government entities, who reported an alleged crime to the police.  Therefore, to plead the first element of his malicious prosecution claims, Bah must allege

that defendants knew their accusations were false or that they withheld information that might have influenced the decision to prosecute.

Bah adequately alleges that defendants withheld information in their statement to the NYPD. Defendants failed to disclose that their identification of Bah as a thief relied solely upon an unreliable internal security system, which had labeled two physically distinct individuals as Bah. (FAC ¶ 37). This statement to the NYPD represents the only evidence supporting and the only event prompting Bah's arrest. As such, material information on the reliability and accuracy defendants' accusation would have likely undermined the credibility of this identification and have influenced the NYPD's decision to arrest Bah. Specifically, had it been informed that defendants' records identified two different individuals as Bah, the NYPD likely would have taken other investigative steps to confirm the thief's identity, such as viewing the surveillance footage of the New York Incidents, prior to arresting Bah. In sum, defendants failed to disclose all material information to the NYPD and this undisclosed information likely would have affected the decision to prosecute Bah. The Court concludes that Bah has plausibly pled that defendants "play[ed] an active role in [his] arrest" and, therefore, that Bah has established the first element of a malicious prosecution claim. Place, 995 N.Y.S.2d at 351; see also Lupski, 32 A.D.3d at 998. The conclusion that defendants initiated Bah's prosecution is further bolstered by the conclusion, detailed below, that Bah has adequately alleged that defendants acted with actual malice in their accusation to the NYPD.

Defendants also argue that Bah fails to adequately allege the fourth element, malice. (Doc. 37 at 21–22). "Malice, in the malicious prosecution context, exists where the malicious prosecution defendant commences a criminal proceeding 'due to a wrong or improper motive, something other than a desire to see the ends of justice served.'" Maskantz v. Hayes, 832 N.Y.S.2d

566, 570 (1st Dep't 2007) (quoting <u>Nardelli v. Stamberg</u>, 44 N.Y.2d 500, 502–03 (1978)). This improper motive may be shown by pleading "reckless or grossly negligent disregard for [defendant's] rights," such as by "an egregious deviation from proper investigative procedures or by initiation of the prosecution notwithstanding the total absence of probable cause." <u>Ramos</u>, 729 N.Y.S.2d at 691 (internal citations omitted). "Actual malice, in fact, is seldom shown by direct evidence of an ulterior motive, but is usually inferred from the facts and circumstances of the [case]." <u>Id.</u> For instance, in <u>Ramos</u>, the court found malice when "exculpatory evidence was ignored and suppressed" by prosecutors. <u>Roberts v. City of New York</u>, 97 N.Y.S.3d 3, 12 (1st Dep't) (describing <u>Ramos</u>, 729 N.Y.S.2d 678), <u>aff'd</u>, 34 N.Y.3d 991 (2019).

For the same reasons as discussed above, Bah has plausibly pled that defendants made their accusation to the NYPD with a reckless disregard for Bah's rights, sufficient for actual malice. <u>See</u> <u>supra</u> Section II.B. Bah alleges that both the individual detained in the Connecticut Incident and the individual apprehended in the First New Jersey Incident were identified as Bah by defendants, despite that these two individuals resembled neither each other nor Bah. (FAC ¶¶ 22, 37). This identification of two visibly distinct individuals as the same person by defendants' internal system demonstrates the system's unreliability in producing accurate identifications. As such, any accusation of criminality made to the police, such as identifying Bah as a thief, based on this unreliable method of identification was necessarily made with reckless disregard for Bah's rights. The initiation of a prosecution based on an unreliable identification indicates a disregard for the rights of the named individual and also indicates a lack of probable cause for such an identification in the first place. At this stage of the litigation, Bah has sufficiently alleged that defendants acted with reckless disregard for his rights and, therefore, has established actual malice.

Defendants' Rule 12(b)(6) motions to dismiss Bah's malicious prosecution claims based upon the arrest arising from the New York Incidents will be denied.

D. <u>Bah Fails to State a Claim of Intentional Infliction of Emotional Harm</u>.

Bah's intentional infliction of emotional harm claim is dismissed for failure to state a claim because this claim falls within the ambit of other traditional tort claims, i.e. defamation and malicious prosecution. New York law does not permit an intentional infliction of emotional harm claim to stand in such circumstances. <u>Restis v. Am. Coal. Against Nuclear Iran, Inc.</u>, 53 F. Supp. 3d 705, 730 (S.D.N.Y. 2014) (dismissing an intentional infliction of emotional harm claim as encompassed within a defamation claim); <u>Leonard v. Reinhardt</u>, 799 N.Y.S.2d 118, 119 (2d Dep't 2005) (dismissing an intentional infliction of emotional harm claim as within the ambit of malicious prosecution as well as assault and battery claims); <u>Herlihy v. Metro. Museum of Art</u>, 633 N.Y.S.2d 106, 114 (1st Dep't 1995) (dismissing an intentional infliction of emotional harm claim as subsumed by a defamation claim); <u>Butler v. Del. Otsego Corp.</u>, 610 N.Y.S.2d 664, 665–66 (3d Dep't 1994) (dismissing an intentional infliction of emotional harm claim due to the existence of a defamation claim).

The intentional infliction of emotional harm claim will be dismissed.

E. <u>Bah Fails to State a Claim of Negligent Infliction of Emotional Harm</u>.

Bah next alleges that defendants' actions have resulted in the negligent infliction of emotional harm. (FAC ¶¶ 141, 144). The Court dismisses these claims because Bah fails to plausibly plead the necessary elements of negligent infliction of emotional harm.

"Under New York law, a plaintiff can establish a claim for negligent infliction of emotional distress if her injuries arise out of one of three theories: (i) the bystander theory, (ii) the 'zone of danger' theory, or (iii) the direct duty theory." <u>Doe v. Doe</u>, No. 16-cv-0332 (NSR), 2017 WL 3025885, at *8 (S.D.N.Y. July 14, 2017) (citing <u>Taggart v. Constable</u>, 14 N.Y.S.3d 388, 395–

96 (2d Dep't 2015)).  The bystander theory requires that plaintiff have "witnessed the death or serious injury of a family member due to the defendant's actions" and been threatened with personal physical injury.  Id. (citing Bovsun v. Sanperi, 61 N.Y.2d 219, 230–31 (1984)).  The "zone of danger" theory requires that "defendant's actions posed an actual risk to plaintiff's physical safety, or caused plaintiff to fear for his or her own physical safety."  Id. (citing Taggart, 14 N.Y.S.3d at 395–96).  Bah does not allege the physical injury (or threat of such injury) required to invoke either the bystander or "zone of danger" theories.  (FAC ¶¶ 140, 143 (stating that Bah's emotional harm resulted not from a brush with physical harm, but from defendants' "misidentification of the Plaintiff, reliance upon inadequate documentation to make a positive identification, identification of different individuals as the Plaintiff, reliance upon automated systems which failed to reliably identify the Plaintiff (including the possible use of FRT), repeated false allegations of criminal activity against the Plaintiff in multiple states, withholding and failure to disclose exculpatory evidence, misleading of Mr. Bah and law enforcement concerning the exculpatory video, and failure to withdraw the false criminal charges when they had actual or constructive notice of their falsity").

The direct duty theory requires "physical or emotional injuries caused by a defendant's breach of a duty owed to that plaintiff."  Id. (citing Kennedy v. McKesson Co., 58 N.Y.2d 500, 504 (1983)).  The duty alleged to have been breached "must be specific to the particular person claiming to have been emotionally harmed."  Id.; see also Mortise v. United States, 102 F.3d 693, 696 (2d Cir. 1996) ("The duty in such cases must be specific to the plaintiff, and not some amorphous, free-floating duty to society.").  Plaintiff's mental injuries from this breach of duty must be "a direct, rather than a consequential, result of the breach" and "possess[] some guarantee of genuineness."  Taggart, 14 N.Y.S.3d at 396 (quoting Ornstein v. N.Y.C. Health

& Hosps. Corp., 10 N.Y.3d 1, 6 (2008)).  For the types of claims advanced by Bah, "the guarantee of genuineness generally requires that the breach of the duty owed directly to the injured party must have at least endangered the plaintiff's physical safety or caused the plaintiff to fear for his or her own physical safety."  Id. (internal quotation marks omitted).  The requirement that the alleged mental injury flow directly from the breach of duty permits the intervening acts of third parties to bar recovery.  See Sawitsky v. State, 46 N.Y.S.3d 123, 125 (2d Dep't 2017).

Bah alleges that defendants "owed a duty to the Plaintiff to refrain from accusing him of committing a crime without probable cause."  (FAC ¶¶ 126, 133).  Defendants do not owe this duty specifically to Bah.  Rather, it is an "amorphous, free-floating duty to society."  Mortise, 102 F.3d at 696.  The breach of such a duty cannot support a claim of negligent infliction of emotional harm.  Further, Bah's alleged mental injury is not the direct consequence of defendants' statements related to the New York Incidents, but results from the intervening actions of law enforcement.  (See FAC ¶¶ 141, 144 ("Mr. Bah has suffered fear of prosecution, fear for his safety and personal freedom, embarrassment, humiliation, and significant stress, as well as physical sequelae from such emotional harm, including insomnia and extreme weariness.")).  Bah fails to plead the requisite direct connection between the alleged breach of duty and his mental injury.

Bah fails to plausibly state a claim of negligent infliction of emotional harm.  Therefore, defendants' Rule 12(b)(6) motions to dismiss are granted as to these claims.

III.  Defendants' Motions to Dismiss Bah's Claims Under Massachusetts State Law Will Be Granted.

Lastly, Bah alleges that, by falsely initiating prosecutions in Boston and New York, defendants have interfered with the enjoyment of his constitutional rights in violation of the Massachusetts Civil Rights Act ("MCRA").  Mass. Gen. Laws Ann. ch. 12, § 11I (West 2019); (FAC ¶¶ 145–58).  Defendants argue that these claims fail on grounds of personal jurisdiction,

venue, failure to state a claim, and abandonment. (Doc. 37 at 12–14, 24); (Doc. 46 at 10). The Court finds that Bah has abandoned these claims and, alternatively, has failed to adequately state claims under the MCRA.

The MCRA is "a state-law analogue to 42 U.S.C. § 1983 that provides a statutory civil cause of action against those who 'interfere' with the exercise or enjoyment of rights secured by federal or state law." Nolan v. CN8, 656 F.3d 71, 76 (1st Cir. 2011). While the MCRA permits suits against private individuals, it "is narrower than § 1983 in that it limits its remedy to conduct that interferes with a secured right 'by threats, intimidation or coercion.'" Id. (quoting Mass. Gen. Laws Ann. ch. 12, § 11H). As such, a plaintiff "must prove that '(1) their exercise or enjoyment of rights secured by the Constitution or laws of either the United States or of the Commonwealth, (2) have been interfered with, or attempted to be interfered with, and (3) that the interference or attempted interference was by 'threats, intimidation, or coercion.'" Davis v. Rennie, 264 F.3d 86, 111 (1st Cir. 2001) (quoting Swanset Dev. Corp. v. City of Taunton, 423 Mass. 390, 395 (1996)). Importantly, "even a direct deprivation of a plaintiff's rights 'would not be actionable under the act unless it were accomplished by means of one of these three constraining elements.'" Nolan, 656 F.3d at 77 (quoting Buster v. George W. Moore, Inc., 438 Mass. 635, 646 (2003)).

The Court deems Bah's claims under the MCRA abandoned and therefore dismissed. Specifically, Bah, who is represented by counsel, fails to respond to defendants' arguments supporting dismissal of his MCRA claims for failure to state a claim. (Doc. 46 at 10). Therefore, the Court deems these claims abandoned and dismisses them. Chamberlain v. City of White Plains, 986 F. Supp. 2d 363, 392 (S.D.N.Y. 2013) ("A court may, and generally will, deem a claim abandoned when a plaintiff fails to respond to a defendant's arguments that the claim should be dismissed." (quoting Martinez v. City of New York, No. 11–cv–7461, 2012 WL

6062551, at *1 (S.D.N.Y. Dec. 6, 2012))); see also Anti-Monopoly, Inc. v. Hasbro, Inc., 958 F.

Supp. 895, 907 (S.D.N.Y.) ("The Court also notes that, under New York state law, the failure to

provide argument on a point at issue constitutes abandonment of the issue."), aff'd, 130 F.3d 1101

(2d Cir. 1997); Robinson v. Fischer, No. 09-cv-8882 (LAK-AJP), 2010 WL 5376204, at *10

(S.D.N.Y. Dec. 29, 2010) ("Federal courts have the discretion to deem a claim abandoned when a

defendant moves to dismiss that claim and the plaintiff fails to address in their opposition papers

defendants' arguments for dismissing such a claim.").

      Alternatively, assuming jurisdiction and venue are properly alleged, Bah still only

pleads a direct violation of his rights without any of the required threats, intimidation, or coercion.

Specifically, Bah alleges that defendants instigated his prosecution arising from the Massachusetts

Incident and his arrest arising from the New York Incidents. Bah does not allege that the alleged

malicious prosecutions were threats, intimidation, or coercion intended to deny the exercise of

another of his constitutional rights. As such, he fails to state a claim under the MCRA. Sarvis v.

Bos. Safe Deposit & Tr. Co., 47 Mass. App. Ct. 86, 92–93 (1999) (stating that an arrest qualified

as threating and coercive when intended to interfere with plaintiff's right to a summary process

hearing during an eviction); Gallagher v. Commonwealth of Massachusetts, No. 00-cv-11859,

2002 WL 924243, at *3 (D. Mass. Mar. 11, 2002) ("The use of force is not, in itself, 'coercive'

within the meaning of the act unless such force is inflicted in order to achieve 'some further

purpose.'" (quoting Longval v. Comm'r of Corr., 404 Mass. 325, 333–34 (1989))); Ciolino v.

Eastman, 128 F. Supp. 3d 366, 380 (D. Mass. 2015) ("Plaintiffs would need to come forth with

some evidence that Defendants falsely arrested and/or allegedly assaulted [plaintiff] with the intent

to achieve 'some further purpose' of violating one or more of Plaintiffs' rights, beyond [plaintiff]'s

Fourth Amendment right to be free from unlawful searches or seizures." (citing <u>Sarvis</u>, 47 Mass. App. Ct. at 92–93)).

        Defendants' Rule 12(b)(6) motions to dismiss Bah's MCRA claims will be granted.

CONCLUSION

        Defendants' motions to dismiss the First Amended Complaint are GRANTED in part and DENIED in part. There is both a basis for personal jurisdiction and a plausible allegation of defamation and malicious prosecution arising out of the New York Incidents. All other claims for relief are dismissed. The Clerk is directed to terminate these motions. (Docs. 33, 36). SIS may renew it motion asserting lack of personal jurisdiction after Bah is afforded the opportunity to conduct jurisdictional discovery.

        SO ORDERED.

P. Kevin Castel
United States District Judge

Dated: New York, New York
      February 10, 2020