UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

OUSMANE BAH,
     Plaintiff

          v.                                 Docket No. 1:19-cv-03539-PKC

APPLE INC.,
SECURITY INDUSTRY
SPECIALISTS, INC.,
JOHN WOODRUFF, individually and as
an employee of SECURITY INDUSTRY
SPECIALISTS, INC.,
DETECTIVE JOHN REINHOLD, individually and as
a detective for the NEW YORK POLICE DEPARTMENT,
JOHN DOES 1-3, unidentified officers of the
NEW YORK POLICE DEPARTMENT, and
CITY OF NEW YORK, by and through
THE NEW YORK POLICE DEPARTMENT,
     Defendants.

**PLAINTIFF'S OMNIBUS OPPOSITION TO DEFENDANTS' MOTION TO
DISMISS SECOND AMENDED COMPLAINT**

Subhan Tariq, Esq.
Attorney I.D.# ST9597
The Tariq Law Firm, PLLC
**Attorney for Plaintiff**
34-18 Northern Blvd – Suite 2-25
Long Island City, NY 11101
Telephone: (718) 674-1245
Email: subhan@tariqlaw.com

Daniel Malis, Esq., *Pro Hac Vice*
BBO # 315770
MALIS|LAW
**Attorney for Plaintiff**
30 2nd Street
Cambridge, MA 02141
Telephone: (617) 491-1099
Email: daniel.malis@malislaw.com

## <u>TABLE OF CONTENTS</u>

Procedural History ....................................................................................................1

Statement of Facts ...................................................................................................2

   1.  There Was No Formal Video "Retention Period" at Apple. ......................5

   2.  Apple Still Possessed Video from the Boston Store Taken on the Date of the Boston Theft After the Alleged "Retention Period" Had Lapsed....................5

Argument ..................................................................................................................10

   I.   Allegations of Malice or Recklessness in a Complaint are Sufficient to Defeat a Motion to Dismiss Based Upon Qualified Law Enforcement Privilege.........................10

   II.   Plaintiff has Adequately Pled a Plausible Basis for His Claims of Slander and Libel, as well as Malicious Prosecution ...............................................12

     A.   Plaintiff's Prima Facie Claim of False Accusation is Undisputed ...................12

   III.   The Facts Alleged by Plaintiff Far Exceed the Pleading Standard and State Detailed and Plausible Claims of Malice through Reckless Disregard for the Truth of Seventeen Different Criminal Charges Levied Against the Plaintiff, Including Specifically Those in New York ............................................................15

     A.   The Defendants Cannot Obtain Dismissal Through Naked Claims of Good Faith, or Denial of Malice or Recklessness...................................15

     B.   The Allegations in Plaintiff's Second Amended Complaint Provide Substantial Evidence Defendants Were Reckless in Seeking Prosecution of Bah Based Upon Inadequate and Unreliable Identification ..........................................16

       1.  The Defendants' Identification of the Thief as Bah Required Them to Ignore or Reject Contradictory Evidence ................................................17

       2.  The Defendants' Failure to Produce Exculpatory Video Is Evidence of Bad Faith .............................................................................18

       3.  Woodruff's Claim that Bah Was "Known to Us" as a Thief Was Defamatory and Requires an Inference That He Entertained Serious Doubts Regarding the Identification ............................................................................19

     C.   Defendants' Continued Pursuit of the Plaintiff and Misrepresentations Despite Their Knowledge of His Innocence Is Evidence of Recklessness and Malice 21

     D.   Defendants Seek to Pre-Try this Case and Blame Plaintiff for Being the Victim of Repeated False Accusations ...........................................................22

Conclusion ...............................................................................................................23

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Benedict P. Morelli & Assoc., P.C. v. Cabot*, 11 Misc. 3d 1065[A], 816 N.Y.S.2d 693, 2006 NY
    Slip Op 50390[U] (Sup Ct, NY County 2006) ....................................................................11

*Boyd v. Nationwide Mutual Ins. Co.*, 208 F.3d 406 (2d Cir. 2000).....................................12, 22

*Chaiken v. VV Publ. Corp.*, 907 F Supp 689 (SDNY 1995) .......................................................16

*Chapadeau v. Utica Observer-Dispatch, Inc.*, 38 N.Y.2d 196, 379 N.Y.S.2d 61, 341 N.E.2d 569
    (1975).....................................................................................................................................16

*Commonwealth v. Warren*, 475 Mass. 530 (2016)......................................................................23

*Dalbec v. Gentleman's Companion, Inc.*, 828 F.2d 921 (2d Cir. 1987) ......................................16

*Desmond v. News & Observer Publ'g Co.*, 846 SE2d 647 (NC 2020)........................................16

*Dickert v. Massa*, 2007 NY Misc. LEXIS 9112, 2007 WL 3128234, 2007 NY Slip Op
    33367(U) (Sup Ct, NY County 2007)........................................................................11, 12, 13

*Kamchi v. Weissman*, 125 AD3d 142, 1 NYS3d 169 (2d Dept 2014) ........................................11

*Kotowski v. Hadley*, 38 AD3d 499, 833 NYS2d 103 (2007).......................................................11

*Liberman v. Gelstein*, 80 NY2d 429 (1992) ...............................................................................13

*Luper v. Black Dispatch Publishing Co.*, 1983 OK Civ. App 54 ...............................................16

*Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 110 S. Ct. 2695, 111 L. Ed. 2d 1 (1990).............20

*People v. Gray*, 278 A.2d 151 (Appellate Division, 2000)..........................................................8

*People v. Horton*, 413 Ill Dec 497, 78 NE3d 489, 2017 IL App (1st) 142019, (2017) .............23

*Recant v. New York Presbyt, Hosp.*, 25 Misc. 3d 1219[A], 901 N.Y.S.2d 910, 2009 NY Slip
    Op 52195[U], (Sup Ct, NY County 2009) ..............................................................................11

*Redd v. City of Oklahoma*, 2013 US Dist. Ct Lexis 181258........................................................8

*Santana v. Artus*, 2009 US Dist. LEXIS 126828 (SDNY 2009) ..................................................8

*Shaw v. Club Mgrs. Assn. of Am., Inc.*, 84 AD3d 928, 923 NYS2d 127 (2011) .......................11

*Sokol v. Leader*, 74 AD3d 1180, 904 NYS2d 153 (2010) ..........................................................11

*Stega v. NY Downtown Hosp.*, 2014 NY Slip Op 32409[U] (Sup Ct, NY County 2014)11, 12,
    20

*Stern v. Leucadia Nat'l Corp.*, 844 F.2d 997 (2d Cir. 1988) .......................................................12

*Tax Club, Inc. v. Precision Corp. Servs.*, 2011 NY Slip Op 32852(U) (Sup. Ct.) ....................11

*Ward v. Klein*, 10 Misc. 3d 648, 809 N.Y.S.2d 828 (Sup Ct, NY County 2005) ....................11

**Rules**

Rule 12(b)(6) ...............................................................................10, 11, 15, 18, 22, 23

## Procedural History

Plaintiff filed his initial Complaint in this matter on April 22, 2019, alleging injury from Defendants' false claims that he was a felon in multiple states and had committed thefts at 17 Apple locations.  [Docket Entry 1.]  In response, Defendants filed their first Motion to Dismiss on July 31, 2019.  [DE 33 to 38.]  Defendants claimed that any such assertions, even when objectively false, were subject to a qualified "law enforcement" privilege and denied that this Court had jurisdiction over Plaintiffs' defamation and malicious prosecution claims.

This Court denied Defendants' Motion on February 10, 2020 as to the New York claims, finding that the Complaint's detailed allegations were sufficient to raise an issue of whether the claimed privilege was vitiated by malice or reckless disregard for the truth regarding the false allegation of theft in New York.  [See DE 49.]  The Court dismissed the claims arising in other states based upon lack of personal jurisdiction.  However, in the initial Scheduling Conference, this Court directed that the events in other jurisdictions both before and after the alleged New York events were relevant and probative regarding the Defendants' malice or reckless disregard for the truth or falsity of their multiple claims over 14 months that the Plaintiff was a thief.  [See DE 61.]

As a result of documents produced in discovery and following this Court's grant of leave to amend this matter, Plaintiff filed his Second Amended Complaint on August 27, 2020, adding Detective John Reinhold, the New York Police Department, and the City of New York as parties.  [See DE 85.]  This Court granted leave to file a Second Motion to Dismiss.  [See DE 94 and 96.]

1

Defendants filed their Motion to Dismiss the Second Amended Complaint on October 13, 2020.  [See DE 109 to 114.]  Plaintiff opposes this Motion.  Plaintiff asserts that the detailed Second Amended Complaint, and the favorable inferences drawn therefrom, establish that the Defendants' repeated claims that the Plaintiff committed thefts were based upon objectively unreliable evidence, warranting denial of the Defendants' Motion.

### Statement of Facts

In March 2018, Plaintiff Ousmane Bah was a 17-year-old Black high school student residing in Bronx, NY.  He had no criminal record.  On March 26, 2018, Bah received a temporary New York State learner's permit containing descriptive details (e.g., height 5' 7" and brown eyes) but no photograph.  Most importantly, the document stated conspicuously:   "**THIS TEMPORARY DOCUMENT IS NOT VALID FOR IDENTIFICATION PURPOSES.**"  [SAC ¶ 17.]   *Exhibit 1.*   The permit thereafter went missing, but Bah was unconcerned as he had by then received his official laminated permit. [SAC ¶ 18.]

In April 2018, an individual claiming to be the Plaintiff was detained and arrested at an Apple store in Connecticut in response to an accusation by store employees that the individual had stolen merchandise.  [SAC ¶ 22.]  Defendant Apple "verified" the individual's identification using what appeared to be the Plaintiff's New York State temporary learner's permit.  [SAC ¶ 23.]   The permit, as noted above, stated on its face not to use it for identification purposes, and described Bah as being 5'7" and 17 years old.

The thief (later discovered to be Mamadou Barrie) was 6'1" and appeared significantly older than 17.  [SAC ¶ 25.]

On May 24, 2018, this same individual was apprehended for shoplifting from an Apple store in Paramus, New Jersey.  The thief once again identified himself as Ousmane Bah to the apprehending security guard, Steven Yhap of Defendant SIS. [SAC ¶ 32.]  SIS provided security services at Apple stores and acted as their agent during the investigation and prosecution of the New Jersey, Connecticut, and New York thefts.[1]  SIS also unreasonably used the unreliable and factually contradicted learner's permit to identify the thief as Bah, although, as noted above, the thief's appearance was significantly different than the person described in the permit.  [SAC ¶ 31.] In obviously erroneous reliance upon the permit, Yhap falsely identified the imposter as Bah to the Paramus Police.  Yhap further promised to provide the Paramus Police with the store's security video showing the theft.  [SAC ¶ 34, 37.]

On May 31, 2018, Apple and SIS employees reported to the Boston, Massachusetts police that Boston's Apple store had suffered a theft.  An Apple employee called the Boston Police and advised them that the shoplifter was known to them from a prior theft, and, in reliance upon SIS and Apple's previous misidentifications, gave his name as Ousmane Bah.  [SAC ¶ 43, 44.]

The sole sources of this identification, as mentioned above, were the unreliable ID and SIS and Apple's unreasonable reliance on the thief's false word as to his identity in

---

[1]      As noted below, although the parties have repeatedly claimed (at one point, under oath) that SIS did not provide security services to the Staten Island, New York store and was not in any way involved in investigating the New York theft, SIS agent John Woodruff, on behalf of Apple, provided the NYPD with Bah's name after learning of the investigation.  *See Woodruff email, Exhibit 2.*

prior apprehensions, which the ID's physical description specifically contradicted.   SIS employee John Beswick, on behalf of Apple, filed a police incident report falsely identifying the Boston thief as Ousmane Bah. [SAC ¶ 49.] Beswick, like the SIS personnel before him, also advised Boston Police that Apple and SIS would provide video of Bah committing the theft. [SAC ¶ 53.]

The real Ousmane Bah (the Plaintiff in this action) subsequently received a summons from the Boston Municipal Court charging him with felony theft. He appeared and was arraigned on charges in June 2018. His court-appointed counsel advised the District Attorney in Boston that Bah was not the thief and had never been to Boston. [SAC ¶ 85.] Both the District Attorney and Bah's court-appointed counsel sought copies of the promised security video through, respectively, email request and court subpoena. [SAC ¶ 85.]

However, on September 7, 2018, Apple employee Daniel Maxfield informed the prosecutor that the "video retention for the date in question ha[d] passed" and the video (which, again, showed a thief with no physical similarity to Bah) no longer existed. [SAC ¶ 86.] This spoliation was in breach of the Defendants' legal duty to preserve evidence, as well as SIS' express promise and duty to do so. This video would have conclusively proved that Bah did not commit any of the alleged thefts. [SAC ¶ 86.]

Discovery concerning this issue has disclosed that the Apple employee's statements regarding the video's deletion and Apple's supposed "retention period" **were entirely false.** The video was not past any "retention period," as the Defendants do not have a "retention policy." Video from the date of the Boston theft was in fact retained by

4

Apple, and video of the complained-of theft remained in Defendants' possession.  These falsities are spelled out in the Second Amended Complaint and the Defendants' responses to discovery and this Court's Orders, and are described below:

1.   **There Was No Formal Video "Retention Period" at Apple.**

In response to a letter Motion to Compel supplementation regarding this policy, which Apple and SIS had previously failed to produce, this Court ordered the Defendants on September 21, 2020 to produce documents evidencing or relating to their "retention period" for security videos. [DE 97.]  In response, in October 2020, counsel for both Defendants reported that there was no documented "retention period."[2]  *See counsel's letters, Exhibit 3.  Greg C.'s reference to a "retention period" was therefore at minimum misleading and at worst an outright lie.*

2.   **Apple Still Possessed Video from the Boston Store Taken on the Date of the Boston Theft After the Alleged "Retention Period" Had Lapsed.**

On November 15, 2018,[3] Apple, without any background explanation, sent Boston prosecutors a video from the date of the Boston theft.  Although the video was produced in response to the prosecutor's request for the promised video showing the imposter stealing from the Boston store, this produced video did not show the imposter, but one of his accomplices.  **Apple, however, failed to note that discrepancy or explain that the video showed a different person**.  [SAC ¶ 87.] Production of this video in response to the Boston subpoena and prosecutor's request was inherently misleading and confusing.

---

[2]      It would be unreasonable to infer that large corporations like Apple and SIS had an "informal" retention period that was not documented and would also go against industry custom.
[3]      John Woodruff's email to the NYPD was also on November 15, 2018.

This, following a statement that video of the Boston theft had been routinely discarded, should lead this Court to infer that Apple's representations about video evidence demonstrated a reckless indifference to truth about critical, and exculpatory, evidence concerning crimes they had claimed Bah had committed, as follows:

1. **Contrary to Greg C.'s representation**, Apple had no set policy regarding a "retention period" for security videos;

2. **SIS falsely represented** to the Boston police that it would provide a copy of the Boston video, which it failed to do;

3. Instead of producing video of the complained-of theft to Boston prosecutors, it provided video of a different thief, **without explaining that they were sending evidence of a different crime.**

Despite this lack of clarity and objective evidence that the New Jersey, Connecticut, and Boston thieves were not Ousmane Bah, Apple and SIS' reckless claims continued as additional thefts by the imposter continued. On September 18, 2018, Apple and SIS employees reported to respective police departments that Bah had committed thefts at the Freehold and Cherry Hill Apple stores. [SAC ¶ 75, 77.] These thefts were again committed by the imposter. [SAC ¶ 76, 78, 79.] Both Apple and SIS once again promised these police departments that they would produce the Defendants' security video showing the thefts. [SAC ¶ 80.] However, as with Boston, an Apple representative later advised these departments that the video had been deleted as past a purported "retention period."[4] Again, as noted above, these statements were false, as neither Apple

---

[4] The late production of the Boston video calls these claims into question, as we only have the Defendants' word that they did not exist.

nor SIS have such a formal retention policy.  The Defendants did not provide any imaging or video of these thefts to the Boston, Freehold, or Cherry Hill police.

On October 22, 2018, Apple employees reported to the New York Police Department ("NYPD") that the Apple store in Staten Island had suffered a theft.  [SAC ¶ 100.]  At the time the theft was reported, Apple's Store Manager told a patrol officer that the individual was "known to" Apple's Menlo Park, NJ store.  Unlike the prior events, this time Apple immediately produced a security video which, as noted, showed a different individual than Ousmane Bah committing the thefts.[5]

The NYPD, through Detective John Reinhold, issued a METRORCA[6] alert on November 8, 2018 with the felon's image from the provided video.  [SAC ¶ 102.]   In November 2018, Detective Reinhold submitted a facial recognition request to the NYPD's FIS Department using the photo of the Staten Island thief.  [SAC ¶ 106.]   The FIS search responded with two possible names: Mamadou Barrie[7] and Ousmane Bah.  [SAC¶ 107.]

On November 15, 2018, SIS employee John Woodruff, using the email address provided by the METRORCA alert, emailed Detective Reinhold and advised him that the Staten Island thief was "known to us [SIS and Apple]" as Ousmane Bah[8], and further

---

[5]     This Court should infer from this prompt production, after deletion or omission of several previous videos, as evidence of the Defendants' knowledge that their prior "neglect" constituted spoliation of exculpatory evidence.

[6]     "ORCA," upon information and belief, is an acronym for "Organized Retail Crime Association," a private business group which also encourages law enforcement participation and is intended to network resources to locate and arrest shoplifters.

[7]     Barrie had already been detained by the NYPD during a traffic stop for impersonating the Plaintiff, and the FIS' imaging was obtained from that arrest for impersonation.

[8]     November 15, 2018 is the same day that Apple produced the purported video from the Boston theft to the Boston ADA, Christopher Boutin.

claimed that Bah had "been hitting multiple Apple stores and was showing no sign of stopping." [SAC ¶ 103.] *A copy of this email is attached to this Opposition as Exhibit "2" and was attached to the Complaint.* Woodruff failed to advise Reinhold that Bah had denied these claims in Boston; that the identification was based upon an unreliable and objectively suspect ID; or that Woodruff was uncertain regarding this identification. Furthermore, Woodruff did not provide Reinhold with a copy of the permit used to identify the thief as Ousmane Bah, which would have alerted Reinhold that the identification was based only on a learner's permit without a photograph stating that it should not be used for identification purposes.

Relying upon Woodruff's false identification of the thief as Bah, Reinhold ignored New York's ambiguous and conflicting evidence of the thief's identity. Reinhold disregarded the NYPD's facial recognition department's alternate identification of the thief depicted in Apple's Staten Island store video as Mamadou Barrie, which had been verified by a New York police officer during a traffic stop. Instead, relying upon Woodruff's authoritative statement, Reinhold instead sought an arrest warrant in the name proffered by SIS, Ousmane Bah.[9] [SAC ¶ 111, 113.]

On November 29, 2018, multiple New York City police officers appeared at Bah's home at 4 AM to enforce Reinhold's warrant and arrest Bah, humiliating him by handcuffing him in front of his family. [SAC ¶ 118, 120.] Multiple NYPD officers put

---

[9]      Reinhold and the arresting officers' joint contribution to Plaintiff's injury as a tortfeasor and violator of Bah's civil rights, initiated by Apple and SIS' reckless misidentification of the Plaintiff, is not an unforeseen supervening cause that would in some fashion absolve Apple and SIS for their injury of the Plaintiff. *See, e.g., Redd v. City of Oklahoma,* 2013 US Dist. Ct Lexis 181258; *People v. Gray,* 278 A.2d 151-152 (Appellate Division, 2000); *Santana v. Artus,* 2009 US Dist. LEXIS 126828, at *72 (SDNY 2009). Nor does the Paramus Police Department's disregard for their own identification standards provide legal justification for the Defendants' reckless conduct.

Bah into a patrol car and brought him in cuffs to Detective Reinhold.  The Officers took Bah from his home in the Bronx all the way to Staten Island to meet Detective Reinhold in person.  Reinhold observed the obvious inconsistency between Bah's appearance and the photo of the Staten Island thief and released Bah.  [SAC ¶ 126.]

Defendant SIS is a sophisticated security company whose own website boasts of its centralized "Global Security Operations Center" (GSOC), an internal information clearinghouse and exchange.  [SAC ¶ 137.]  GSOC possessed records of all the alleged Apple thefts, including pictures and physical descriptions of the thief, as well as copies of the unreliable paper ID contradicting that description.  Despite the availability of centralized information, including that of Bah's now documented false arrest in New York, SIS continued to prosecute actions against the Plaintiff in New Jersey and Boston.

As noted, four days later, the imposter struck again, this time in Holyoke, MA. Even though the Defendants now likely possessed uncontroverted evidence that the imposter was not, in fact, the Plaintiff, SIS once again advised the Holyoke police department that the thief was Bah.  [SAC ¶ 136.]

On December 12, 2018, SIS loss prevention specialist Rakia Morgan appeared in New Jersey State District Court in Cherry Hill, NJ to continue pressing criminal charges from the thefts in Cherry Hill against Ousmane Bah despite SIS's by now actual knowledge that the charges were unreliable and false.  [SAC ¶147.]  However, when Morgan appeared in court, *yet another individual* appeared in response to the summons. This individual's identity was verified by photo identification as a different  Ousmane Bah, this one a resident of Willingboro, NJ [SAC ¶ 148], and not the Cherry Hill thief.

Rather than seeking a new warrant concerning Bah, the Cherry Hill police, without objection from Morgan or SIS, dismissed the charges against Bah in Cherry Hill.  [SAC ¶148.]

Even after Morgan advised SIS and its GSOC that the Cherry Hill complaint against Ousmane Bah was dismissed; and even after the New York case against Bah was dismissed, SIS, on behalf of Apple, continued its efforts to prosecute the Plaintiff in New Jersey and did not actively seek dismissal of these actions or make any effort to correct their misidentifications. [SAC ¶ 151.]

These false representations continued even after this litigation commenced – this time, in sworn pleadings filed with this Court.  In July 2019, only months after Woodruff's false accusation of the Plaintiff, SIS presented this Court with an affidavit from Thomas Stevens, an SIS Vice President in charge of SIS' retail theft loss prevention program.  [DE 34-5.] Stevens swore that "SIS did not identify Ousmane Bah to law enforcement in New York State," and that SIS had not been involved in the investigation of the New York thefts.  *Id.  See Exhibit 4, attached.*  However, as documented by the email from Woodruff to the New York Police Department which prompted Bah's New York arrest, as noted above, this assertion was unquestionably false.  [SAC ¶ 103.]

**Argument**

## I.    Allegations of Malice or Recklessness in a Complaint are Sufficient to Defeat a Motion to Dismiss Based Upon Qualified Law Enforcement Privilege

Similar to Rule 12(b)(6), under New York law, "[s]ince . . . . the burden does not shift to the nonmoving party on a motion made pursuant to CPLR 3211 (a) (7), a plaintiff has no obligation to show evidentiary facts to support [his or her] allegations of malice

on a motion to dismiss …" (*Shaw v. Club Mgrs. Assn. of Am., Inc.*, 84 AD3d 928, 931, 923 NYS2d 127 (2011) [internal quotation marks omitted]; *see Sokol v. Leader*, 74 AD3d at 1182; *Kotowski v. Hadley*, 38 AD3d 499, 500-501, 833 NYS2d 103 (2007); *see also Kamchi v. Weissman*, 125 AD3d 142, 159 (2d Dept 2014)).[10]  To the contrary, a Motion to Dismiss a defamation action based upon an assertion of privilege must be denied so long as the Plaintiff alleges malice or reckless disregard for the truth by the alleged defamer.  *Stega v. NY Downtown Hosp.*, 2014 NY Slip Op 32409[U], *18-20 (Sup Ct, NY County 2014).

The *Stega* Court observed, "[O]n a motion to dismiss a plaintiff **is not obligated to show evidentiary facts to support her allegations of malice[11]** … '[a] claim of qualified privilege is an affirmative defense to be raised in defendants' answer and 'does not lend itself to a preanswer motion to dismiss pursuant to CPLR 3211 (a).'" *Id.* at *18-20 (*emphasis added) and cases cited therein.  ...* "**[T]he question of qualified privilege is premature on a motion to dismiss.**" *Id., citing See Tax Club, Inc. v. Precision Corp. Servs.*[12]  The Court continued:

> [T]he recognized procedure is to plead the privilege as an affirmative
> defense and thereafter move for summary judgment on that defense,

---

[10]    The federal standard under Rule 12(b)(6) is no different than in New York.

[11]    Omitted citations:  *Pezhman v. City of New York*, 29 AD3d 164, 169, 812 N.Y.S.2d 14 (1st Dept 2006) (internal citations omitted); *see Weiss v. Lowenberg*, 95 AD3d 405, 406, 944 N.Y.S.2d 27 (1st Dept 2012); *Shaw v. Club Mgrs. Assn. of Am., Inc.*, 84 AD3d 928, 930-931, 923 N.Y.S.2d 127 (2d Dept 2011); *Sokol v. Leader*, 74 AD3d 1180, 1182, 904 N.Y.S.2d 153 (2d Dept 2010); *Kotowski v. Hadley*, 38 AD3d 499, 500, 833 N.Y.S.2d 103 (2d Dept 2007).

[12]    Omitted citations: *See Tax Club, Inc. v. Precision Corp. Servs.*, 2011 NY Misc. LEXIS 5171, *27, 2011 WL 5295039,  [**20]  2011 NY Slip Op 32852(U) (Sup Ct, NY County 2011); *Recant v. New York Presbyt, Hosp.*, 25 Misc. 3d 1219[A], 901 N.Y.S.2d 910, 2009 NY Slip Op 52195[U], *5 (Sup Ct, NY County 2009); *Dickert v. Massa*, 2007 NY Misc. LEXIS 9112, *9, 2007 WL 3128234, 2007 NY Slip Op 33367(U) (Sup Ct, NY County 2007); *Benedict P. Morelli & Assoc., P.C. v. Cabot*, 11 Misc. 3d 1065[A], 816 N.Y.S.2d 693, 2006 NY Slip Op 50390[U], *2 (Sup Ct, NY County 2006); *see also Ward v. Klein*, 10 Misc. 3d 648, 651-52, 809 N.Y.S.2d 828 (Sup Ct, NY County 2005) (*applying same to affirmative defense of truth*).

supporting the motion with competent evidence. **The rationale for this rule is that a defendant raising this defense should not be permitted to "short-circuit that procedure" and improperly place the burden on plaintiff of anticipating their affirmative defense prior to joinder of issue.** *Stega, supra at 20, internal citations omitted.*

The standard of review concerning dismissal of defamation cases is identical is in this circuit.  As the Second Circuit Court of Appeals noted in *Boyd v. Nationwide Mutual Ins. Co.*, 208 F.3d 406 (2d Cir. 2000), "Rule 9(b) of the Federal Rules of Civil Procedure **only requires a plaintiff to generally aver malice** as to a defendant's state of mind. *See Stern v. Leucadia Nat'l Corp.*, 844 F.2d 997, 1004 (2d Cir. 1988)" *(emphasis added).*

## II.     Plaintiff has Adequately Pled a Plausible Basis for His Claims of Slander and Libel, as well as Malicious Prosecution

### A.     Plaintiff's Prima Facie Claim of False Accusation is Undisputed

Plaintiff's Complaint, on its face, satisfies the pleading requirements under New York law.  The Complaint repeatedly claims that the Defendants acted with malice, or reckless disregard for the truth or falsity of their allegations, in the New York theft and subsequent wrongful arrest, which would vitiate the claimed qualified privilege both for their otherwise defamatory acts and wrongful prosecution of the Plaintiff.  At this (still) early stage in proceedings, this Court should not indulge the Defendants in their second attempt to "short-circuit procedure" and require the Plaintiff to prove his case in his initial pleading.  *See Dickert*, 2007 NY Misc LEXIS 9112, at 9, *quoting Garcia*, 17 AD3d at 201, *quoting Demas*, 291 AD2d at 662.

It is undisputed that the Defendants falsely claimed that the Plaintiff committed theft in Staten Island in 2018, and in 16 other instances in four other states over a 14-

month period from April 2018 through August 2019.  Such claims, both verbal and in print, are defamation *per se*, and would, absent the affirmative defenses pleaded by the Defendants, warrant the denial of Defendants' motion, even absent specific proof of damages.  *Liberman v. Gelstein,* 80 NY2d 429, 435 (1992).

In the Second Amended Complaint, as with the prior versions of his Complaint, Plaintiff affirmatively, emphatically, and repeatedly alleged that the Defendants' actions were done with actual malice or were so reckless as to be tantamount to malice.  *See Dickert*, 2007 NY Misc LEXIS 9112, at 9, *quoting Garcia*, 17 AD3d at 201, *quoting Demas*, 291 AD2d at 662.  [*SAC ¶ 24, 28, 36, 40, 51, 56, 76, 84, 91, 93, 99, 104, 117, 133, 136, 137, 141, 147, 149, 151, 171, 173.*]  Under the law established in this Circuit and in New York concerning these torts, the Plaintiff has satisfied the requisite pleading standard simply by alleging malice or such recklessness, and the Motion should therefore be denied on its face.  *See Sierra, supra.*

Plaintiff has also stated a facially valid claim for malicious prosecution. Woodruff's active influencing of Reinhold's investigation and false confirmation as a thief, as alleged above, tipped the investigative balance between the falsely charged "Ousmane Bah" and the actual thief.  As the Court noted in *Lipski v. County of Nassau*, 32 A.3d 997(2006), in order for a civilian defendant to be considered to have initiated the criminal proceeding, "it must be shown that defendant played an active role in the prosecution, such as giving advice and encouragement or importuning the authorities to act." *Lipski, supra at and cases cited.*   "This could include providing authorities with evidence they know to be false or which unduly influenced authorities, **particularly**

**when the state actor does not subsequently exercise independent judgment**." *Anilao v. Spota,* 340 F Supp 3d 224, 254 (EDNY 2018), *citing Palmer v. Monroe Cty. Deputy Sheriff*, No. 00-CV-6370, 2004 U.S. Dist. LEXIS 8023, 2004 WL 941784 at *8 (W.D.N.Y. Apr. 29, 2004) (*emphasis added*).  Reinhold's discarding of the conflicting evidence of the thief's identity from New York's FIS system demonstrates the lack of "independent judgment" which should lead this Court to allow this case to proceed through discovering.

Further,  even if Woodruff's simple "aiming" of Reinhold at the Plaintiff were an insufficient basis for inspiring Reinhold's action, his emphasis on the thief "hitting multiple Apple stores with no sign of stopping" should be sufficient to show SIS and Apple's "active role" in seeking Bah's arrest.  **Similarly, Woodruff's failure to alert the NYPD** that the identification was based on a facially unreliable ID card constitutes the kind of "withholding of evidence" justifying a malicious prosecution claim.  *See Boose v. Rochester*, 71 A.2d 59, 69 (1979); *Viza v. Greece*, 94 A.2d 965, 966 (1983).

This Court should also infer that the Defendants exercised more influence on the NYPD than just a single email from the NYPD's extreme tactics of sending three uniformed officers to his home at 4 am.  At time of filing, Plaintiff's information has been limited to publicly available facts and Apple and Bah's internal documentation, and we have no sworn testimony or interrogatory answers about contacts between the NYPD and the Defendants' agents which may not exist in document form, such as telephone calls.  Drawing favorable inferences to the Plaintiff, this Court should allow this matter to proceed to determine what else may have prompted a seasoned New York detective

14

to mobilize the kind of force ordinarily deployed to apprehend a murder suspect to arrest a teenage shoplifter.

III.   **The Facts Alleged by Plaintiff Far Exceed the Pleading Standard and State Detailed and Plausible Claims of Malice through Reckless Disregard for the Truth of Seventeen Different Criminal Charges Levied Against the Plaintiff, Including Specifically Those in New York**

   A.   **The Defendants Cannot Obtain Dismissal Through Naked Claims of Good Faith, or Denial of Malice or Recklessness**

Defendants counter that the Plaintiff must provide enough facts in their allegations to satisfy this Court that their claim of recklessness or malice is "plausible." As noted above, this argument is unsupported in law, given that privilege is an affirmative defense.  Ironically, the Defendants would reverse the standard of Rule 12(b)(6), and while simultaneously demanding that the Plaintiff prove malice or reckless disregard through specific facts, and would ask the Court to take on faith their implicit claim that their own actions were taken in good faith, as required by the qualified privilege.

However, Defendants' absence of malice cannot be inferred either from the circumstances or from their self-interested claims that they did not act maliciously but in good faith.  As the United States Supreme Court has noted:

> The defendant in a defamation action … cannot, however, automatically insure a favorable verdict by testifying that he published with a belief that the statements were true. The finder of fact must determine whether the publication was indeed made in good faith. … **recklessness may be found where there are obvious reasons to doubt the veracity of the informant or the accuracy of his reports**.  *St. Amant v. Thompson*, 390 US 727, 732 (1968) (*emphasis added*).

A defaming party may not avoid liability when it chooses to remain in ignorance through "purposeful avoidance" of contradictory facts.  *Desmond v. News & Observer Publ'g Co.*, 846 SE2d 647, 661-662 (NC 2020), *citing St. Amant, supra* at 733 (1968).  *See also Luper v. Black Dispatch Publishing Co.*, 1983 OK Civ. App 54 (claim of privilege outweighed by objective evidence of reckless disregard in reliance on a biased source). A suing party may vitiate privilege when a false comment was reported in a "grossly irresponsible manner without due consideration for the standards of information gathering and dissemination ordinarily followed by responsible parties." *Chaiken v. VV Publ. Corp.*, 907 F Supp 689, 696 (SDNY 1995), *citing* **Chapadeau v. Utica Observer-Dispatch, Inc.**, 38 N.Y.2d 196, 199 379 N.Y.S.2d 61, 341 N.E.2d 569 (1975).

A wide variety of factors may be used to determine if a false statement was presented without appropriate inquiry.   "[T]hese factors may include: whether sound [journalistic][13] practices were followed in preparing the defamatory article. . . whether normal procedures were followed. . . whether there was any reason to doubt the accuracy of the source relied upon so as to produce a duty to make further inquiry to verify the information. . . and whether the truth was easily accessible. . ." *Chaiken v. VV Publ. Corp., supra, citing Dalbec v. Gentleman's Companion, Inc.*, 828 F.2d 921, 924-25 (2d Cir. 1987)**.**

**B.     The Allegations in Plaintiff's Second Amended Complaint Provide Substantial Evidence Defendants Were Reckless in Seeking Prosecution of Bah Based Upon Inadequate and Unreliable Identification**

---

[13]     In this case, read "investigative" for "journalistic."  The *New York Times v. Sullivan* standard is used identically both for journalists defaming public figures and in the qualified law enforcement privilege.

**1.      *The Defendants' Identification of the Thief as Bah Required Them to Ignore or Reject Contradictory Evidence***

The Plaintiff's Complaint is far from conclusory and demonstrates the repeated false accusations of Bah in the presence of significant contradictory evidence.  As noted, the Defendants relied upon a stolen ID without a photograph, **which on its face stated not to use it for identification purposes**.  That warning, and the dramatic inconsistency between the ID's description and the imposter, was an "obvious reason to doubt the veracity of the informant" (here, Mamadou Barrie). Indeed, a 6" difference in height between documented identification and an observed criminal's height has been considered a basis for a jury's finding of reasonable doubt, and such questions are generally submitted to a jury's deliberation rather than dealt with summarily before trial. *See People v. Mills*, 20 AD3d 779, 781 (NY, 3d Dept 2005); *State v. Spinale,* 156 N.H. 456 (2007); *People v. Byas*, 117 Ill. App.3d 979, 985-986 (1983).

Indeed, the US Supreme Court has specifically commented on the factors a Court will use to assess the accuracy of a physical identification.  "The factors to be considered in evaluating the likelihood of misidentification include the opportunity of the witness to view the criminal at the time of the crime,  the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation."  *Neil v Biggers,* 409 US 188, 199-200 (1972).   Unlike  other cases where witnesses have had scant opportunity to evaluate the distinction between documented evidence of appearance and a witness' actual dimensions during the commission of an offense, in New Jersey SIS had the perpetrator in custody for a significant interval

17

immediately after the theft in a controlled setting with full opportunity to assess and document his dimensions. Yhap's report specifically listed the perpetrator as being 6'1" in height when the only documented measurement in their possession, the learner's permit, listed his height as 5'7", which means SIS (likely, the detaining agent Yhap) actually took the time to objectively assess his height.

Combined with Barrie's obvious motive in dodging criminal responsibility, the Defendants' choice to disregard the ID's limitations and contradictory evidence regarding the bearer's appearance rendered SIS and Apple's identification of the thief as Bah inherently and objectively unreliable, and therefore an act which would or should have caused SIS and Apple to entertain serious doubts that it was correct. No reasonable investigator would simply rely on a thief's word of his identity, especially in an era of rampant identity theft, and especially when the thief initially lied when arrested (unsurprising in a thief caught red-handed). Given that *all* of the Defendants' subsequent misidentifications of the thief as Bah stem from this essential, evident "error," all of the subsequent prosecutions, including specifically Woodruff's identification of the thief in Staten Island at bar here, stem from this single reckless act, repeated 15 times thereafter. Dismissal in this context before discovery is fully fleshed out, and the actors' state of mind established through testimony a jury can weigh, is not countenanced under Rule 12(b)(6).

2.    *The Defendants' Failure to Produce Exculpatory Video Is Evidence of Bad Faith*

The Complaint's allegations of the many broken promises and false statements made by Defendants during their pursuit of Bah to police, courts, and even this Court in the course of this litigation, call both Defendants' motives and their relationship with the

truth into substantial question. This Court should infer from these misleading statements that Apple and SIS were conscious of their error at an early stage and were aware that they had deliberately ignored conflicting facts about the imposter's identification.  *See Chapadeau, supra.*

Destruction, concealment, or simply negligent failure to preserve material evidence leads to the inference that the evidence, if produced, would work against the possessor's interests.[14]  Defendants' failure to produce and lies regarding the video evidence acquitting the "real" Ousmane Bah from their false claims should lead to that negative inference.  Similarly, Defendants' failure to preserve and deletion of exculpatory video which would have rebutted their identification of Bah in New Jersey, after repeatedly promising that it would be preserved and provided, also calls Defendants' motive and truthfulness into question.

### 3.   *Woodruff's Claim that Bah Was "Known to Us" as a Thief Was Defamatory and Requires an Inference That He Entertained Serious Doubts Regarding the Identification*

Defendants' Motions attempt to claim that their accusation in New York was not false because John Woodruff's[15] identification was not outright, but simply of a man "known to us" as Ousmane Bah.  [DE 113 at 14.]  The "slight hedging" of Woodruff's

---

[14]     "A party has an obligation to preserve evidence when the party is on notice 'that the evidence is relevant to litigation or when a party should have known that the evidence may be relevant to future litigation." … "**This is necessary to 'protect[] the innocent litigant from the destruction of evidence by a spoliator who would otherwise assert an "empty head, pure heart" defense.'"** *Orbit One*, 271 F.R.D. at 438; *see also Alexander Interactive, Inc. v Adorama, Inc.*, 2014 US Dist. LEXIS 84604, at *12-13 [(Castel, J., June 17, 2014]) (*emphasis added*).

[15]     Given that SIS has a contractual obligation to indemnify Apple concerning Plaintiff's claims; that SIS agents swore out warrants against Bah on Apple's behalf; and that Woodruff contacted a New York detective even while Woodruff was assigned only to New Jersey to secure prosecution of the New York

allegation does not make it any *less* defamatory or a statement of mere opinion. "[T]he United States Supreme Court has cautioned against 'an artificial dichotomy between "opinion" and fact.' *Stega*, *supra* at 20. "[T]he statement, 'In my opinion Jones is a liar,' can cause as much damage to reputation as the statement, 'Jones is a liar.'' *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 18-19, 110 S. Ct. 2695, 111 L. Ed. 2d 1 (1990). Woodruff's "known to us" is no different than "In my opinion, Ousmane Bah is a thief."

Ironically, this use of qualified language actually should lead this Court to infer that Woodruff, SIS, and Apple harbored unexpressed "serious doubts" and still proceed against the Plaintiff. This "hedged" language warrants further inquiry in discovery and eventually the jury's determination as to whether Woodruff's attempted to create distance regarding the identification because of such doubts, and to judge Woodruff's credibility in testifying about that intent.

The remainder of the email to Detective Reinhold nevertheless showed Woodruff's desire that Bah be arrested for the Staten Island theft. Woodruff continued,

> "He has been hitting Apple stores for quite a few months now and doesn't seem to be stopping… I can give you whatever I have on his cases and losses we have experienced if you have not already gotten it. Looks like he hits from Connecticut to South Jersey."

Notably, Woodruff never sent Detective Reinhold the temporary Learner's Permit relied upon by SIS or even advised Reinhold that this was the method by which the thief was identified. The permit would have at least warned the New York Police Department that SIS had used identity verification which on its face was unreliable and not to be

---

arrest, it is implausible to suggest that for purpose of prosecuting the subject shoplifting incidents, SIS was **not** Apple's agent.

depended upon.  These doubts should also have been reinforced in SIS' own investigative materials, which revealed that its agents were aware of the height disparity between the ID and the arrested thief.

**C.    Defendants' Continued Pursuit of the Plaintiff and Misrepresentations Despite Their Knowledge of His Innocence Is Evidence of Recklessness and Malice**

Defendants' continued pursuit of the Plaintiff after the New York false arrest and release further implicates their motives.  SIS' central depository of information in its "Global Security Operations Center" (GSOC), provided SIS agents with actual or constructive notice that Bah was not the imposter after New York.  Subsequent to the arrest, Defendants nevertheless accused Bah of a theft committed by an imposter in Holyoke; sent SIS operatives to a court in New Jersey; subsequently withheld evidence of Bah's innocence from in Boston for three additional months; and sent SIS investigators to Court to prosecute Bah for nine additional months. [SAC ¶ 155.]  This refusal to consider Bah's innocence in other jurisdictions is relevant to the Defendants' recklessness in pursuit of Bah before, including the New York thefts.

SIS Vice President Stevens' false affidavit filed with this Court claiming that SIS had not revealed Bah's identity to New York police, specifically pled in the Second Amended Complaint, should seal this Court's decision.   Given the availability of Woodruff's identification of Bah in New York to Stevens through SIS' GSOC, he cannot protest innocent ignorance.  As noted in the *Boyd* case, cited in Plaintiff's first opposition to dismissal,

> At this nascent stage of the litigation, **plaintiff's allegation that [Defendant] failed to check its own records, which plaintiff told the**

> **district court he wished to add to his complaint, permits a sufficient inference that [Defendant] abused its qualified privilege.** *Boyd,* 208 F.3d 406, 2000.

As Apple's security agent, SIS' willingness to present this Court with false information contradicted in its own record should lead this Court to infer that when it comes to Mr. Bah, Defendants' claim of "good faith" is suspect, warranting denial of the subject Motion.

## D. Defendants Seek to Pre-Try this Case and Blame Plaintiff for Being the Victim of Repeated False Accusations

The Defendants seek to have this Court essentially pre-try this case entirely on matters extraneous to the Complaint at its procedural inception concerning the Plaintiff's relationship with the actual thief, Mamadou Barrie.  Defendants' argue that Plaintiff's suspicions concerning Barrie precludes his suit against them or demonstrates that his claims are in "bad faith."  Rule 12(b)(6) precludes such contradictory facts extraneous to a Complaint in an attempt to dispose of a case at its outset.  For purposes of this Motion, this Court should disregard these allegations.

Defendants suggest that it is the affirmative duty of Mr. Bah, an illegally arrested and detained Black 18-year-old Muslim immigrant taken from his home in handcuffs by police at 4 AM, based upon false accusations from Apple and SIS in several states, to ignore his feelings of distrust of both the police and the Defendants who falsely accused him, and actively participate in an investigation of an acquaintance, with the expectation that he himself would not be harmed in the process – all while Apple and SIS, behind the scenes, were busy hiding or discarding evidence which would prove his innocence.

This position has no place in the real world, as appellate courts across this country now acknowledge.   "[I]n an environment where minorities have legitimate suspicion of how they might be treated by police, they will be more likely to try to avoid police contact." *People v. Horton*, 413 Ill Dec 497, 512, 78 NE3d 489, 504, 2017 IL App (1st) 14 2019, ¶ 76 (2017); *see Commonwealth v. Warren*, 475 Mass. 530 (2016) (a Black man's distrust of arresting officers and decision to flee rather than be questioned did not constitute evidence of guilt or probable cause for arrest).   Apple and SIS' continued malicious prosecution against the Plaintiff – long after they were aware of his innocence – tends to justify Mr. Bah's distrust as well.

In any event, such disputes of fact and inference are not proper grounds for dismissal.   The question of Plaintiff's own reasonableness, to the extent it can even be raised in this context, is one for the jury's eventual determination.

## Conclusion

In conclusion, Plaintiff's detailed Amended Complaint, with its repeated allegations of reckless disregard of conflicting facts in Defendants' own record which should, and likely did, call their identification of Bah as a felon into serious doubt, has provided substantiation for his claims of defamation and malicious prosecution in New York. Defendants' constant attempts to try this case in the pleadings and introduce extraneous contradictory facts outside of the Complaint neither provide a substantive basis for dismissal nor should be even considered in the context of a Motion filed under Rule 12(b)(6), and are simply a second attempt to harass the Plaintiff and bias this Court before any evidence has been adduced. Defendants have failed to meet their burden of

23

demonstrating Plaintiff's claims have no legal basis, and their Motions to Dismiss should be DENIED.

Dated: November 13, 2020                                    Respectfully submitted,

Subhan Tariq, Esq.                          Daniel Malis, Esq., *Pro Hac Vice*
Attorney I.D.# ST9597                        BBO # 315770
The Tariq Law Firm, PLLC                     MALIS|LAW
**Attorney for Plaintiff**                   **Attorney for Plaintiff**
34-18 Northern Blvd – Suite 2-25             30 2nd Street
Long Island City, NY 11101                   Cambridge, MA 02141
Telephone: (718) 674-1245                    (617) 491-1099
Facsimile: (516) 453-0490                    (617) 491-1022
Email: subhan@tariqlaw.com                   daniel.malis@malislaw.com

24