UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

OUSMANE BAH,
    Plaintiff

                              THIRD AMENDED
                              COMPLAINT

    v.

                              Docket No. 19CV3539

APPLE INC.,
SECURITY INDUSTRY
SPECIALISTS, INC. ,
JOHN WOODRUFF, Individually and as
An employee of SECURITY INDUSTRY
SPECIALISTS, INC.,
DETECTIVE JOHN REINHOLD, in his individual capacity as
a detective for the NEW YORK POLICE DEPARTMENT,
DETECTIVE PAGAN, SHIELD NO. 1731, in his individual capacity as
a detective for the NEW YORK POLICE DEPARTMENT,
DETECTIVE WHITE, SHIELD NO. 5993, in his individual capacity as
a detective for the NEW YORK POLICE DEPARTMENT,
DETECTIVE GRANATA, SHIELD NO. 195, in his individual capacity as
a detective for the NEW YORK POLICE DEPARTMENT,
DETECTIVE PATTELLI, SHIELD NO. 512, in his individual capacity as
a detective for the NEW YORK POLICE DEPARTMENT, and
CITY OF NEW YORK, by and through
THE NEW YORK POLICE DEPARTMENT,
        Defendants.

---

## Preliminary Statement

    This Complaint arises from repeated felonious accusations against the Plaintiff for thefts across the eastern seaboard that were actually committed by one or more impostors in Pennsylvania, New Jersey, New York, Connecticut, and Massachusetts between April 2018 and February 2019. This instant matter arises out of the New York allegations.

    This Complaint alleges that the Defendants' investigative practices leading to these false allegations were inadequate and provided no reasonable basis for these accusations, which were made in reckless disregard for their truth or falsity. The private Defendant Apple and SIS' accusations were inherently unreasonable, as they were based on information which was, on its face, unreliable. The private Defendants' repeated accusations claiming that the Plaintiff as a thief across multiple jurisdictions

created a chain reaction, resulting in repeated false accusations as the actual impostor continued to shoplift. The Defendants' collective misuse of facial recognition technology (hereinafter "FRT") is even more alarming, considering such a method of identification is incapable of accurately assessing Black individuals like the Plaintiff, especially when the information chain linking the Plaintiff's name to an image was wrong from the start.

Apple and SIS' reckless and malicious behavior is further evidenced by their pursuing wrongful criminal charges against the Plaintiff while simultaneously failing to preserve video evidence of the thefts and the impostor's true identity – evidence that would have conclusively exonerated the Plaintiff.

Plaintiff also contends that the individual employee of Defendant Security Industry Specialists, John Woodruff, acted in conspiracy based upon the errors made in New Jersey to misidentify the Plaintiff to officers of the New York Police Department so as to cause them to disregard conflicting evidence concerning the impostor's identity, including an NYPD facial recognition analysis that returned two different results for the name "Ousmane Bah."

This disregarding of evidence and suspension of professional judgment resulted in Defendant Det. John Reinhold ignoring protocol and conflicting identification information, and instead conclusively identifying the Plaintiff after his suspicions were confirmed by Defendant John Woodruff of SIS. These actions, layered on top of the private Defendants' multiple defamatory acts stemming from the New Jersey identification, resulted in the Plaintiff's false arrest and detention and deprivation of civil rights in New York.

Plaintiff separately seeks damages from Det. John Reinhold for his causing the false arrest and detention of the Plaintiff for the subject thefts in New York without probable cause, as well as from Det. Pagan, Det. White, Det. Granata, and Det. Pattelli, who arrested the Plaintiff and took him into custody even though the image on the arrest warrant did not match the Plaintiff, all under color of state law and in violation of the Plaintiff's civil rights.

Even after the Plaintiff was conclusively identified in New York as being innocent, and even after that information was made known to the corporate defendants, SIS and Apple continued to falsely accuse and seek and continue prosecutions of the Plaintiff in other jurisdictions, which further evidenced their disregard for the truth of their accusations.

The Plaintiff seeks damages in New York for the injuries caused to him by Apple and SIS for his injury to reputation, which included loss of economic opportunity and interference with his attempts to gain permanent US citizenship. In addition, this litigation seeks recovery against Det. John Reinhold and the New York Police Department (hereinafter "NYPD") and its Facial Identification Service division for

ignoring its own protocols, resulting in the Plaintiff's false arrest and detention, as well as for poor training and protocols which led to these harms.

## Parties

1.   Plaintiff is a natural person. He is a 20-year-old Black male residing in New York City.

2.   Defendant Apple Inc. (hereinafter "Apple") is an American multinational corporation with its principal place of business in Cupertino, California.  Apple derives substantial revenue from interstate commerce.

3.   Defendant Security Industry Specialists, Inc. (hereinafter "SIS") is a nationwide corporation with its principal place of business in Culver City, California.  SIS derives substantial revenue from interstate commerce.

4.   Defendant John Woodruff is an individual residing in New Jersey.  At all times relevant to this matter, he was employed by the Defendant, SIS, as a so-called "loss prevention specialist" in one or more Apple stores in New Jersey.  All actions alleged to have been taken by Woodruff were as an agent or servant of Defendant SIS as their employee.

5.   Defendant Det. John Reinhold is a detective with the New York Police Department.  He is being sued in his individual capacity as a New York City police detective.

6.   Defendants Det. Pagan, Det. White, Det. Granata, and Det. Pattelli are detectives with the New York Police Department who arrested and took the Plaintiff, Ousmane Bah, into custody. Det. Pagan, Det. White, Det. Granata, and Det. Pattelli are being sued in their individual capacities as New York City police officers.

7.   The New York Police Department (hereinafter, "NYPD") is a public entity conducting law enforcement in the City of New York, State of New York.  The City of New York is named Defendant for actions taken by the Department pursuant to 42 USC § 1983.

8.   All actions conducted by Det. Reinhold, Det. Pagan, Det. White, Det. Granata, and Det. Pattelli, and the New York Police Department were taken in their official capacities and therefore were under color of state law.

9.   This action arises out of the Defendants' negligent, reckless, and defamatory actions that led to Mr. Bah's arrest and detainment; continual malicious prosecution; deprivation of his civil rights; injuries to his reputation and character; and significant emotional distress. The events at issue occurred in

3

multiple states including New York.  Events in New Jersey, as alleged below, proximately resulted in Plaintiff's false arrest and detainment in New York.

10.    Plaintiff properly brings this suit in federal court on the basis of original and diversity jurisdiction. As to the counts alleging violations of civil rights pursuant to 42 USC § 1983, this Court has original jurisdiction over such claims.  As to the common law claims, this Court has jurisdiction based upon the parties' diversity of citizenship, pursuant to 28 U.S.C. § 1332, District Courts have original jurisdiction over all civil actions in which the amount in controversy exceeds $75,000 and are between citizens of different states.

11.    Defendants' connections in this forum meet the minimum contacts standard, carrying out continuous and systematic activity in the jurisdiction, allowing this Court to exercise general personal jurisdiction. *See International Shoe Co. v. State of Wash.*, 326 U.S. 310, 316 (1945). Defendant Apple has multiple store locations within the jurisdiction, including locations where the complained-of offenses occurred. Upon information and belief, Defendant SIS provides security services in Apple's Massachusetts and New Jersey stores, as well as security support to Apple stores in New York and Connecticut.

12.    Venue is proper in this judicial district under 28 U.S.C. § 1391 because each Defendant conducts business in and can be found in this district, and a substantial part of the events or omissions giving rise to the claims alleged herein occurred in this district.

### General Allegations

13.    At all times relevant to this Complaint, Defendant Apple operated retail stores in King of Prussia, PA; Boston, MA; Trumbull, CT; Greenwich, CT; Paramus, NJ; Freehold, NJ; Cherry Hill, NJ; Millburn, NJ; Short Hills, NJ; Rockaway, NJ; Staten Island, NY; and Holyoke, MA.

14.    Upon information and belief, Defendant SIS, under contractual agreement with Apple, provided security services at all of the Defendants' named stores in New Jersey.

15.    Furthermore, SIS acted as Apple's agent in criminal enforcement and security matters concerning its stores and loss prevention, and provided information concerning the investigation and prosecution of thefts committed in Staten Island, NY.

16.    All actions alleged in this Complaint to have been taken by SIS was as an agent or servant of Defendant Apple.

4

17. On March 26, 2018, Plaintiff obtained a learner's permit for operation of a motor vehicle with the supervision of a licensed driver in New York State. The temporary form issued by the State of New York consists of a printout with Mr. Bah's height, weight, date of birth, and eye color, but no photograph. The interim learner's permit contains a disclaimer in bold capital letters: "**THIS TEMPORARY DOCUMENT IS NOT VALID FOR IDENTIFICATION PURPOSES**." *See learner's permit, Exhibit 1, attached.*

18. At some point prior to May 2018, the Plaintiff's temporary learner's permit went missing. As by that time Mr. Bah had received his permanent copy, which was laminated plastic, not a computer printout, and had his photograph, Mr. Bah paid the absent temporary permit no mind.

### The Montreal Theft and Detention

19. On April 16, 2016, Defendant SIS, acting on behalf of Defendant Apple, apprehended a person whom an SIS security officer claimed stole merchandise from a store in Montreal, Quebec, Canada, and whom they stated was named "Ousmane Bah." That person was subsequently surrendered to the Montreal police and placed under arrest.

20. The Montreal thief was not Plaintiff Ousmane Bah and, other than being Black, did not resemble him.

21. Upon information and belief, Apple's representatives, individually and jointly, retained video or imaging evidence of the alleged thief's stealing of Apple property in Montreal.

### The Connecticut Theft and Detention

22. In Greenwich, Connecticut, in April 2018, Apple caused to be detained an individual it believed to be the Plaintiff, Ousmane Bah, accusing the individual of having stolen merchandise from one of its retail stores.

23. Apple identified the individual as Bah through examination of a printed temporary learner's permit that was likely a copy of Mr. Bah's. This permit stated the user's height, sex, weight, and eye color, but had no photograph of Mr. Bah.

24. Use of nonphotographic identification is an unreliable method of identifying an individual, especially when the ID being used warns against using it for identification purposes. Reliance solely on such form of identification to accuse an individual of a felony, absent other identifying documentation, would be not only negligent, but also reckless.

25.     The Connecticut thief (hereinafter, the "impostor") was not Plaintiff Ousmane Bah and, other than being Black, did not resemble him and did not meet the physical description on the permit.  As an example, the impostor was 6'1" tall; the permit describes Bah as 5'7," a difference of half a foot.

26.     Despite this, Apple and SIS relied upon the learner's permit and the impostor's representations and named him to police as "Ousmane Bah."

27.     Upon information and belief, Apple's employees and agents, individually and jointly, retained some portion of video evidence of the alleged thief stealing Apple property in Connecticut.  Defendants further created a record indicating that the depicted thief was named Ousmane Bah and published this information both to SIS and Apple personnel by varying means.

28.     Apple and/or SIS' identification of Plaintiff Ousmane Bah as the apprehended thief was reckless and negligent, and in breach of both Defendants' duty to refrain from falsely accusing Bah.

29.     Upon information and belief, both Apple and SIS published this information to not only each other but also to third parties.

## The Paramus, New Jersey Theft

30.     On May 24, 2018, Defendant SIS, acting on behalf of Defendant Apple, apprehended a person whom an SIS security officer claimed stole merchandise from a store in Paramus, New Jersey. That person, again the impostor, was subsequently surrendered to the Paramus police and placed under arrest.

31.     As noted above, the imposter, the Paramus thief was not Ousmane Bah and, other than being Black, did not resemble him.  As also noted above, the impostor did not physically resemble the person described in the temporary learner's permit.  He further did not physically resemble the thief named Ousmane Bah detained in Montreal.

32.     Upon information and belief, in the Paramus arrest, Defendants Apple and SIS relied on the impostor's word and the temporary learner's permit for the identification.

33.     Despite the inconsistencies between the Montreal and Paramus images;  despite the instruction on the permit not to use it as a means of identification; and despite the apparent inconsistency between the description in the permit and the impostor, SIS loss prevention specialist Steven Yhap, on behalf of Apple, named the imposter Plaintiff Ousmane Bah to Paramus, NJ police officers.

34. Yhap identified the impostor as Ousmane Bah to the Paramus (NJ) Police Department with the intent that his identification evidence would be relied upon by the officers.

35. Yhap, as early as the Paramus arrest on May 24, 2018, was on actual or constructive notice that the identification of Bah was unreliable. This notice included SIS's records naming a different individual from Montreal as Ousmane Bah; the absence of reliable identification; and the inconsistency between the description on the learner's permit of the Plaintiff and the impostor's own physical characteristics.

36. Although Yhap was aware of these contradictions, he not only chose to ignore them but also *not* to advise the Paramus, NJ police of this contradictory evidence. This failure to advise the police of pertinent information regarding an allegedly unidentified thief is evidence of Yhap and SIS' reckless indifference to the actual identity of the impostor, and to whether or not they had misidentified Ousmane Bah as a thief.

37. Yhap surrendered the impostor to an officer of the Paramus Police Department, where he was taken and questioned by Defendant Det. Paul Siemen. SIS further represented to the Paramus police that the store had retained video evidence of the impostor's theft and would provide it to the Paramus police and/or prosecutors.

38. SIS began linking prior thefts in the region involving the impostor to the Plaintiff. Yhap, on behalf of SIS and Apple, advised police in Millburn, NJ (the jurisdiction including Short Hills) that a theft, committed by the impostor, had occurred on May 5, 2018 at the Short Hills Apple Store. He further (falsely) advised police that the theft had been committed by Plaintiff Ousmane Bah. Yhap advised police that he would provide the police with video showing the theft.

39. SIS, as Apple's agent, began circulating "Be on the Lookout" (hereinafter "BOLO") notices with the impostor's image indicating that "Ousmane Bah," with the impostor's photo, was a "known shoplifter." Upon information and belief, these circulars were sent electronically not only to Apple store employees but also to other parties and police departments.

40. Yhap, Apple, and SIS' allegations that Mr. Bah was a thief and felon in New Jersey were either knowingly false or made with reckless disregard for the truth or falsity of the allegation, and were therefore not subject to any privilege.

### **The Boston Theft**

41. On May 31, 2018, the impostor pocketed a total of twelve individual Apple Pencils (or styluses), each worth $100, from various locations in Apple's store located on Boylston Street in Boston, MA. The thefts occurred over a five- to ten-

minute period before the impostor exited the store, at which time the thefts were discovered by Apple and/or SIS, likely through technological means (see below).

42. After the thief exited the store and Apple and SIS were on notice of the theft, Apple employee "Sheldon," last name unknown, called the Boston Police Department and informed them that a theft had occurred and was recorded on store video.

43. Despite the very brief time between the thefts' discovery and Apple's telephone call, SIS loss prevention analyst John Beswick told the police that Apple (and/or SIS) had positively identified the person who had committed the thefts in Boston as the same person who had committed thefts in Connecticut, and named the person positively as Ousmane Bah.

44. Upon information and belief, John Beswick relied upon the video or photographic documentation Apple and/or SIS had in its records concerning the Connecticut theft, including Apple and/or SIS' false identification of the thief as Ousmane Bah, and also relied upon information from SIS from the New Jersey theft falsely naming the thief as Ousmane Bah.

45. The thief in Boston was the impostor, the same individual who committed the Connecticut and New Jersey thefts.

46. However, as stated previously, the impostor was not named Ousmane Bah and was not the Plaintiff.  Mr. Bah was not in Massachusetts when the thefts occurred and had never visited the state.

47. At the time the Boston thefts occurred, as noted above, both Apple and SIS knew or were constructively aware that its identification of the thief as Bah was unreliable, and that they had by this time identified at least two, and possibly more, different persons as Bah.

48. When John Beswick named the Boston thief as Ousmane Bah, he did not advise Boston police officers that Apple and SIS' (mis)identification of Bah was conflicted or unreliable.

49. Subsequently, on May 31, 2018, John Beswick, on behalf of SIS and as an agent for Apple, filed a police incident report identifying the Boston thief as Plaintiff Ousmane Bah.

50. The police incident report filed by John Beswick falsely accused Ousmane Bah of committing a theft of Apple property.

51. The false identification of Ousmane Bah as the thief in the Apple store came, in part, from a BOLO sent by SIS and/or Apple to the Boston store, directly and

8

proximately resulting in the recklessly false identification of the Connecticut thief and Paramus, NJ thief conducted by John Beswick and Yhap.

52. John Beswick filed the police incident reports accusing Ousmane Bah of the Boston thefts with the intent or expectation of inducing law enforcement to charge Mr. Bah and to cause Mr. Bah to be taken into custody and made subject to prosecution.

53. At the time of the police reports, John Beswick indicated that Apple intended to press charges for the theft against "Ousmane Bah." As with Paramus, NJ, both Apple and SIS advised the Boston Police that they had positively identified the thief from security camera evidence and committed to provide such evidence to the Boston Police.

54. However, this video (as with all of the prior videos) showed an image of the impostor and not of Ousmane Bah. Had the video been preserved and produced, as promised, it would have immediately exonerated Ousmane Bah of the Boston charges, and indeed of all other claims that he had stolen from Apple stores.

55. The accusations in the police report provided by Beswick on behalf of SIS and Apple were without probable cause, as the Defendants had actual or constructive knowledge that its identification of Bah as the thief was unreliable at the time that Beswick signed it, and therefore did not possess trustworthy information sufficient to warrant a prudent person believing that the Plaintiff had committed or was committing an offense.

56. Apple and SIS' accusation of Ousmane Bah as having stolen merchandise from their Boston, MA store was either knowingly false or made in reckless disregard for the truth or falsity of the allegation and was therefore not subject to privilege.

## Face Recognition and Apple

57. Face (or "facial") recognition describes a computer algorithm that compares facial images to determine whether they are the same person.

58. Apple is an innovator in facial recognition technology ("FRT"). Its most advanced cellphones use facial recognition as a means of unlocking its smart phones, so a user need only show his or her face to its screen to unlock the device. Apple calls this feature "Face ID."

59. There is an enormous potential commercial market for the use of FRT in law enforcement and retail security. Law enforcement and retailers hope to use security cameras to record crimes and use FRT to quickly identify the offender based solely upon imaging, using central databases or other collections of images

to connect an offender's photograph to a name with immediacy, so as to allow criminal identification and apprehension in near real-time.

60.     This effort to fight what is known in the industry as "organized retail crime" ("ORC") is aggressively dealt with in retail stores. Upon information and belief, the impostor's picture and information were circulated among retail personnel via several alert-type systems like Crimedex and MetrORCA (both online mappable databases of retail crimes).

61.     Several of Apple's technology competitors have aggressively developed FRT as a product for sale to law enforcement as loss prevention methods or to identify unlawful actors via security cameras at businesses or on streets.

62.     However, FRT is not presently advanced enough to provide consistently reliable positive identifications, much less accurately identify Black individuals like the Plaintiff (as FRT has significant difficulty comparing darker skin tones).

63.     The NYPD also employs FRT to identify criminals. The department conducting such analyses is called the Facial Identification Section ("FIS").

64.     In part because FRT is presently unreliable, the NYPD's FIS Department has strict protocols regarding its use, including that if a search turns up multiple identities for the same facial image, electronic identification should not be re-run because the FIS information would not provide probable cause for arrest.

65.     As FRT is not sufficiently developed to provide positive identification, any current identification relying on this technology would lack probable cause, as it would not be sufficient to warrant a prudent person to believe that the person identified through FRT was the one who had committed or was committing an offense.

66.     In addition to its leadership in FRT, Apple has used technological means to protect its products from store theft and shoplifting. Apple displays its products in stores without locks or tethers as a marketing strategy (because tethering products deters customers from playing or handling with devices and suppresses interest). Since this lack of tethering increases the risk of theft, Apple has created geolocation sensors and software linked to its systems (known as "iBeacon") to detect when a product has left its store without authorization.

67.     Given Apple's use of technology to attempt to deter or prevent store theft; its status as a leader in FRT; and substantial business and law enforcement interest in the use of facial recognition for crime deterrence as well as loss prevention, it seems unlikely that Apple would not adapt its facial recognition product for commercial use (perhaps under a different name than "Face ID") in its stores.

68. As noted above, at the time of the Boston theft, Apple and SIS possessed images of the Connecticut offender from security video and used the images in some fashion to identify Mr. Bah as the thief to Boston Police.

69. As also noted, the identification of Mr. Bah by telephone after the Boston theft, based upon imaging and live evidence gathered in New Jersey and Connecticut, occurred less than 10 minutes after the theft, and an even shorter interval after the thief exited the store.

70. Somehow, during that  brief interval, Apple staff and SIS personnel identified that merchandise had been stolen from their store; traced the missing merchandise to an individual depicted on store video and watched the theft's occurrence; and then connected that individual with a theft a month earlier at a Connecticut Apple store — all while continuing to serve and observe numerous customers in its ordinarily busy Boylston Street store.

71. The speed with which Apple and SIS personnel related the image of the (wrongfully identified) Boston thief to the (wrongfully identified) Connecticut thief, virtually in real time, strongly suggests that Apple, SIS, or both used FRT as an aid in its "positive" identification of the thief as Ousmane Bah.

72. As discussed below, the NYPD represented to Bah or Bah's representatives that Apple or SIS likely used some form of FRT to identify Bah as the thief in New York.

73. Based upon these inferences, Plaintiff, upon information and belief, represents that either Apple and/or SIS utilized FRT as a substantial part of its identification of the Boston thief as Ousmane Bah, based upon its association of Bah's name with the image of the Connecticut thief, who was the same individual as the impostor  in Boston.

74. Apple and/or SIS knew or should have known that FRT was an unreliable basis for identifying a thief from security video, and their use of the technology, if occurring, to identify a thief as Bah from a security video was too unreliable to reasonably claim that Bah had committed a crime, especially as it was also derived from an inaccurate and unreliable association of Bah's name to the video from a temporary learner's permit without a picture.

### Additional New Jersey Thefts

75. On September 18, 2018, the impostor again committed theft at an Apple store, this time in Cherry Hill, NJ.  The theft was reported to the Cherry Hill Police Department by Rakia Morgan, also an SIS employee.

76. At that time, Morgan, on behalf of SIS and Apple, and in reliance upon the reckless misidentification of the impostor as Ousmane Bah by SIS in Paramus NJ,

falsely advised the Cherry Hill Police Department that the individual who committed the Cherry Hill theft was the Plaintiff, Ousmane Bah. Morgan further indicated that she would return to the Cherry Hill Police Department to "sign charges against Bah" and, once again, would provide the police with security video of the thefts.

77.     On September 18, 2018, the impostor committed multiple thefts of merchandise from an Apple store in Freehold, New Jersey. The thief or thieves escaped and were not detained.

78.     Using the false identification that Apple and SIS derived from the Connecticut detention, the Paramus arrest, and/or the Boston theft and using imaging information from one or more of those events, all of which were in Apple and SIS' possession or control at the time, Defendants SIS and Apple again falsely and erroneously identified the impostor as Ousmane Bah, describing him as a "known thief" who committed multiple thefts throughout the Northeast.

79.     At this time, both Defendants were actually or constructively aware that at least two different individuals committing shoplifting had claimed that they were Ousmane Bah, and that SIS and Apple used the learner's permit without a photograph (whose description was at significant variance with that of the thief) to arrive at what it purported was a positive identification.

80.     On or about September 20, 2018, Steven Yhap, an SIS employee, acting on SIS and Apple's behalf, filed a police complaint falsely accusing Ousmane Bah of committing a theft in Freehold, NJ.  Once again, Yhap committed to providing the police with security video showing the theft in progress.

81.     The Freehold theft was committed by the impostor, whom Yhap once again falsely identified as the Plaintiff, Ousmane Bah

82.     Yhap filed the criminal complaint for the Freehold thefts with the intent or expectation of inducing law enforcement to charge Mr. Bah and to cause Mr. Bah to be taken into custody and made subject to prosecution.

83.     The police report filed by Yhap on behalf of SIS and Apple was without probable cause, as the Defendants had actual or constructive knowledge that its identification of Bah as the thief was unreliable at the time that Yhap signed it, and therefore their accusation lacked reasonably trustworthy information sufficient to warrant a prudent man to believe that the plaintiff had committed or was committing an offense.

84.     Apple and SIS' claim to Freehold law enforcement that Mr. Bah had committed the alleged theft was made with reckless disregard of its truth or falsity, and was therefore not subject to privilege.

## Apple's Failure to Produce Exculpatory Video
## in Boston and Other Jurisdictions

85.    In June 2020, Plaintiff Ousmane Bah appeared in Boston Municipal Court and was represented by counsel.  Bah's attorney requested the video evidence from the Boston thefts (committed by the impostor, whom Apple and SIS had named "Ousmane Bah") to demonstrate that Bah did not commit them.  This request was relayed by the Suffolk County (MA) prosecutor to Apple.

86.    Shortly thereafter, Apple advised the prosecutor that the video evidence of the impostor, which would have completely exculpated Ousmane Bah, had been deleted.

87.    Months after these requests, in connection with Plaintiff's charges, an Apple employee forwarded to the prosecutor a video of another individual whom Apple alleged committed the thefts in Boston.  This person was not the impostor, did not resemble the impostor, and did not resemble the Plaintiff.

88.    Apple and/or SIS failed to preserve the video evidence of the impostor's theft and reported that the video of the thefts was "routinely" erased, despite their continued interest in erroneously prosecuting Bah as a thief.

89.    At or around this time, police departments in Paramus, Rockaway, Millburn, and Cherry Hill, NJ, were repeatedly requesting video evidence for the alleged thefts promised by Apple and SIS.

90.    Despite their continued interest in prosecuting the Plaintiff for theft, in each of these cases, Apple failed to produce the sought videos, alleging that they had been routinely deleted.

91.    Each one of these videos would have provided exculpatory evidence showing that Bah did not commit the alleged thefts, which Apple either intentionally or recklessly allowed to be destroyed or erased.

## An Additional Theft Charge in Trumbull, CT

92.    On October 28, 2018, Apple employee Joe Carpenter called the Trumbull, CT police department and alleged that "Ousmane Bah" had stolen from Apple's store in Trumbull. Carpenter, relaying information from SIS' Global Security Operations Center.  Relying upon SIS' false identification of the thief as Ousmane Bah in Paramus, Carpenter claimed that Bah had been arrested in New Jersey and identified as a thief committing shoplifting in numerous stores in Connecticut, which had been previously been attributed to an unknown thief.

93. Carpenter's allegation was reckless, false, and misleading, and based upon SIS' erroneous and reckless identification of Ousmane Bah as the thief in Paramus, NJ.

94. Carpenter's allegation was defamatory and intended to induce prosecution of Bah in Trumbull, CT.

95. Subsequently, Ousmane Bah was charged without probable cause with the Trumbull thefts, based solely upon the information provided to the Trumbull police by SIS as to the identity of the thief.

### The Rockaway, NJ Theft

96. On October 18, 2018, the impostor committed shoplifting at an Apple store in Rockaway, NJ, detected again by review of store video by SIS employee Defendant John Woodruff, a so-called "loss prevention specialist" who provided security at the Rockaway store.

97. Apple reported the theft to SIS' "Global Security Operations Center" ("GSOC"), SIS' central database maintained at SIS' headquarters in California.

98. SIS, on behalf of Apple, maintained a "library" of information tying the Plaintiff, Ousmane Bah, to thefts in multiple states through this central database, with the expectation that it would influence events in other jurisdictions contiguous to where thefts occurred, including information concerning the New Jersey thefts.

99. Defendant Woodruff, on behalf of Apple, in reliance on the recklessly false identification of Ousmane Bah as the impostor from the Paramus, NJ arrest, advised the Rockaway (NJ) Police Department that Bah was the thief and induced the officers to file charges of felony theft against the Plaintiff.

### SIS' Direct Involvement in the NYPD's
### Investigation of NY Thefts

100. On October 22, 2018, the impostor committed another theft at an Apple store, this time in Staten Island, NY.  While the store captured security imaging of the thief, the identity of the thief was purportedly unknown to the Staten Island store or its personnel.

101. On October 24, 2018, the impostor struck again, stealing additional merchandise from the Staten Island store.

102. Subsequently, on November 8, 2018, Defendant Det. John Reinhold submitted a request for information to identify the New York thief by publishing a flyer describing the theft and including a captured image from the security video showing the thief that was published via a reporting service used by the NYPD called "MetrORCA," *Exhibit 2, attached.*

103. On November 15, 2018, Woodruff, using the address provided in the MetrORCA bulletin, emailed Det. Reinhold and advised him that Apple and SIS had identified the Staten Island thief as Ousmane Bah, further falsely representing that Bah "had been hitting Apple stores for quite a few months now and doesn't seem to be stopping," naming the Plaintiff as the impostor who had committed robberies of Apple stores in multiple states throughout the Northeast. *Exhibit 2, id.*

104. Woodruff's allegations were false and misleading, and based upon reckless misidentification of the impostor as Ousmane Bah.

105. Woodruff, on behalf of SIS and Apple, provided information concerning the New Jersey thefts and naming of the Plaintiff with the expectation that it would have consequences for Ousmane Bah in New York.

106. In November 2018, Detective Reinhold submitted a request to the NYPD's Facial Identification Section (FIS), seeking that the section use its facial recognition technology protocol to identify the imposter, the Staten Island thief.

107. The FIS Section responded within a day by providing two names for the image submitted by Det. Reinhold: Mamadou Barrie and Ousmane Bah.

108. The impostor's actual name was Mamadou Barrie (or "Barry").

109. As noted above, under FIS written procedures, once the program matched more than one individual to an image, FIS should be abandoned as a means of identification, as the system was unreliable.

110. At no point did Reinhold investigate the second individual, Mamadou Barrie, who had multiple warrants outstanding for theft, and who actually answered to the thief's description and photographs.

111. Instead, relying upon SIS and Apple's naming of the individual as Ousmane Bah, Det. Reinhold disregarded this protocol and resubmitted the image to FIS.

112. However, based upon its own protocol FIS would not run a second search, but referenced its earlier search findings.

113. However, rather than questioning the search result further Reinhold simply issued a warrant for Ousmane Bah's arrest.

114.   Det. Reinhold disregarded proper police procedure in finding probable cause for Ousmane Bah's arrest and seeking his arrest and detention, and lacked probable cause for issuing a warrant for Ousmane Bah's arrest.

115.   At the time of the issuance of the warrant, Apple and its agent, SIS had in its possession documentary and video evidence that its naming of Ousmane Bah as the New York thief was false and/or unreliable, and that at least two, and possibly more, different individuals identified by Apple and SIS as Ousmane Bah were incorrectly named as him.

116.   Moreover, Det. Reinhold and the NYPD had in its possession evidence that its identification of the impostor as Ousmane Bah was similarly unreliable, and without probable cause.

117.   Apple and SIS' accusations that Ousmane Bah committed the New York thefts were knowingly false and/or made with reckless disregard for the truth or falsity of their allegations, and were therefore not subject to privilege.

### The New York Arrest

118.   On November 29, 2018, at approximately 4 AM, in reliance upon the false identification provided by Apple and SIS, and using the warrant issued without probable cause by Detectives Reinhold, Pagan, White, Granata, and Pattelli acted upon Apple's criminal complaints and came to Mr. Bah's family home to arrest him for the New York thefts.

119.   The warrant issued for Bah's arrest contained the photo of the impostor (now known to be Mamadou Barrie).  As stated above, Barrie in no way physically resembles the Plaintiff, other than being Black.

120.   At the time of the arrest, Det. Pagan, Det. White, Det. Granata, and Det. Pattelli acknowledged the inconsistency between the warrant's photograph and the Plaintiff, but nevertheless handcuffed him at his home in front of his mother, father, and brother, took him into custody, and brought him to the Staten Island precinct, all

121.   Det. Pagan's, Det. White's, Det. Granata's, and Det. Pattelli's arrest and detention of the Plaintiff was unlawful, without probable cause, and constituted a wrongful arrest in violation of Bah's civil rights.

122.   At the time of the arrest, Mr. Bah was still being prosecuted, albeit wrongfully, for the Boston thefts, and, based upon Apple's false representation to his counsel, believed that the one piece of evidence definitively absolving him of these thefts had been destroyed by Apple. This misrepresentation further increased Mr. Bah's fear and stress.

123.  Further, at the time of the arrest, Mr. Bah was aware that he had been allowed to leave Massachusetts on his own recognizance, but that occurrence of any other crime might lead to violation of the terms of his release and incarceration either in New York or Massachusetts while awaiting trial.

124.  Further, at the time of the arrest, Mr. Bah was aware that the felony charges issued against him in Boston and in New York could lead to his removal from the United States, the only home he's ever known, by being handed over to Immigration and Customs Enforcement and USCIS.   These criminal charges resulted in Mr. Bah's citizenship application being denied, which he is currently appealing.

125.  Mr. Bah was an honors student in high school with no criminal record prior to the events complained of and was in the United States pursuant to a valid permanent resident permit.  It is likely, therefore, that without the complained-of events, his application would have been allowed.

126.  After being taken to a New York City precinct, Defendant Det. Reinhold advised Mr. Bah that Apple's imaging of the New York thief did not match his appearance and released him, subsequently dropping the charges.

127.  Mr. Bah was further advised by Det. Reinhold that it was likely Mr. Bah was incorrectly identified based upon a facial recognition system utilized by Apple or SIS.

128.  Det. Reinhold withheld from Bah the fact that the NYPD had misused its own facial recognition program to link his name to the Staten Island thefts.

129.  The NYPD arrest and detainment was without probable cause and induced by the misidentification of Bah as a thief by Yhap (in Paramus, NJ), Woodruff (through his direct communication with the NYPD concerning the Staten Island thefts), SIS, and Apple, as well as the destruction of exculpatory evidence in New Jersey by Apple and SIS.

130.  Det. Reinhold's, Det. Pagan's, Det. White's, Det. Granata's, and Det. Pattelli's actions in causing Ousmane Bah's arrest and detention without probable cause was a violation of his Civil Rights under the Fourth Amendment of the United States Constitution.

131.  Upon information and belief, subsequent to Bah's arrest and release in New York, SIS and/or Apple knew that the Plaintiff had been arrested; that he was neither the Staten Island thief nor the impostor at other Apple stores; and that the NYPD had released the Plaintiff after comparing the video imaging from the Staten Island theft to the Plaintiff being held against his will in the police station.

132. Although SIS and/or Apple by this time had actual, irrefutable notice that the person whom they had accused of theft was not the actual thief, SIS and Apple continued to prosecute Ousmane Bah for the Paramus, NJ theft; the Greenwich, CT theft; the Boston, MA theft; the Rockaway, NJ theft; and the Cherry Hill, NJ theft, and left pending "BOLO" advisories linking the impostor's picture to Mr. Bah's name.

133. SIS and Apple's continued active seeking of these charges with this actual knowledge of the misidentification, as well as their collective failure to withdraw BOLOs to their employees or Apple employees, or police departments, was not only tortious, but also evidence of their reckless disregard for the accuracy of these accusations.

134. There is a direct nexus between Defendants' tortious conduct in New Jersey and the wrongful arrests in New York, as alleged above, as the false identifications in one state were prompted by another, using the same continuous communications regarding thefts between the Defendants' New York, New Jersey, Connecticut, Pennsylvania, and Massachusetts operations via phone and email.

### The Holyoke Theft and Arrest: The Impostor Exposed

135. On December 1, 2018, a mere two days after the NY arrests conclusively demonstrated that Bah was not the impostor committing numerous thefts at Apple stores, SIS employees apprehended the impostor attempting to steal merchandise in Holyoke, MA from Apple's store.

136. At this point, when SIS had actual notice that the impostor was not the Plaintiff, the SIS agents continued to recklessly misidentify the impostor as Ousmane Bah, this time to Holyoke police, again defaming the Plaintiff.

137. As stated above, this false identification occurred, in part, not only through SIS' recklessness in initially misidentifying the impostor, but through its reckless failure to correct the misidentification when on actual, incontrovertible notice of its error, even though SIS had the means to communicate such information to its so-called "loss prevention specialists" through its Global Security Operations Center ("GSOC"), which was maintained to provide centralized and immediate information to SIS loss prevention specialists and law enforcement.

138. The Holyoke Police immediately fingerprinted the impostor and forwarded the data to the FBI's National Criminal Identification Center ("NCIC"). The prints disclosed that the impostor was not Ousmane Bah, but Mamadou Barry (or "Barrie").

139. As noted above, New York's FIS process had identified Mamadou Barry or Barrie as being one name for the individual who committed the Staten Island thefts. However, this conflicting identity was disregarded by Det. Reinhold in issuing

the arrest warrant for the Staten Island thefts and in causing Mr. Bah to be detained.

140. The Holyoke Police extradited Mamadou Barry to New Jersey for outstanding warrants.

141. Barry was, in fact, at least one of the thieves involved in each of the above-named shoplifting incidents at Apple stores, and was the individual whom SIS and Apple had repeatedly, recklessly, and falsely identified as Ousmane Bah.

### The Freehold, NJ Theft

142. On December 6, 2018, less than two weeks after conclusively learning that Bah was not the thief shoplifting from its stores, Mr. Bah received by mail notice of a warrant in the Freehold County District Court for his arrest for the Freehold thefts, based upon the false accusations made by Apple and/or its agent, SIS, to the Freehold, NJ police.

143. At the time this notice was served on Bah, Apple and/or its agent, SIS, had actual or constructive knowledge of the Connecticut detention; the Paramus, NJ theft and detention; the Boston, MA theft and prosecution; and the Staten Island, NY arrest and release of Mr. Bah based upon Apple's false identification of Mr. Bah as the thief that had committed each of these criminal events.

144. At the time of Bah's receipt of this notice, further, Apple and/or its agent, SIS, had actual or constructive knowledge that Mr. Bah was innocent of each of these thefts, and that it had wrongfully charged Mr. Bah with theft in multiple states based upon false and objectively unreliable identification information.

145. At the time of Bah's receipt of this notice, Apple and its agent, SIS, also had actual or constructive knowledge that they had in their possession or control imaging evidence clearing Mr. Bah of its accusations of thefts and pending prosecutions against Bah in Massachusetts, Connecticut, and New Jersey.

146. However, even with this knowledge, both Apple and SIS continued in their prosecution of the Plaintiff in New Jersey.

147. On December 12, 2018, SIS loss prevention specialist Rakia Morgan appeared in the New Jersey State District Court in Cherry Hill, NJ to continue to press Apple and SIS' criminal charges from thefts in Cherry Hill against Ousmane Bah, despite SIS' knowledge that the charges were false and based upon reckless misidentification.

148. When Morgan appeared in Court, however, yet another individual appeared in response to the Summons. This individual's identity was verified by photo

identification as Ousmane Bah, a resident of Willingboro, New Jersey. He was not the Cherry Hill, NJ thief. The Court dismissed the charges against Bah.

149. The Cherry Hill prosecution, with knowledge that the thief was not Ousmane Bah, and with process issued against *yet another individual with that same name*, is further evidence of Apple and SIS' recklessness in seeking such relief.

150. SIS employee Rakia Morgan immediately advised SIS' Global Security Operations Center ("GSOC") that the thief whom SIS had identified (in sworn warrants seeking prosecution) as Ousmane Bah was not, in fact, the Plaintiff. Copied on this notice was Defendant John Woodruff, named above, who was the so-called "loss prevention specialist" in Rockaway, NJ who falsely advised the NYPD that Bah was a shoplifter.

## Continued Prosecution of Bah in Multiple States

151. These actions are further evidence of Apple and SIS' reckless disregard for the truth or falsity of charges against Ousmane Bah in presenting, and failing to withdraw, the false and misleading charges in New Jersey and Massachusetts, as well as their defamatory statements from Connecticut.

152. As alleged above, Apple and SIS had actual knowledge by report from New York as early as late November 2018 that the person that they had identified as committing shoplifting at their stores was not the Plaintiff.

153. Further, SIS and Apple knew directly by mid-December 2018 that the person that they had identified as the thief was not the Plaintiff.

154. After the New York arrests, both Defendants were under an affirmative duty to disclose to law enforcement officials that the prosecutions against the Plaintiff were invalid and without probable cause, and that the criminal cases against Bah should be dismissed.

155. However, both Defendants allowed prosecutions against Bah to continue through June 2019, including matters in Lawrence, NJ; Boston, MA; Greenwich, CT; and other jurisdictions.

156. As an example, in January 2019, with no explanation, in response to the September 2018 subpoena issued by Mr. Bah's Boston counsel in the pending Massachusetts prosecution, the prosecution produced a security video in response to the Plaintiff's criminal discovery request, which was the video from the Boston store of *yet another* Black male (neither the impostor nor Ousmane Bah) committing shoplifting in the Boston store on May 31, 2018.

157. By January 2019, Apple and SIS were constructively aware of multiple individuals with different appearances, all of whom were described as or whose images were produced in response to charges against "Ousmane Bah," including:

1) the Plaintiff, Ousmane Bah, who responded to the description in the temporary learner's permit;

2) the impostor, Mamadou Barrie, who had claimed to be "Ousmane Bah" but did not meet such description;

3) "Ousmane Bah," a Black male who had committed shoplifting in Apple's Montreal, Canada store;

4) the additional unidentified Black male who committed shoplifting on May 31, 2018 at the Boston Apple store; and

5) an Ousmane Bah residing in New Jersey who responded to the warrant issued for the Cherry Hill thefts.

162. As a result of this produced video, the Boston criminal charge, which had been pending for eight months, was *nolle prossed* by the Massachusetts Assistant District Attorney.

163. However, SIS and Apple took no steps to further this result. Neither SIS nor Apple ever apologized to Bah; explained or apologized for the false charge of felony theft filed by SIS as Apple's agent; or apologized for or explained its false representation that the exculpatory video had been withheld or presented as destroyed.

164. Moreover, said Defendants withheld this information from the Paramus Police Department and the Court until June 2019, after they had been sued in New York concerning these allegations and instructed by the Court to disclose to Plaintiff's counsel in this action all instances in which SIS had alleged that Ousmane Bah had committed shoplifting.

165. The Paramus Police Department's continued prosecution of Ousmane Bah as a thief though June 2019 resulted from the officers' failure to exercise independent judgment regarding the impostor's identification.

<u>Continued Reckless Disregard</u>
<u>and Malicious Prosecution of Plaintiff</u>

166. This matter was initially commenced in April 2019. Defendants immediately conferenced this matter and sought its dismissal. After letter conferencing and

the filing an Amended Complaint, the Court scheduled this matter for an initial conference to discuss the matter.

167. Within three days of Plaintiff filing the initial Complaint in this matter, the NYPD located and arrested the impostor, Mamadou Barrie.

168. This Court held a preliminary hearing concerning the Defendants' request for dismissal on June 18, 2019. Apple and SIS, through counsel, were advised that the pending false charges had imperiled the Plaintiff's application for permanent US citizenship. Accordingly, this Court directly ordered SIS and Apple to identify to the Court and to the Plaintiff all jurisdictions in which they had alleged that Ousmane Bah had committed theft by letter by the end of June 2019.

169. Plaintiff received SIS' counsel's letter on June 26, 2019. Although SIS had alleged that the Plaintiff had committed thefts in King of Prussia, PA, at the Menlo Park Mall in NJ, and the Mall at Short Hills, NJ, as well as Staten Island, New York, as described above, SIS omitted these three incidents entirely. *A copy of the letter is attached as Exhibit 3.*

170. Plaintiff received Apple's counsel's letter on June 27, 2019. Although Apple employees had named the Plaintiff as a thief in Greenwich, CT and Staten Island, NY, Apple's counsel listed no such jurisdictions. *A copy of the letter is attached as Exhibit 4.*

171. The selective omissions in these letters, despite the Court's direct order to disclose claims of theft, are further evidence of the Defendants' reckless disregard for the truth or falsity of their wrongful accusations of the Plaintiff.

172. To the contrary, although on notice as early as November 2018 that their claims of the Plaintiff being a thief were false, the Defendants allowed prosecutions to continue in other jurisdictions as late as June 2019.

173. The above actions demonstrate that SIS and Apple's actions toward Bah; statements identifying Bah as a felon; and prosecution of Bah in multiple states were not only wrongful but also were maintained in reckless disregard for the truth or falsity of the allegations.

## COUNT I
### (Defamation – Apple)

174. Apple and SIS (as Apple's agent), individually and in conspiracy together, as described above, made untrue statements, both orally and in writing, accusing the Plaintiff of committing crimes in seventeen separate instances over a period of nine months, including using information recklessly and unreliably obtained in New Jersey to accuse the Plaintiff as a thief in New York to the NYPD, which directly led to the Plaintiff's wrongful arrest and detention.

175. These false statements were published to Apple and SIS retail and law enforcement personnel in, New York, as well as to other law enforcement agencies and third parties.

176. By their own representations, Apple and SIS' accusation of Bah as a thief in each of the complained-of locations was based on the apprehension in Paramus, NJ. Thereafter, using the Paramus apprehension, both Apple and SIS referred to the impostor as Bah and called him a "known" shoplifter who committed multiple thefts in multiple jurisdictions.

177. These cumulative misidentifications built upon themselves, creating the impression to law enforcement officials that the Plaintiff was a serial offender operating throughout the northeast United States, and created a sense of urgency to promote his arrest and detainment.

178. Apple and SIS' loss prevention and investigation practices falsely identifying the Plaintiff as the individual who committed thefts in New York, including their:

- reckless procurement and publication of incorrect, misleading, and false charges against an innocent man;

- failure to advise law enforcement of inconsistent and exculpatory information;

- reliance upon documents which, on their face, stated that they could not be used to identify anyone;

- disregarding conflicting evidence between the physical description of Bah on the temporary learner's permit and the physical characteristics of the actual thief;

- repeated false accusations based upon patently unreliable information, to the point of swearing out warrants naming Mr. Bah as a thief when Apple and SIS had irrefutable proof that their evidence naming Bah as their shoplifter was not true;

- failing to preserve and disclose exculpatory video;

- conducting of a criminal investigation of store thefts without following established principles of investigation; and

- failure to withdraw or correct BOLO bulletins circulated by Apple and SIS

were, individually and collectively, unreasonable, reckless, and conducted without regard to the truth or falsity of claims made against Mr. Bah.

23

180. The false accusations that Bah was a thief were published orally and in writing to third parties and were not limited to law enforcement.

181. Such public comments were both oral and in writing, and were slander and libel *per se,* and injured the Plaintiff's reputation.

182. Mr. Bah was significantly injured as a result of these reckless actions.  He was made subject to criminal process, shackled and deprived of his freedom, publicly embarrassed, and has suffered significant psychological harm with physical manifestations, including insomnia, depression, exhaustion, and continual anxiety as to what effect these repeated false charges will have on his record and whether they will interfere with his post-college employment and career.   He lives in continuing fear that additional false charges will be made against him and that he might again be apprehended without cause, perhaps even being forced to leave the country.

183. Mr. Bah has and continues to suffer from damage to his personal reputation as a result of the Defendants' false accusations.

184. As a result of Defendants' actions in New York, Mr. Bah has lost, and will continue to lose, employment opportunities in New York, and elsewhere.

185. Mr. Bah's application for permanent status and United States' Citizen was substantially interfered with due to the aforementioned false criminal charges.

186. Every tortious act in New York was prompted by a chain of communications between Apple and SIS concerning their identification of the thief and their operations in other states, and led both leading to the false swearing out of an arrest warrant in each state and subsequent concealment of embarrassing and exculpatory evidence.

## COUNT II
### (Defamation – SIS)

187. Plaintiff repeats the above allegations and incorporates them herein by reference.

188. SIS, individually and as an agent of and in concert with Apple, as alleged above, made repeated false statements accusing the Plaintiff of multiple crimes and published said statements to its own personnel, to Apple employees, and to law enforcement personnel.

189. The untrue representations made orally and in writing by SIS (individually and as Apple's agent) were false and inaccurate.

24

190. The untrue representations were both slanderous and libelous, and injured the reputation of the Plaintiff.

191. As alleged above, these false statements were published with reckless disregard to their truth or falsity, and are not subject to privilege under the laws where each false statement was published.

192. SIS' accusations and representations that Mr. Bah had committed a crime each and collectively constituted defamation *per se* (specifically, false allegations of a criminal act).

193. As a result of the defamatory actions of SIS, individually and in joint venture with Apple, Plaintiff has suffered the injuries referred to in the above paragraphs.

## COUNT III
### (Defamation – Defendant John Woodruff)

194. Plaintiff repeats the above allegations and incorporates them by reference.

195. As alleged above, Defendant John Woodruff falsely, recklessly and/or maliciously alleged that the Plaintiff, Ousmane Bah, was a thief in New York.

196. Said Defendant's actions were defamatory, and without privilege.

197. As a direct and proximate result of Defendant Woodruff's defamation of the Plaintiff, Mr. Bah has suffered fear of prosecution, loss of liberty, fear for his safety and personal freedom, embarrassment, damage to his reputation, humiliation, loss of employment opportunity and significant stress, and substantial interference with his right to obtain U.S. Citizenship, as well as physical sequelae from such emotional harm.

## COUNT IV
### (Malicious Prosecution – Apple)

198. Plaintiff reiterates the allegations made in the above paragraphs and incorporates them herein by reference.

199. Apple, individually and in concert with SIS, owed a duty to the Plaintiff to refrain from accusing him of committing a crime without probable cause, under the laws of each state where it made such an accusation.

200. Apple, through its employees and through its agent SIS, falsely accused Plaintiff of committing multiple crimes as stated above in New York and elsewhere, with the intent and expectation that Plaintiff would be taken into custody, prosecuted, and punished therefor.

201. At the time of each of these accusations, Apple expected and intended that Defendant SIS act on its behalf and in furtherance of its business interests for purposes of the criminal accusations, and in all such cases, SIS acted as Apple's agent.

202. At the time that Apple and SIS, individually or collectively, accused Plaintiff of having stolen merchandise from their stores, as noted above, their accusations were with actual or constructive knowledge of their falsity and therefore lacked probable cause, as there was insufficient information to warrant a prudent person in believing that the Ousmane Bah had committed or was committing an offense.

203. Apple and SIS knowingly or recklessly misrepresented the state of evidence in these prosecutions with actual or constructive notice that would tend to prove the innocence of Mr. Bah, whom they had falsely charged, and knowingly or recklessly withheld exculpatory evidence and information from the police and prosecution.

204. As a result of Apple's malicious prosecution, repeated false criminal charges, and reckless disregard to the truth or falsity of the allegations it made against him in New York Mr. Bah has suffered fear of prosecution, loss of liberty, fear for his safety and personal freedom, embarrassment, damage to his reputation, humiliation, loss of employment opportunity    and significant stress, and substantial interference with his right to obtain U.S. Citizenship, as well as physical sequelae from such emotional harm.

## COUNT V
### (Malicious Prosecution – SIS)

205. Plaintiff reiterates the allegations made in the above paragraphs and incorporates them herein by reference.

206. SIS, individually and as an agent of and in concert with Apple, owed a duty to the Plaintiff to refrain from accusing him of committing a crime without probable cause, under the laws of each state where it made such an accusation.

207. SIS falsely accused Plaintiff of committing a crime in New York, , with the intent and expectation that Plaintiff would be taken into custody, prosecuted and punished therefor.

208. At the time SIS accused Plaintiff of having stolen merchandise from their store, as noted above, their accusations were with knowledge of their falsity, and therefore lacked probable cause, as they lacked reasonably trustworthy information sufficient to warrant a prudent man to believe that the plaintiff had committed or was committing an offense.

209. Moreover, Apple and SIS, individually and in concert with one another, knowingly or recklessly misrepresented the status of evidence in these prosecutions with actual or constructive notice that it would tend to prove the innocence of Mr. Bah, whom they had falsely charged, and withheld exculpatory evidence and information from the prosecution.

210. SIS' actions constituted malicious prosecution of the Plaintiff, resulting in damage and injury to the Plaintiff.

211. As a result of SIS' malicious prosecution, repeated false criminal charges, and reckless disregard to the truth or falsity of the allegations it made against him in New York, and elsewhere, Mr. Bah has suffered fear of prosecution, loss of liberty, fear for his safety and personal freedom, embarrassment, damage to his reputation, humiliation, loss of employment opportunity  and significant stress, as well as substantial interference with his right to obtain U.S. citizenship, as well as physical sequelae from such emotional harm.

### COUNT VI
### Deprivation of Civil Rights – 42 USC § 1983
### (Defendant Reinhold,
### in his individual capacity as a detective
### for the City of New York,
### by and through the New York Police Department)

212. Plaintiff repeats the above allegations and incorporates them herein by reference.

213. Defendant Reinhold's improper identification of the Plaintiff as a thief in New York and his causing the arrest and detention of the Plaintiff without probable cause, as alleged above, constituted the deprivation of recognized rights under the United States Constitution without due process of law.

214. Detective Reinhold's actions in causing the arrest and detention of the Plaintiff were under color of state law.

215. As a direct consequence of the false arrest and detention, Plaintiff suffered false arrest and detention, with an accompanying a loss of freedom; injury to his reputation and resulting loss of employment opportunities; and substantial interference with his right to US citizenship otherwise guaranteed under federal law, which would have been approved but for the criminal charges and arrest in New York.

**Count VII**
**Deprivation of Civil Rights/Wrongful Arrest and Detainment**
**(Defendants Det. Pagan, Det. White, Det. Granata, and Det. Pattelli,**
**in their individual capacities**
**as police officers for the City of New York,**
**by and through the New York Police Department)**

216. Plaintiff reiterates the above allegations and incorporates them herein by reference.

217. Det. Pagan's, Det. White's, Det. Granata's, and Det. Pattelli's arrest of the Plaintiff, under color of state law, was wrongful and without probable cause, and was in breach of the Plaintiff's civil rights.

218. As a direct and proximate result of said arrest, the Plaintiff suffered injury, loss of freedom, embarrassment, humiliation, injury to his reputation, loss of employment opportunities, and a deprivation of his right to US citizenship otherwise guaranteed under federal law, which would have been approved but for his arrest and the criminal charges brought against him in New York.

**Count VIII**
**Deprivation of Civil Rights – 28 USC § 1983**
**(Defendant City of New York,**
**by and through the New York Police Department)**

219. Plaintiff reiterates the above allegations and incorporates them herein by reference.

220. As noted above, facial recognition technology is still in its infancy and is subject to abuse, particularly when identifying Black citizens.

221. "Misidentifications are among the most prevalent and troubling risks face recognition creates. If law enforcement does not mitigate the risk of misidentifications in its use of this technology, face recognition will likely endanger public safety, civil liberties, and police-community relations by implicating improperly identified individuals in investigations or police action. The effectiveness of facial recognition is highly dependent on circumstances. Poor use-practices and unreasonable applications can significantly diminish accuracy." *Testimony of Jake Laperruque, Senior Counsel for the Const. Project at the Project on Gov. Oversight, before the Presidential Comm. on Law Enforcement and Administration of Justice's Technology Working Group on Law Enforcement Use of Facial Recognition, on April 22, 2020.*

222. The misidentification involved in the Plaintiff's case demonstrates that New York Police Department officers such as Detective Reinhold routinely engage in "poor use-practices," including disregard for written protocols of the Department that

28

expressly preclude its use where one image produces multiple identities, as happened here.

223.  Misuse of facial recognition technology demonstrates the lack of effective training and supervision of New York Police Department in a manner which unfairly leaves citizens at risk for false identification, arrest, and confinement or imprisonment, all in foreseeable violation of citizens' civil rights.

224.  The City of New York, by and through the New York Police Department, failed to enact protocols or training which would discourage arrest of individuals whose facial recognition scans yielded multiple identities, in favor of simple questioning of an individual, thereby demonstrating deliberate indifference to the risk of false arrest inherent in that decision. *See Bd. of the County Comm'rs v. Brown, 117 S. Ct. 1382 (1997); Monell v. Department of Social Serv., 436 U.S. 658 (1978).*

225.  Plaintiff Ousmane Bah's false arrest, without probable cause, without questioning him, based upon conflicting facial recognition results, was a direct, foreseeable, and proximate result of the City of New York's poor training and lack of such protocols.

226.  As a direct result of such deliberate indifference, the Plaintiff suffered the injuries set forth herein.

**WHEREFORE, Plaintiff demands that this Court:**

(1)  Enter judgment against the Defendants Apple, SIS and Woodruff, jointly and severally, in an amount which it finds just and equitable for the damages caused by such Defendants' tortious conduct **in New York** suffered by Plaintiff;

(2)  Enter judgment against public Defendants Reinhold, Det. Pagan, Det. White, Det. Granata, Det. Pattelli, and the City of New York for breaches of the Plaintiff's civil rights under color of state law, pursuant to 42 USC §1983, together with punitive damages and the award of attorney's fees, pursuant to 42 USC § 1983;

(3)  Order the Defendants Apple, SIS and Woodruff to refrain from further accusations of criminality against the Plaintiff;

(4)  Order Defendants Apple, SIS, and Woodruff in equity to take such affirmative actions as necessary to expunge their false allegations against the Plaintiff wherever they may appear either in print or electronically, and to clear his name in any contexts where it is associated with the Defendants' allegations of criminality or criminal behavior;

(5)  Order the Defendants Apple, SIS and Woodruff, in equity, to publicly apologize to the Plaintiff for their tortious claims of criminality, and to publish such

apology both in print and electronically in the jurisdictions where the claims were made;

(6) Order that the Defendants Apple, SIS and Woodruff provide the means for an ongoing right of reply to contradict the false and defamatory representations concerning the Plaintiff and his alleged criminality, wherever they may appear;

(7) Order that Defendants Apple, SIS and Woodruff, in equity, provide a monitoring service on an ongoing basis for the protection of Plaintiff's reputation, including but not limited to proactive corrections of any false allegations of criminality;

(8) Together with such other relief which this Court finds just and equitable.


Dated: January 21, 2021

Plaintiff,
By his attorneys,

_____

Daniel Malis, Esq., BBO # 315770
MALIS|LAW
30 2nd Street
Cambridge, MA  02141
(617) 491-1099
daniel.malis@malislaw.com

_____

Subhan Tariq, Esq.
Attorney I.D. No. # ST9597
The Tariq Law Firm, PLLC
34-18 Northern Blvd – Suite 2-25
Long Island City, NY 11101
(718) 674-1256
subhan@tariqlaw.com