UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
OUSMANE BAH,

                        Plaintiff,                          19-cv-3539 (PKC)

        -against-                                           OPINION
                                                            AND ORDER

APPLE INC. et al.,

                        Defendants.
------------------------------------------------------------x

CASTEL, U.S.D.J.

            Presently before the Court are defendants' motions to dismiss the Third Amended

Complaint (the "Complaint" or "TAC") for failure to state a claim.  This action stems from the

misidentification of plaintiff Ousmane Bah as the individual who committed a series of thefts from

Apple stores over the course of approximately eight months.

            The Court previously held that the First Amended Complaint (Doc 23) stated claims

for New York-based defamation and malicious prosecution against defendants Apple, Inc.

("Apple") and a firm it employed, Security Industry Specialists, Inc. ("SIS").  (Doc 49 ("MTD

Opinion")).  The Court concluded that the statements and actions of Apple and SIS were protected

by New York's qualified privilege but that Bah plausibly alleged actual malice in connection with

his defamation and malicious prosecution claims.  The conclusion was based principally on

allegations that Apple and SIS had identified two different individuals as Bah prior to reporting

the New York-based thefts to police.  "As such, any statement identifying Bah as a thief, which

was based on this unreliable method of identification, was made with a reckless disregard for the

truth and made with a high degree of awareness that the identification was probably inaccurate,

based on defendants' own records."  (MTD Op. 24).

The Court dismissed the claims based upon non-New York incidents because of the limited reach of New York's long arm statute in cases sounding in defamation. (MTD Op. 12). The Court concluded that there is both a basis for personal jurisdiction and a plausible allegation of defamation and malicious prosecution arising out of the New York Incidents. (MTD Op. 7–10, 14–15).

After the Court's ruling on the first motion to dismiss, the case proceeded to discovery. Although discovery had been conducted for nine months prior to the Court's entry of a stay for the purposes of the present motions, it has not been concluded and documents or testimony obtained in discovery may not be permissibly considered on motions to dismiss.  The present version of the complaint is Bah's fourth, and the Court has twice granted Bah leave to amend since the decision on the motion to dismiss the First Amended Complaint. (Docs 79, 133).  Bah continues to assert claims for New York-based defamation and malicious prosecution against Apple and SIS and has added SIS's employee John Woodruff as a defendant.  Notably, the Third Amended Complaint alleges that the individual who engaged in the series of thefts was Mamadou Barrie. (TAC ¶¶ 107–108),

In addition, the Third Amended Complaint added claims under section 1983 against Detectives Reinhold, Pagan, White Granato and Patelli of New York Police Department (the "NYPD") and defendant City of New York (the "City").  42 U.S.C. §1983.

Each defendant has moved to dismiss the TAC.[1]  For reasons to be explained, the motions to dismiss of Apple, SIS and Woodruff will be denied and the motions to dismiss by each of the NYPD detectives and the City will be granted.

---

[1] Apple, SIS and SIS's employee Woodruff initially moved to dismiss the Second Amended Complaint and subsequently filed letters directing their pending motions to the TAC.  (Docs 140 & 141).

BACKGROUND

I.      The Complaint's Factual Allegations.

Because the allegations in the Third Amended Complaint at times differ materially from those considered by the Court in its first MTD Opinion, they will be described in some detail.

The first theft identified in the Complaint occurred on April 16, 2016, from an Apple store in Montreal, Canada.  The Complaint alleges that an individual named "Ousmane Bah" was detained by Apple and SIS following an accusation that this individual had stolen merchandise from the Montreal store.  (TAC ¶ 19).  Bah alleges that his physical features do not match this individual's features.  (TAC ¶ 20).

The next relevant event alleged did not occur until 2018.  As the Court previously described, "[o]n March 26, 2018, Bah received a temporary New York State learner's permit, which contained Bah's personal descriptive details, such as height, weight, date of birth, and eye color, but did not include a photograph.  By May 2018, Bah had lost this temporary learner's permit."  (MTD Op. at 2 (internal citations omitted)); (TAC ¶¶ 17–18).  During 2018, Bah was a high-school student who resided in New York City.

Starting in April 2018 and continuing for approximately eight months, Bah alleges that Apple and SIS employees mistakenly identified him as the individual who committed a series of thefts at Apple Stores in New York, New Jersey, Massachusetts, and Connecticut.  The Complaint asserts that the actual thief was Mamadou Barrie.  (TAC ¶ 108).  Bah alleges that his physical features do not match Barrie's features.  (TAC ¶ 25).

In April 2018, Mamadou Barrie was detained in Greenwich, Connecticut, following an accusation by Apple and SIS that an individual had stolen merchandise from one of Apple's stores (the "First Connecticut Incident").  (TAC ¶ 22).  The Complaint alleges that during the relevant period SIS provided security services at Apple's New Jersey stores and performed

investigation and security services for Apple.  (TAC ¶¶ 14–15).  Barrie identified himself as "Ousmane Bah" using Bah's temporary New York State learner's permit.  (TAC ¶¶ 23, 26). Though Barrie's apparent physical features did not match the physical features described in the temporary learner's permit (5'7" vs. 6'1"), Apple and SIS informed the police that the thief was "Ousmane Bah".  (TAC ¶ 26).  Apple and SIS created an internal security record, matching surveillance footage from Apple's store of Barrie committing the theft with Bah's name and retained portions of surveillance footage showing the alleged theft.  (TAC ¶¶ 26–27).  They also "published" the allegation that Bah was the thief to their own employees.  (TAC ¶¶ 27, 175, 188).

On May 24, 2018, Mamadou Barrie was detained for shoplifting from an Apple store in Paramus, New Jersey and identified himself as "Ousmane Bah" using Bah's temporary learner's permit (the "First New Jersey Incident").  (TAC ¶¶ 30–32).  An SIS employee reported to the Paramus police that the name of the person detained by store security was "Ousmane Bah" but, in fact, the person was Barrie.  (TAC ¶¶ 34, 37).  Apple and SIS created a "Be on the Lookout," or "BOLO," notice under the name "Ousmane Bah" and internally matched surveillance footage of Barrie's theft with Bah's name.  (TAC ¶¶ 39, 176).  Apple and SIS sent the BOLO notice to their own employees, the police and unidentified others.  (TAC ¶¶ 39, 175, 188). The Complaint asserts that using their identification from the Paramus theft, Apple and SIS mistakenly began attributing to "Ousmane Bah" prior thefts committed by Mamadou Barrie, including a May 5, 2018 theft from an Apple store in Short Hills, New Jersey that was reported to local police.  (TAC ¶ 38).

On May 31, 2018, Apple and SIS employees reported to the Boston, Massachusetts police that a Boston Apple store had suffered a theft, committed by the same individual that committed the theft at the Connecticut store (the "Massachusetts Incident").  (TAC ¶¶ 41, 43). Bah alleges that the theft was in fact committed by Barrie.  (TAC ¶ 45).  Apple and SIS identified

the thief to the Boston police as Bah based on the BOLO notice from the First New Jersey Incident as well as surveillance video and internal records from the Connecticut Incident.  (TAC ¶¶ 44, 51, 69).  They also "published" this allegation regarding the Massachusetts Incident to their employees and law enforcement.  (TAC ¶¶ 175, 188).

The Complaint alleges that Barrie committed two thefts from Apple stores in Cherry Hill, New Jersey and Freehold, New Jersey on September 18, 2018 (the "Second New Jersey Incident").  (TAC ¶¶ 75, 77).  Apple and SIS employees reported to the local police that these stores had suffered a theft and identified Bah as the thief.  (TAC ¶¶ 76, 80).  Bah also alleges that Apple and SIS "published" these allegations to their own employees and law enforcement. (TAC ¶¶ 175, 188).  On December 6, 2018, plaintiff Bah received notice of charges against him relating to the theft of the Freehold Apple store.  (TAC ¶ 142).  On December 12, 2018, charges against Bah relating to theft of the Cherry Hill store were dropped after an individual who was not Bah appeared in response to a summons.  (TAC ¶¶ 147–49).

The Complaint alleges that Barrie committed another theft at an Apple store in Rockaway, New Jersey on October 18, 2018 (the "Third New Jersey Incident").  (TAC ¶ 96). Defendant John Woodruff, an SIS employee providing security at the Rockaway store, identified the theft upon a review of surveillance footage.  (TAC ¶ 96).  Woodruff named Bah as the individual responsible to the Rockaway Police.  (TAC ¶ 99).  In addition, Apple employees reported the theft to a central database maintained by SIS called the "Global Security Operations Center," which maintained information tying Bah to multiple thefts.  (TAC ¶¶ 97–98).  Bah also alleges that Apple and SIS "published" this allegation to their own employees.  (TAC ¶¶ 175, 188).

The foregoing chronology is the lead up to the New York arrest of Bah. The Complaint alleges that Mamadou Barrie committed thefts at an Apple store in Staten Island, New

York on October 22, 2018 and October 24, 2018 (the "New York Incidents").  (TAC ¶¶ 100–01).  On November 8, 2018, defendant Detective John Reinhold of the NYPD issued a "METRORCA Alert," which requested information on the New York Incidents and included a description and photograph from store surveillance video of the thief.  (TAC ¶ 102 & Ex. 2).  In response to this alert, on November 15, 2018, Woodruff emailed Detective Reinhold informing him that the individual "is known to us as Ousmane Bah" and that "he has been hitting Apple stores for quite a few months and doesn't appear to be stopping."  (TAC Ex. 2; TAC ¶ 103).  The Complaint also alleges that based on a surveillance video image from the Staten Island store, Reinhold ran a search to identify the individual using facial recognition technology.  It asserts that the results from a NYPD database search identified both Barrie and Bah.  (TAC ¶ 107).

In the early morning hours of November 29, 2018, Bah was arrested at his home by NYPD detectives, defendants Pagan, White, Granata and Pattelli (the "Arresting Officers").  (TAC ¶ 118).  The Complaint alleges that following Bah's arrest he was taken to an NYPD precinct where Reinhold determined that Bah did not match the physical appearance of the thief from the New York Incidents after comparing Bah's appearance to images of the individual captured on surveillance video.  (TAC ¶ 126).  Bah was released and, subsequently, the charges related to the New York Incidents were dropped.  (TAC ¶ 126).

The Complaint details two additional thefts.  On October 28, 2018, less than a week after the New York Incidents, but before Bah was arrested by the NYPD, Apple and SIS employees reported to the Trumbull, Connecticut police that a Trumbull Apple store had suffered a theft.  (TAC ¶¶ 92).  An Apple employee, relying on information from the Global Security Operation Center, named Bah as the thief.  (TAC ¶ 92).  The Complaint alleges that the thief was in fact Barrie. (TAC ¶ 141).

On December 1, 2018, two days after Bah's arrest in New York, Barrie was allegedly detained for shoplifting from an Apple store in Holyoke, Massachusetts.  (TAC ¶ 135). Apple and SIS employees reported the theft to the Holyoke police, who arrested and fingerprinted Barrie.  (TAC ¶ 138).  Through fingerprinting, the Holyoke police identified the thief as Barrie. (TAC ¶ 138).

DISCUSSION

II.    <u>Apple, SIS and Woodruff's Motions to Dismiss.</u>

Apple, SIS and Woodruff (the "private defendants") urge that Bah's claims of defamation and malicious prosecution, premised on statements related to and the arrest arising from the New York Incidents, should be dismissed.  As noted, the present motions to dismiss are presented in an atypical context.  Discovery has been ongoing for nine months, yet the fruits of discovery are not permissibly considered on this motion to dismiss.  While the grounds asserted for dismissing the claims are context dependent, the context has not and cannot be fully presented on this motion.  The Court will deny the motions to dismiss the private defendants' motions without prejudice to reassertion of the grounds on a full evidentiary record.

In the first MTD Opinion, the Court set forth the applicable pleading standard under Rule 12(b)(6), Fed. R. Civ. P., and the legal standards for claims of defamation and malicious prosecution (MTD Op. at 18 – pleading standard; <u>id.</u> at 19–22 – defamation; <u>id.</u> at 25– 28 – malicious prosecution).  Familiarity with the Court's MTD opinion is assumed.

A.    <u>Defamation.</u>

Apple, SIS and Woodruff raise two grounds for dismissal of Bah's defamation claim.  They urge that (i) Bah fails to allege a false statement of fact and (ii) fails to plead actual or common law malice sufficient to overcome New York's qualified privileges.

i.   <u>False Statement of Fact.</u>

Falsity is an element of a defamation claim under New York law.  Accordingly, "a plaintiff must plead facts demonstrating falsity to prevail on a motion to dismiss the complaint in federal court."  <u>Tannerite Sports, LLC v. NBCUniversal News Grp.</u>, 864 F.3d 236, 247 (2d Cir. 2017); <u>see also</u> <u>Stepanov v. Dow Jones & Co., Inc.</u>, 120 A.D.3d 28, 34 (1st Dep't 2014) ("Because the falsity of the statement is an element of the defamation claim, the statement's truth or substantial truth is an absolute defense.").  "'Substantial truth' is the standard by which New York law . . . determines an allegedly defamatory statement to be true or false."  <u>Tannerite Sports</u>, 864 F.3d at 242.  "A statement is substantially true if the statement would not have a different effect on the mind of the reader from that which the pleaded truth would have produced."  <u>Id.</u> (internal quotation marks and alteration omitted).  "When a court interprets a publication in an action for defamation, '[t]he entire publication, as well as the circumstances of its issuance, must be considered in terms of its effect upon the ordinary reader.'"  <u>Id.</u> at 243 (quoting <u>Silsdorf v. Levine</u>, 59 N.Y.2d 8, 13 (1983)).

Apple and SIS urge that Woodruff's email to Detective Reinhold is substantially true.  Woodruff's alleged defamatory email stated that the individual shown in the Staten Island store's surveillance image "is known to us as Ousmane Bah" and that "he has been hitting Apple stores for quite a few months and doesn't appear to be stopping."  (TAC Ex. 2).  Apple and SIS argue that the phrase "known to us" makes this a true statement because, at the time, they believed Bah was the individual depicted in the image and had committed a series of thefts.

Under New York law, courts are required to consider the statement's context in assessing whether it was substantially true.  <u>See</u> <u>Franklin v. Daily Holdings, Inc.</u>, 135 A.D.3d 87, 94 (1st Dep't 2015) ("A reader could read the alleged defamatory statement in the context of the rest of the article and think that plaintiff was actually present in the club, prepared to shoot a

firearm; whereas, a reader of plaintiff's isolated statement on Twitter may not have the same impression."). Woodruff's statement was made in response to Detective Reinhold's request for information on the thief who committed the New York Incidents. Woodruff's response was not transmitted to the public at large but to members of law enforcement with the sophistication and experience to draw a distinction between the phrase "known to us" and an unqualified confirmation of identity. But the Court will allow the parties to develop a complete factual record which would enable the Court to decide the issue in the surrounding context.

      ii.   <u>Actual Malice.</u>

The Court previously held that although Apple and SIS's statements fell within New York's qualified privileges covering communications with law enforcement or persons with common interests, Bah sufficiently alleged actual malice to overcome those qualified privileges. (MTD Op. at 19). Apple and SIS again move to dismiss the Complaint on this ground, namely, that Bah has failed to allege actual or common law malice sufficient to overcome the qualified privileges.

As an initial matter, the Court concludes that based on the allegations in the Complaint, the alleged defamatory statements are still covered by New York's qualified privileges. The Complaint alleges these defendants published statements identifying Bah as the thief either to the NYPD or to persons who were in an employment or vendor relationship with each other and concerned that commercial relationship. Such statements are covered by the qualified law enforcement privilege and qualified common interest privilege, respectively.

The Court previously held that the First Amended Complaint plausibly alleged actual malice based on allegations that, at the time of the New York Incidents, Apple and SIS "'knew or were constructively aware that [their] identification of the thief as Bah was unreliable' because they had 'identified two very different persons as Bah.'" (MTD Op. at 24 (quoting First

Amended Complaint ¶ 37)).   The private defendants had identified the individual in the Massachusetts Incident and in the Connecticut Incident as Bah, even though they were two different individuals neither of whom was the plaintiff Bah.  Bah no longer alleges that the private defendants identified two different individuals in the Massachusetts and Connecticut Incidents as Bah.

The Complaint alleges that on April 16, 2016 an individual named Ousmane Bah was detained at an Apple Store in Montreal, Canada and subsequently arrested for shoplifting. (TAC ¶ 19).  While the Complaint asserts that the Montreal thief's physical features did not match plaintiff Bah's physical features, there are no allegations suggesting that Apple and SIS ever believed plaintiff Bah was responsible for the Montreal theft.

The Complaint alleges that at the time of the Massachusetts Incident on May 31, 2018, Apple and SIS had identified "at least two, and possibly more, different persons as Bah." (TAC ¶ 47).  But this assertion is contradicted by the TAC's allegations of the shoplifting incidents that preceded the Massachusetts Incident.  The Complaint now alleges that Apple and SIS only identified one individual as the shoplifter, later determined to be Barrie, in connection with the Connecticut Incident and First New Jersey Incident.  (TAC ¶¶ 25, 37).  There is no longer a plausible claim that two different individuals were identified as Bah in connection with these thefts.

Lastly, the Complaint references two other instances of individuals who "were described as or whose images were produced in response to charges against" Bah.  (TAC ¶ 157). Neither of these instances bear on the issue of whether Apple or SIS had identified multiple individuals as Bah prior to publishing any statements relating to the New York Incident.  First, in January 2019, prosecutors in Massachusetts produced a surveillance video of an unidentified

individual, other than Barrie, committing a theft in the Boston Apple store on the same date of the Massachusetts Incident.  (TAC ¶ 156).  However, the Complaint does not allege that Apple and SIS ever identified this individual as Bah when it made statements to the NYPD or police in other jurisdictions prior to the New York Incidents.  (TAC ¶¶ 156–57).  Second, on December 12, 2018, the Complaint alleges that a SIS employee was present in New Jersey state court when charges against Bah were dropped after an individual named Ousmane Bah, other than plaintiff, responded to the summons.  (TAC ¶¶ 147–50; 157).  Again, there is no allegation that Apple or SIS ever identified or named the individual who appeared in New Jersey Court as a thief.

Because the Complaint no longer plausibly alleges that Apple and SIS' identified two different individuals as Bah, the Court must consider whether the allegations in the Complaint otherwise allege common law or actual malice sufficient to overcome the qualified privileges.  For a defamatory statement to be made with actual malice, a plaintiff must allege that defendants acted in reckless disregard of the truth, i.e., that they knew there was a high probability that the thief was not Bah and therefore that their statements identifying Bah as such were false.  Liberman v. Gelstein, 80 N.Y.2d 429, 437–38 (1992).

Bah fails to allege that Apple and SIS had actual knowledge that their naming of Bah as the thief in connection with the New York Incidents was false.  Woodruff's email to Detective Reinhold was sent on November 15, 2018 and other statements made by Apple or SIS relating to the New York Incidents were made sometime prior to Bah's arrest on November 29, 2018.  At the time that Reinhold released Bah from custody, none of the charges brought against Bah in other jurisdictions had been dropped.  (TAC ¶¶ 122, 132).  Indeed, the TAC now alleges that it was not until the period of late November to mid-December 2018 that Apple and SIS had "actual knowledge" that the person who had been committing thefts at the Apple stores in different

locations was not Osumane Bah, the plaintiff.  (TAC ¶¶ 152–53).  But, reading the TAC as a whole, it appears that the private defendants only learned sometime after the November 29 arrest of plaintiff Bah that he was not the person in the photograph of the actual thief.  (TAC ¶ 118–20). Without a plausible allegation that Apple, SIS or Woodruff knew Bah to be innocent of the thefts until after he was arrested by NYPD, Bah must rely solely upon the argument that the actual malice requirement is satisfied because the private defendants are alleged to have acted with a reckless disregard for the truth. As explained in the MTD Opinion, the reckless disregard standard requires facts to be alleged showing a "high degree of awareness" of the probable falsity of the statements. (MTD Op. at 22).

In an effort to satisfy this standard, Bah ascribes significance to the legend on the Temporary Learner's Permit that it may not be used for identification purposes.  But, legend or not, possession by the real thief of the Temporary Learner's Permit would likely have significance to law enforcement or store security personnel.  Neither a library card nor a utility bill is a customary means of identification yet finding such a document on a suspect's person could lead an investigator to develop a reasonable hypothesis that the person bearing the document was the person named in the document.

Bah makes much of the height discrepancy between the person described on the Temporary Learner's Permit and the person seen committing the thefts in the video surveillance. But without considering the content of the video surveillance footage, it is not possible to know whether the height variance would have had much significance even to a sophisticated viewer.

The thin allegations of a "high degree of awareness" of the falsity of the statements made by the private defendants in connection with the New York Incidents are best assessed after the conclusion of discovery. As noted in the Court's prior opinion, this "case may look very

different at the summary stage." (MTD Op. at 24). The Court will deny defendants' motion to dismiss the defamation claim for failing to plausibly allege actual malice.

    B.  <u>Malicious Prosecution.</u>

       The private defendants move to dismiss Bah's malicious prosecution claim on grounds that the Complaint neither pleads commencement of a judicial proceeding by these defendants nor actual malice. The remaining claim of malicious prosecution arises solely from the New York proceeding against Bah.

       As to the first element, "New York law has long equated the civil defendant's failure to make a full and complete statements of the facts to the District Attorney or the court, or holding back information that might have affected the results, with that defendant's initiation of a malicious prosecution." <u>Ramos v. City of New York</u>, 729 N.Y.S.2d 678, 690 (1st Dep't 2001) (citing <u>Hopkinson v. Lehigh Valley R.R. Co.</u>, 249 N.Y. 296, 300 (1928)). The Court previously stated that pleading this element for defendants who are non-governmental entities requires Bah to "allege that defendants knew their accusations were false or that they withheld information that might have influenced the decision to prosecute." (MTD Op. at 26–27). Finding that Apple and SIS withheld information in their statements to the NYPD that the identification of Bah relied upon an unreliable internal security system, which had labeled two physically distinct individuals as Bah, the Court concluded that Bah adequately alleged this element. (<u>Id.</u>) Although, as discussed above, Bah no longer alleges that two different individuals were identified, the Complaint still alleges sufficient facts to infer that Apple and SIS withheld information.

       The only alleged statement identifying Bah as a thief to the NYPD was Woodruff's statement to Detective Reinhold. The November 15, 2018 email from Woodruff was in response to an alert sent by Reinhold requesting information on the alleged theft at the Staten Island Apple store. (TAC Ex. 2). Bah alleges that Woodruff failed to disclose the basis for the identification of

Bah including that it was based on Bah's Temporary Learner's Permit and the process by which Apple's and SIS' internal security records matched a surveillance photo of Barrie with Bah's name. Whether these facts would have been material to law enforcement cannot be assessed on the pleadings alone. Drawing all reasonable inferences in Bah's favor and without the context of a complete factual record, the Court will deny the private defendants' motions to dismiss the malicious prosecution claim.

III.     City Defendants' Motion to Dismiss.

Bah asserts claims under section 1983 alleging arrest without probable cause and false arrest against Reinhold based on his identification of Bah as the thief responsible for the New York Incidents and against Pagan, White, Granata and Pattelli as the officers who arrested Bah.[2] 42 U.S.C. § 1983. The Complaint also asserts that the City is liable for the alleged constitutional violations based on its failure to train NYPD officers in the use of facial recognition technologies to make identifications.

When reviewing a motion to dismiss, a court may consider "the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint" as well as "document[s] 'integral' to the Complaint." DiFolco v. MSNBC Cable L.L.C., 622 F.3d 104, 111 (2d Cir. 2010). A court may take judicial notice of relevant matters of public record "in order to determine what statements [they] contained—but [] not for the truth of the matters asserted." Roth v. Jennings, 489 F.3d 499, 509 (2d Cir. 2007) (internal quotation marks omitted); see also Shmueli v. City of New York, 424 F.3d 231, 233 (2d Cir. 2005) ("[The] prosecution of Shmueli is a matter of public record, of which we take judicial

---

[2] A government-official defendant can be held liable if he or she "directly participated" in a constitutional violation. Williams v. Smith, 781 F.2d 319, 323 (2d Cir. 1986). Reinhold and the Arresting Officers do not challenge the adequacy of the allegation of their personal involvement in the alleged constitutional violation.

notice."); Corley v. Vance, 365 F. Supp. 3d 407, 432 (S.D.N.Y. 2019) ("In considering a motion to dismiss, the Court may consider matters of which judicial notice may be taken under Fed. R. Evid. 201, including public records such as Plaintiff's arrest reports, indictments, and criminal disposition data."). Bah has annexed to his opposition memorandum documents including arrest reports, criminal complaints and NYPD "Investigation Cards." (See generally Doc 149; Doc 148, Exs. A–N; Pl's Opp. at 4–10). These documents are not otherwise incorporated by reference or attached to or integral to the Complaint, and the City, Reinhold and the Arresting Officers object to their being considered on this motion. (City Reply 2–3; Doc 152). Although the Court will take judicial notice of the public records submitted by Bah for the limited purpose described above, it otherwise declines to convert this Rule 12 motion into one for summary judgment.

A. Legal Standard for Claims under Section 1983.

To state a claim under section 1983, a plaintiff must allege that state officials, acting under color of state law, deprived him or her of a right guaranteed by the Constitution or federal law. 42 U.S.C. § 1983; see Graham v. Henderson, 89 F.3d 75, 79 (2d Cir. 1996). A claim for false arrest brought under section 1983 is "substantially the same as a claim for false arrest under New York law." Simpson v. City of New York, 793 F.3d 259, 265 (2d Cir. 2015) (quoting Jenkins v. City of New York, 478 F.3d 76, 84 (2d Cir. 2007)). "To state a claim for false arrest under New York law, a plaintiff must show that '(1) the defendant intended to confine the plaintiff, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement, and (4) the confinement was not otherwise privileged.'" Savino v. City of New York, 331 F.3d 63, 75 (2d Cir. 2003) (quoting Bernard v. United States, 25 F.3d 98, 102 (2d Cir. 1994)).

"Probable cause is a complete defense to a constitutional claim of false arrest . . . ." Betts v. Shearman, 751 F.3d 78, 82 (2d Cir. 2014). Probable cause exists when the arresting officer has "knowledge or reasonably trustworthy information of facts and circumstances that are

sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime." Weyant v. Okst, 101 F.3d 845, 852 (2d Cir. 1996). "When determining whether probable cause existed to support an arrest, [the court] 'consider[s] those facts available to the officer at the time of arrest and immediately before it,' and . . . must render [its] decision based on the 'totality of the circumstances.'" Simpson, 793 F.3d at 265 (quoting Panetta v. Crowley, 460 F.3d 388, 395 (2d Cir. 2006)). Even in the absence of probable cause, an officer may prevail on a section 1983 claim of false arrest under the doctrine of qualified immunity. "An officer is entitled to qualified immunity from a federal false arrest and imprisonment claim if he had arguable probable cause to arrest the plaintiff for any offense, regardless of the offense with which the plaintiff was actually charged." Kass v. City of New York, 864 F.3d 200, 206 (2d Cir. 2017).

B.  Bah Fails to State a Claim Against Reinhold and the Arresting Officers.

Defendants urge that the section 1983 claims against Detectives Reinhold, Pagan, White, Granata and Pattelli, should be dismissed because there was probable cause or, at least, arguable probable cause to arrest Bah. For reasons to be explained, Bah's claims against Reinhold and the Arresting Officers will be dismissed because the Complaint alleges that Bah was arrested pursuant to a valid arrest warrant.

According to the Complaint, Reinhold was the detective responsible for investigating the New York Incident. Bah alleges that on November 8, 2018, Reinhold sent an alert through a system accessible to individuals outside the NYPD requesting information on the thief from the New York Incidents. (TAC ¶ 102). This alert also included an image of the thief taken from the surveillance video of the Staten Island Apple store. (TAC ¶ 102). On November 15, 2018, Woodruff responded to this alert via email and stated:

> The below individual is known to us as Ousmane Bah. He has been hitting Apple stores for quite a few months now and doesn't seem to be stopping. I am not sure if you have a contact with our Apple LP district managers but I recently heard from an Apple manager at Staten Island that you were trying to ID him. I can give u whatever I have on his cases and losses we have experienced if you have not already gotten it. Looks like he hits from Connecticut to south Jersey. Feel free to reach out to me anytime.

(TAC. ¶ 103 & Ex. B).

In November 2018, prior to Bah's arrest, the Complaint alleges that Reinhold submitted the surveillance video image of the thief from the New York Incidents to the NYPD's Facial Identification Section ("FIS"), who uses facial recognition technology to make identifications. (TAC ¶ 106). The FIS matched two names with the image that was submitted: Bah and Barrie. (TAC ¶ 107). Reinhold resubmitted the image to the FIS, but they did not perform a second search and instead referenced its previous results. (TAC ¶¶ 111–12). The Complaint alleges that under FIS' procedures if a search identifies two individuals, it will not run a second search and "should be abandoned as a means of identification." (TAC ¶¶ 109, 112). Bah asserts that Reinhold did not take additional investigative steps to determine whether Barrie was the thief upon receiving the results from the FIS. (TAC ¶¶ 110, 113).

Notably, the Complaint also alleges that a "warrant" was issued for Bah's arrest. (TAC ¶¶ 114–15, 118–20). It asserts that the Arresting Officers possessed the warrant when arresting Bah and that the warrant contained a photo of Barrie. (Id.). Under New York's Criminal Procedure Law, "[a] warrant of arrest is a process issued by a local criminal court directing a police officer to arrest a defendant designated in an accusatory instrument filed with such court . . . ."

N.Y. Crim. Pro. L. § 120.10(1).  The warrant must "be subscribed by the issuing judge . . . ."  Id. § 120.10(2).[3]

Where an officer makes an arrest pursuant to a warrant it is presumed to be reasonable and to have been issued on probable cause.  See Walczyk v. Rio, 496 F.3d 139, 155–56 (2d Cir. 2007) ("Ordinarily, an arrest or search pursuant to a warrant issued by a neutral magistrate is presumed reasonable because such warrants may issue only upon a showing of probable cause.").  Similarly, under New York law, "[w]here the confinement or detention of an individual against his or her will is privileged, a cause of action alleging false arrest will not lie." Ali v. City of New York, 145 A.D.3d 838, 839 (2d Dep't 2016).  "A confinement is privileged when it is 'based on an arrest warrant, valid on its face, issued by a court having jurisdiction.'" Urena v. City of New York, 127 A.D.3d 538, 539 (1st Dep't 2015) (quoting Saunsen v. State of New York, 81 A.D.2d 252, 253 (2d Dep't 1981)).

Bah alleges that his arrest was effectuated pursuant to a warrant, and he does not contest that warrant's facial validity or claim that it was procured through fraud, misrepresentation or other misconduct.  See Soares v. Connecticut, 8 F.3d 917, 920 (2d Cir. 1993).  The Complaint further asserts that Reinhold and the Arresting Officers were aware of the warrant.

Accordingly, the Court concludes that Bah's arrest was privileged, Urena, 127 A.D.3d at 539, and his claims under section 1983 for false arrest against Reinhold and the Arresting Officers fail as a matter of law.  See Southerland v. Garcia, 483 F. App'x 606, 608 (2d Cir. 2012) ("[Plaintiff's] false arrest and imprisonment claim must fail because he was arrested pursuant to a facially valid warrant."); Vasquez v. Reilly, No. 15 cv 9528 (KMK), 2017 WL 946306, at *7

---

[3] The City Defendants assert in their Memorandum of Law that no warrant was issued relating to the New York Incidents but that there were three outstanding warrants for Bah's arrest from other incidents. (City Mem. at 4 n. 2.) Whether the warrant or warrants were issued by a New York court or a sister state court is not material to the disposition of the motion.

(S.D.N.Y. Mar. 9, 2017) ("Plaintiff cannot rebut the presumption of probable cause created by the issuance of a valid arrest warrant, and Plaintiff has thus failed to state a claim for false arrest under either federal or New York law."); Jones v. Trump, 971 F. Supp. 783, 788–89 (S.D.N.Y. 1997) ("As plaintiff concedes, he was arrested on October 5, 1995 pursuant to a warrant issued by Judge Cataldo of the Criminal Court of New York City. Plaintiff has therefore failed to allege that defendants were not entitled to arrest him . . . .") (internal citation omitted)).  Even if the arrest was made pursuant to out-of-state warrants, as the City asserts in its memorandum, Bah's claim would still fail.  Rosado v. Vill. of Goshen, No. 16 cv 6916 (NSR), 2019 WL 1437522, at *7 (S.D.N.Y. Mar. 31, 2019) (dismissing on a rule 12(b)(6) motion plaintiff's section 1983 claim for false arrest against New York police officers where the arrest was made pursuant to an out-of-state warrant); Justice v. Kuhnapfel, No. 13 cv 659 (MKB), 2014 WL 2434139, at *3 (E.D.N.Y. May 29, 2014); Johnson v. Kings Cty. Dist. Attorney's Off., 308 A.D.2d 278, 286 (2d Dep't 2003); see also Case v. Kitsap County Sheriff's Dept, 249 F.3d 921, 927–28 (9th Cir. 2001) (dismissing section 1983 claim on qualified immunity grounds where plaintiff's arrest in Washington was made pursuant to an Oregon warrant).

Reinhold's investigation, which according to the Complaint consisted of the email from Woodruff and the results of a search using NYPD's facial recognition technology, does not alter the Court's analysis.  In combination with the warrant issued for Bah's arrest, the identification by Woodruff provided further information suggesting that Bah was responsible for the New York Incidents.  Cf. United States v. Towne, 870 F.2d 880, 884 (2d Cir.1989) (finding probable cause to arrest in the context of a motion to suppress where officer learned of out-of-state warrant after conducting a background check on NCIC and receiving a certified copy of warrant before arresting the defendant); Betts, 751 F.3d at 82 ("[P]robable cause exists if a law enforcement

officer 'received . . . information from some person, normally the putative victim or eyewitness, unless the circumstances raise doubt as to the person's veracity.'") (quoting Crowley, 460 F.3d at 395).  The allegations that Bah did not have the same physical appearance as the warrant photograph, standing alone, does not undermine the presumption of probable cause from the issuance of an arrest warrant.  See Ricciuti v. N.Y.C. Transit Auth., 124 F.3d 123, 128 (2d Cir. 1997) ("Once a police officer has a reasonable basis for believing there is probable cause, he is not required to explore and eliminate every theoretically plausible claim of innocence before making an arrest.").

Lastly, this is not a "so-called 'misnomer case[],'" where warrants could have been applied with complete accuracy to two or more persons."  Davis v. City of Syracuse, 66 N.Y.2d 840, 842–43 (1985).  The warrant was for Bah's arrest and could not have been applied to Barrie as it did not list Barrie's name.  Because Bah was the individual that the Arresting Officers intended to arrest, they "were obliged only to assure" themselves that they were "arresting the person described therein, and that the description bore a reasonable resemblance to the arrestee."  Id. at 843.  The bare allegation that Bah did not physically resemble the individual from the photo in the warrant, where Bah was the individual named in the warrant, does not prevent the arrest from being privileged.  See Hernandez v. United States, 939 F.3d 191, 200–01 (2d Cir. 2019) (concluding that plaintiff stated claim under the FTCA for false arrest where he was seized pursuant to an immigration detainer that was issued for a person with a different name than plaintiff, and because the names did not match, further inquiry was required by law enforcement).

The Court concludes that Bah has failed to plausibly allege a claim under section 1983 against Reinhold or the Arresting Officers.  Because Bah has failed to state a claim, the Court

declines to address these defendants' argument that they are immune from liability under the doctrine of qualified immunity.

C.   <u>Bah Fails to State a Claim Against the City of New York.</u>

Bah asserts that the City is liable for the deprivation of his constitutional rights pursuant to <u>Monell v. Department of Social Services of the City of New York</u>, 436 U.S. 658 (1978). To the extent that Bah has failed to plausibly allege that Reinhold, the Arresting Officers or other municipal actors violated his constitutional rights, Bah's <u>Monell</u> claim also fails.  <u>Askins v. Doe No. 1</u>, 727 F.3d 248, 253 (2d Cir. 2013) ("Unless a plaintiff shows that he has been the victim of a federal law tort committed by persons for whose conduct the municipality can be responsible, there is no basis for holding the municipality liable.").  Even if the Court were to assume Bah's constitutional rights had been violated, the Complaint fails to plausibly allege that the City's failure to train its officers or its polices or customs led to such a constitutional violation.

"In order to establish municipal liability, 'a plaintiff must show that the violation of his constitutional rights resulted from a municipal custom or policy.'" <u>DeCarlo v. Fry</u>, 141 F.3d 56, 61 (2d Cir. 1998) (quoting <u>Ricciuti v. New York City Transit Auth.</u>, 941 F.2d 119, 122 (2d Cir. 1991)).  A municipality may not be held liable on section 1983 claims solely "by application of the doctrine of <i>respondeat superior</i>."  <u>Pembaur v. City of Cincinnati</u>, 475 U.S. 469, 478 (1986). Instead, municipal liability can be found where: (1) "a particular municipal action <i>itself</i> violates federal law, or directs an employee to do so," <u>Bd. of Cty. Comm'rs of Bryan Cty., Okl. v. Brown</u>, 520 U.S. 397, 404 (1997) (emphasis in original), (2) an "authorized decisionmaker has intentionally deprived a plaintiff of a federally protected right," <u>Id.</u> at 405, (3) unconstitutional "practices [are] so persistent and widespread as to practically have the force of law," <u>Connick v. Thompson</u>, 563 U.S. 51, 61 (2011), and (4) a municipality's failure to train its employees about their legal duty to avoid violating a citizen's rights amounts to "deliberate indifference." <u>Id.</u>  In

any case, "a plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights." Bryan Cty., 520 U.S. at 404.

"A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." Connick, 563 U.S. at 61. A plaintiff who seeks to hold a municipality liable for its failure to train must show that such a failure amounted to "deliberate indifference." Id. "'[D]eliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." Id. "A showing of simple or even heightened negligence will not suffice." Hernandez, 939 F.3d at 207 (quoting Outlaw v. City of Hartford, 884 F.3d 351, 373 (2d Cir. 2018)). Generally, "[a] pattern of similar constitutional violations by untrained employees is [] necessary to demonstrate deliberate indifference for purposes of failure to train." Connick, 563 U.S. at 62 (internal quotation marks omitted).

At the motion to dismiss stage, the Second Circuit utilizes a three-prong test to determine whether plaintiffs have demonstrated a municipality's "deliberate indifference" in the context of a failure to train claim. Walker v. City of New York, 974 F.2d 293, 297–98 (2d Cir. 1992). "First, the plaintiff must show that a policymaker knows to a moral certainty that her employees will confront a given situation." Id. at 297 (internal quotation marks omitted). "Second, the plaintiff must show that the situation either presents the employee with a difficult choice of the sort that training or supervision will make less difficult or that there is a history of employees mishandling the situation." Id. And third, "the plaintiff must show that the wrong choice by the city employee will frequently cause the deprivation of a citizen's constitutional rights." Id. at 298. Where all three elements are established a plaintiff has stated a plausible

Monell claim based on a failure to train.  Id.; see also Amnesty Am. v. Town of W. Hartford, 361 F.3d 113, 130 n. 10 (2d Cir. 2004).

The Complaint's theory of Monell liability is based on the City's failure to train its officers in instances where facial recognition technology identifies more than one individual. (TAC ¶¶ 223–24).  It alleges that the NYPD has a protocol that addresses the use of the facial recognition search results when multiple individuals are identified.  (TAC ¶¶ 222–24).  Reinhold allegedly violated this protocol by relying on the results of a search that identified both Bah and Barrie.  A violation of departmental policy does not, in and of itself, amount to the violation of a right protected by the Constitution or federal law. See United States v. Wilson, 699 F.3d 235, 238, 243 (2d Cir. 2012) (finding that "the Fourth Amendment does not generally incorporate local statutory or regulatory restrictions," such that a seizure in violation of departmental policy and state law did not amount to a constitutional violation).  Nor does the fact that such a policy violation occurred, without more, indicate inadequate training on the part of the City. See De Michele v. City of New York, No. 09 cv 9334 (PGG), 2012 WL 4354763, at *21–22 (S.D.N.Y. Sep. 24, 2012).  See also Bah v. City of New York, No. 13 cv 6690 (PKC), 2017 WL 435823, at *6 (S.D.N.Y. Jan. 31, 2017).

Further the Complaint fails to allege a history or pattern of officers ignoring the NYPD's facial recognition protocol when search results identify more than one individual; it merely alleges a single instance of Reinhold not following the policy.  See City of Canton v. Harris, 489 U.S. 378, 390 (1989) ("That a particular officer may be unsatisfactorily trained will not alone suffice to fasten liability on the city, for the officer's shortcomings may have resulted from factors other than a faulty training program.").

Bah's opposition memorandum attempts to buttress his failure to train claim with allegations not in the Complaint and other materials that the Court cannot consider on a motion to dismiss. (Pl's Mem. 24–27). Even if the Court were to consider these allegations, Bah would still fail to state a <u>Monell</u> claim, and therefore any motion to amend, without more, would be futile.

In his opposition memorandum, Bah appears to advance a theory of municipal liability based on the City's failure to train officers regarding the identification of suspects, which he alleges leads to arrests without probable cause. First, Bah points to a 2019 study by the American Civil Liberties Union ("ACLU") that criticizes the FIS's use of facial technology to identify individuals. (Pl's Mem. at 24; Tariq Decl. Ex. N). The ACLU study broadly criticizes police departments for over relying on facial recognition technology and identifies what appears to be four instances of the NYPD misidentifying suspects using the technology. (Pl's Mem. at 24–25). Other than the ACLU article, Bah fails to point any other instances of individuals being misidentified by the NYPD through the use of facial recognition technology, and he points to no instances where such misidentifications led to findings of liability against the City for constitutional violations. The ACLU article only provides conclusory support to Bah's assertion that the City has failed to train its officers regarding the use of facial recognition technology.

Second, Bah's memorandum asserts that the City has failed to properly train its officers to ensure that victims of impersonation are not misidentified as the impersonator. (Pl's Mem. 25). Bah asserts that on July 17, 2018 and September 6, 2018, non-defendant NYPD officers arrested Barrie. (Pl's Mem. at 4–5). In both cases, Barrie allegedly identified himself as Bah to the arresting officers. The NYPD records associated with these arrests, of which the Court may take judicial notice, list "Ousmane Bah" as the "defendant" even though Barrie was the individual arrested. (Tariq Decl. Exs. D & E). These are the only two instances identified by Bah of this

alleged failure to train officers in completing arrest records.   Such allegations, limited to circumstances relating to Bah, fail to allege a broader history or pattern of misidentifying victims of impersonation and fail to support the plausible inference that the City was on notice that its training was deficient in the manner alleged by Bah.  See  Boddie v. City of New York, No. 15 cv 4275 (GHW), 2016 WL 1466555, at *4 (S.D.N.Y. Apr. 13, 2016)  ("[T]he handful of specific incidents described in the Report are not similar enough to the alleged violation at issue here to plead that the City was deliberately indifferent to a pattern of constitutional violations."); Pluma v. City of New York, No. 13 cv 2017 (LAP), 2015 WL 1623828, at *12 (S.D.N.Y. Mar. 31, 2015) (holding that allegations of a "handful of dissimilar incidents occurring over the course of more than a decade is too sparse to put the City on notice that the NYPD's training program produces officers who are likely to commit constitutional violations through their deployment of pepper spray"); cf. Connick, 563 U.S. at 62 (holding that four overturned Brady convictions "could not have put [the defendant] on notice that the office's *Brady* training was inadequate with respect to the sort of *Brady* violation at issue here.").   Accordingly, the Court concludes that Bah fails to plausibly allege that the City acted with deliberate indifference, and therefore his theory of municipality liability based on a failure to train will be dismissed.

In addition, Bah's memorandum asserts that the City, through the NYPD, has a "practice or policy" of "identify[ing] victims of impersonation as the offender."  (Pl's Mem. 26).  For the reasons described above, Bah has failed to plausibly allege that the City had a policy or custom of incorrectly identifying victims of impersonation that was "so persistent and widespread as to practically have the force of law."  Connick, 563 U.S. at 61; accord Hu v. City of New York, 927 F.3d 81, 106 (2d Cir. 2019).  (A plaintiff "must show that 'the alleged practice [was] so manifest as to imply the constructive acquiescence of senior policymaking officials.'") (quoting

Green v. City of New York, 465 F.3d 65, 80 (2d Cir. 2006)).  Even at the motion to dismiss stage, such limited instances of the alleged policy or custom are insufficient to state a claim.  See Hu, 927 F.3d at 106 (affirming dismissal of the complaint where it "only identifie[d] four instances" of the alleged municipal policy or custom); cf. Jones v. Town of East Haven, 691 F.3d 72, 85 (2d Cir. 2012) ("Plaintiff's evidence showed two instances, or at the most three, over a period of several years . . . .  This evidence fell far short of showing a policy, custom, or usage of officers . . . .").

The Court concludes that Bah fails to plausibly allege a claim for municipal liability against the City under section 1983.

CONCLUSION

The motions of Apple, SIS and Woodruff to dismiss the Third Amended Complaint are DENIED. (Docs 109 & 112).  The motions of Detectives Reinhold Pagan, White, Granata and Pattelli and the City, to dismiss the Third Amended Complaint are GRANTED.  (Doc 142).  The Clerk is directed to terminate these motions.  (Docs 109, 112 & 142).

The motions to seal portions of the Loss Prevention Report (Docs 145 & 146) are GRANTED without prejudice to further application after the close of discovery.  The presumption of public access to these judicial documents is overcome by the nature of the information relating to both the suspect and the loss prevention officer.  Lugosch v. Pyramid Co. of Onondaga, 435 F.3d 110, 119–120 (2d Cir. 2006).

The time has come for the parties to put aside their energetic efforts at amendments followed by equally energetic motion practice.  The stay of discovery is vacated.  The parties are advised to complete the outstanding discovery and bring the case to the point where it can be resolved on a motion for summary judgment or trial.  At the time of the stay, fact discovery had

less than a month to run.  Submit a revised case management plan and proposed scheduling order within 14 days.

SO ORDERED.

P. Kevin Castel
United States District Judge

Dated: New York, New York
       September 8, 2021